Appeal No. 08-2105
_____

**UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT**
_____

WEN Y. CHIANG,
Plaintiff-Appellant,

v.

LYNN SKIERIK, ET AL.,
Defendant-Appellees.
_____

ON APPEAL FROM JUDGMENT IN A CIVIL CASE ENTERED IN
THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
_____

BRIEF OF DEFENDANT-APPELLEES

_____

MICHAEL J. SULLIVAN
United States Attorney

ANTON P. GIEDT
Assistant U.S. Attorneys
United States Attorney's Office
John Joseph Moakley Federal Courthouse
One Courthouse Way, Suite 9200
Boston, MA  02112
(617) 748-3290

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

STATEMENT OF JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE ISSUE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF THE FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

I.     The District Court Correctly Denied Chiang's May 15, 2008 Motion For
       Preliminary Injunction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

       A.     Chiang's Voluntary Dismissal Of the Appeal Of The Denial Of His
              May 18, 2008 Motion For Preliminary Injunction Renders The Issue
              Moot And The Court Lacks Jurisdiction Over the Issue  . . . . . . . . 14

       B.     The District Court Did Not Abuse Its Discretion In Denying
              Chiang's May 18, 2008 Motion For Preliminary Injunction  . . . . . . 17

II.    The District Court Correctly Denied Chiang's Motion To Amend His
       Amended Complaint . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

       A.     Chiang Should Not Be Allowed To Contest The Denial Of His Motion
              To Amend His Amended Complaint Because His
              Amended Notice Of Appeal Did Not Specify The District
              Court's Denial Of His Motion To Amend His Amended
              Complaint . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

       B.     The District Court's Denial of Chiang's Motion to Amend His
              Amended Complaint Should Be Affirmed Because Chiang

i

Failed To Cure The Deficiencies Of His Original Complaint In His Amended Complaint, He Sought To Amend His Allegations Whenever An Unfavorable Decision Seemed Likely, And Because Further Amendment Would Be Futile . . . . . . . . . . . . . . . 28

III.    The District Court Correctly Dismissed Chiang's Amended Complaint By Adopting Magistrate Judge Dein's Report And Recommendation . . . . . . 35

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

BRIEF FORMAT CERTIFICATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

GOVERNMENT'S ADDENDUM . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1 - 15

GOVERNMENT'S SUPPLEMENTAL APPENDIX . . . . . . . . . . . . . . . . . . 1 - 83

## TABLE OF AUTHORITIES

### CASES

ACA Finance Guaranty Corp. v. Advest, Inc.,
    512 F.3d 46 (1st Cir. 2008) .................................................. 30, 32

Abourezk v. Reagan,
    592 F. Supp. 880 (D.D.C. 1984) .................................................. 18

Alstom Caribe, Inc. v. George P. Reintjes Co.,
    484 F.3d 106 (1st Cir. 2007) ........................................................ 27

America Academy Of Religion v. Chertoff,
    463 F. Supp. 2d 400 (S.D.N.Y. 2006) ...................................... 18

Bell Atlantic Corp. v. Twombly,
    127 S. Ct. 1955 (2007) ......................................... 35, 36, 37, 38, 39

Bivens v. Six Unknown Federal  Narcotics Officers,
    403 U.S. 388 (1971) ..................................................................... 31

Bl(a)ck Tea Society v. City Of Boston,
    378 F.3d 8 (1st Cir. 2004) citing Charlesbank Equity Fund II v. Blinds to
    Go, Inc., 370 F.3d 151 (1st Cir. 2004)  ...................................... 17

Blockel v. J.C. Penney Co., Inc.,
    337 F.3d 17 (1st Cir. 2003) ........................................................ 26

Matter of Brantigan,
    11 I. & N. Dec. 493 (BIA 1966) ................................................. 21

Brooks v. AIG SunAmerica Life Assur. Co.,
    480 F.3d 579 (1st Cir. 2007) ...................................................... 26

Bustamante v. Mukasey,
    531 F.3d 1059 (9th Cir. 2008) ................................................... 18

Cashmere & Camel Hair Manufacturers v. Saks Fifth Avenue,
    284 F.3d 302 (1st Cir. 2002) ........................................................ 15

Chaparro-Febus v. International Longshoremen Associate,
    983 F.2d 325 (1st Cir. 1993) ........................................................ 17

Chiang v. Skeirik,
    529 F. Supp. 2d 166 (D. Mass. 2007) ...................................... 4, 5, 18, 28, 31

Conley v.  Gibson,
    355 U.S. 41 (1957) ........................................................................ 35

Constructora Andrade Gutierrez, S.A. v. American Intern. Insurance Co. of Puerto
Rico ("Andrade"),
    467 F.3d 38 (1st Cir. 2006) .......................................................... 26

Foman v. Davis,
    371 U.S. 178 (1962) ...................................................................... 30

Glassman v. Computervision Corp.,
    90 F.3d 617 (1st Cir. 1996) .................................................. 28, 29, 33, 34, 35

In re High Voltage Engineering Corp.,
    544 F.3d 315 (1st Cir. 2008) ........................................................ 26

Castellanos, et al. v. Pfizer, Inc., et al.,
    511 F. Supp. 2d 1343, 2008 WL 2127987 (S.D. Fla) .................................. 34

John's Insulation, Inc. v. L. Addison & Associate,
    156 F.3d 101 (1st Cir. 1998) .................................................... 27, 28

Kleindienst v. Mandell,
    408 U.S. 753 (1972) ...................................................................... 18

Kotler v. Tobacco Co.,
    981 F.2d 7 (1st Cir. 1992) ...................................................... 26, 27

Marrero-Gutierrez v. Molina,
    491 F.3d 1 (1st Cir. 2007) ............................................................ 35

McCloskey v. Mueller,
    446 F.3d 262 (1st Cir. 2006) .................................................... 35, 37

Mirpuri v. ACT Manufacturing, Inc.,
    212 F.3d 624 (1st Cir. 2000) .................................................... 30, 32

O'Connell v. Hyatt Hotels of P.R.,
    357 F.3d 152 (1st Cir. 2004) ........................................................ 29

Poy v. Boutselis,
    352 F.3d 479 (1st Cir. 2003) ........................................................ 26

Rodriguez-Ortiz v. Margo Caribe, Inc.,
    490 F.3d 92 (1st Cir. 2007) ...................................................... 36, 37

Ruiz Rivera v. Riley,
    209 F.3d 24 (1st Cir. 2000) ...................................................... 37, 38

Silverman v. Rogers,
    437 F.2d 102 (1st Cir. 1970) ........................................................ 18

U.S. ex rel. Rost v. Pfizer, Inc.,
    507 F.3d 720 (1st Cir. 2007) ........................................................ 30

U.S. Investment and Development Corp. v. Cruz,
    780 F.2d 166 (1st Cir. 1986) ........................................................ 29

United States v. Arevalo,
    408 F.3d 1233 (9th Cir. 2005) ...................................................... 15

United States v. Universal Management Services, Inc.,
    191 F.3d 750 (6th Cir.1999) ........................................................ 26

Zheng v. Mukasey,
    546 F.3d 70 (1st Cir.  2008) .................................................... 14, 15

## STATUTES AND REGULATIONS

8 C.F.R. § 204.2(a)(2) ................................................................ 21

9 FAM 41.81 PN 3.2 ................................................................ 9

22 C.F.R. § 41.81 ................................................................ 9, 10

9 FAM 42.63 PN5.1-1(e) ................................................................ 9

9 FAM 41.81 N 3.4 ................................................................ 9

22 C.F.R. § 42.62 ................................................................ 9

8 U.S.C. §1101(a)(15)(K)(I) ................................................................ 8

8 U.S.C. § 1201(I) ................................................................ 34

8 U.S.C. § 1361 ................................................................ 21

42 U.S.C. § 1983 ................................................................ 2

28 U.S.C. § 1291 ................................................................ 1

28 U.S.C. § 1331 ................................................................ 1

Fed. R. App. P. 3(c)(1)(b) ................................................................ 25

Fed. R. App. P. 10(e)(3) ................................................................ 12

## STATEMENT OF JURISDICTION

This is an appeal from the Order of Dismissal of the United States District Court for the District of Massachusetts ("District Court") (Gorton, J.), entered August 18, 2008 (Appellant's Addendum  ("App. Addm. / ##") / 30), in accordance with the District Court's Order Adopting the Report and Recommendation of the Magistrate Judge, entered August 12, 2008, and granting the Defendants' ("Government") motion to dismiss Plaintiff-Appellant Wen Y. Chiang's ("Chiang") amended complaint for lack of subject matter jurisdiction and failure to state a claim upon which relief may be granted (App. Addm. / 29, 12–27; Appellant's Appendix II ("App. Appx. II / ##") / 313–314).  Chiang filed his notice of appeal on August 18, 2008.  App. Appx. II / 313–314.  The District Court had subject matter jurisdiction over Chiang's complaint pursuant to 28 U.S.C. § 1331. This Court has jurisdiction over Chiang's appeal under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

1.    Whether the District Court was correct in denying Chiang's May 15, 2008, motion for preliminary injunction because of no likelihood of success on the merits.

2.    Whether the District Court was correct in denying Chiang's motion to amend his amended complaint because of futility.

3.    Whether the District Court was correct in dismissing Chiang's amended

complaint in accordance with the Report and Recommendation of the

Magistrate Judge for failure to allege a plausible entitlement to relief.

## STATEMENT OF THE CASE

On March 6, 2007, Chiang, a U.S. citizen, acting *pro se*, filed a complaint in

the District Court alleging two counts: Count I for negligence in the delay of

processing the nonimmigrant visa application of his fiancée Wen Hua Zhang (who

adopted the name "Amy"), and Count II for civil rights violations under 42 U.S.C.

§ 1983, because the delay in processing his fiancée's background check, in turn,

allegedly restricted Chiang's right to marry.  App. Appx. I / 8–11; Docket No. 1.[1]

The Government answered (Docket No. 10), and on July 18, 2007, Chiang

responded with a motion for a preliminary injunction ("first motion for

injunction") to compel the United States Department of State Consulate in

Guangzhou, China ("Consulate"), to act on Amy's visa application (Docket Nos.

11, 12, 13).  The Government moved to dismiss Chiang's complaint for lack of

subject matter jurisdiction and opposed Chiang's first motion for injunction

because, *inter alia*, the administrative visa application process was still pending.

Government's Supplemental Appendix ("Gov. Supp. Appx. / ##") /1–12 (Docket.

---

[1]     References to "Docket No. #" or "Docket Entry" are to the District
Court Docket reproduced in Government's Supplemental Appendix at 73–83
(as of April 2, 2009); Appellant's Appendix I / 1–7A.

No. 15).  On August 18, 2007, Chiang retained counsel.  Docket No. 19.

On September 25, 2007, approximately eight weeks after the Government filed its motion to dismiss, the Consulate adjudicated Amy's visa application and denied the application.  App. Appx. I / 62.  The denial stated that the case was being returned to the United States Department of Homeland Security ("DHS"), Citizenship and Immigration Service ("USCIS") for review and possible revocation of Chiang's petition for a nonimmigrant fiancée classification of Amy. *Id.*

On September 28, 2007, Chiang filed a motion for a temporary restraining order ("second motion for injunction") seeking to restrain the Consulate from returning Amy's application to the USCIS and alleging a series of improprieties on the part of the Consulate's staff during Amy's interview.  App. Appx. I / 41–64 (Docket Nos. 20, 21, 22).  The Government opposed Chiang's second motion for injunction (Gov. Supp. Appx. / 13–24 (Docket No. 23)), and on October 4, 2007, the District Court held a hearing on Chiang's complaint, the Government's motion to dismiss, and Chiang's first and second motions for injunction.  Docket Entry of October 4, 2007.  After the hearing on October 4, 2007, Chiang filed a renewed motion for a temporary restraining order on November 16, 2007 ("third motion for injunction")(App. Appx. I / 94–152 (Docket Nos. 24, 25)), which the District Court

3

denied by electronic order (Docket Entry of November 19, 2007).

On December 4, 2007, the District Court issued a Memorandum and Order dismissing the majority of Chiang's claims except those claims that the Court construed as possible constitutional claims for Chiang in the context of the application process.  Government Addendum  ("Gov. Addm. / ##") / 1–9 (Docket No. 26); *Chiang v. Skeirik*, 529 F. Supp. 2d 166 (D. Mass. 2007).  With respect to the denial of Amy's visa application the District Court adhered to the doctrine of consular non-reviewability and found that it had no jurisdiction to second guess the Consulate's decision.  *Id*. at 170.  The District Court also (1) dismissed Chiang's negligence claims for the acts or omissions of  Consulate officers acting within the scope of their employment, (2) denied Chiang's first motion for injunction as moot (the Consulate having acted on Amy's application), and (3) denied Chiang's second motion for injunctive relief on the grounds that there was no likelihood of success on the merits because the claims were vague and speculative, appeared to affect Amy and not Chiang, and did not rise to the level of due process violations. *Id.* at 172–173.  The District Court also directed Chiang to file an amended complaint restating any justiciable claims not dismissed in the Memorandum and Order or risk dismissal of the complaint in its entirety.  *Id.* at 174.

Chiang filed an amended complaint on January 18, 2008, alleging five

counts of Constitutional violations (App. Appx. II / 170–177 (Docket No. 27)), and the Government filed a motion to dismiss (Gov. Supp. Appx. / 25–37 (Docket No. 30)).  The District Court referred the matter to the Honorable Judith G. Dein, United States Magistrate Judge, for a Report and Recommendation (Docket No. 33), and a hearing was held before Magistrate Judge Dein on May 12, 2008 (Docket Entry of May 12, 2008).  After the hearing, Magistrate Judge Dein issued a Report and Recommendation recommending that the Government's motion to dismiss be allowed.  App. Addm. / 12–28 (Docket No. 48).  Magistrate Judge Dein found that Chiang had failed to state a cognizable claim against the defendants for violation of his constitutional rights during the application process and that the doctrine of consular non-reviewability barred any challenge to the Consulate's decision to deny Amy's visa application.  *Id.*

By Electronic Order the District Court adopted the Report and Recommendation of Magistrate Judge Dein (Docket Entry of August 7, 2008), and issued an Order of Dismissal as to Chiang's amended complaint (App. Addm. / 30 (Docket No. 54).  On August 18, 2008, Chiang appealed the District Court's Order of Dismissal in accordance with the District Court's "adoption of the Report and Recommendation allowing motion to dismiss," which eventually was docketed as this appeal ("Appeal 08-2105").  App. Appx. II / 313–314 (Docket No. 55).

5

On May 15, 2008, after the hearing before Magistrate Judge Dein, but before the issuance of her Report and Recommendation, Chiang filed another motion for a temporary restraining order seeking to compel the Government to issue Amy a visa to come to the United States to marry Chiang and to receive urgent care for Amy's unborn child.  App. Appx. II / 247–271 (Docket Nos. 42, 43).  The District Court converted Chiang's motion for a temporary restraining order to a motion for preliminary injunction ("fourth motion for injunction").  Docket Entry of May 19, 2008.  The Government opposed the fourth motion for injunction (Gov. Supp. Appx. / 38–51 (Docket No. 44)), and on June 11, 2008, the District Court entered a Memorandum and Order denying the fourth motion for injunction (App. Addm. / 1–11 (Docket No. 46)).  Chiang filed a notice of  appeal challenging the District Court's order, which was docketed in this Court as 08-1909 ("Appeal 08-1909").  App. Appx. II / 312 (Docket No. 47).

On August 14, 2008, seven weeks after the filing of Appeal 08-1909, the District Court dismissed Chiang's amended complaint (App. Addm. / 30), and, as indicated above, on August 18, 2008, Chiang filed an amended notice of appeal with the District Court to include the District Court's dismissal of the amended complaint (App. Addm. / 313–314).  This Court then issued an order directing Chiang to show cause why Appeal 08-1909 should not be dismissed for lack of

6

jurisdiction, or to move for voluntary dismissal. Gov. Addm. /10–11(CA Docket for Appeal 08-1909, Order of September 3, 2008). On September 23, 2008, Chiang filed a motion to voluntarily dismiss Appeal 08-1909 (Gov. Supp. Appx. / 52–53), and on October 7, 2008, this Court issued a judgment and mandate ordering the voluntary dismissal of Appeal 08-1909 (Gov. Addm. / 12). Chiang did not file a new notice of appeal, amend his amended notice of appeal of August 18, 2008, or file a subsequent notice of appeal after the voluntary dismissal, to preserve or reinstate a challenge to the District Court's denial of the fourth motion for injunction; however, he continues to press the issue in his initial brief in this action (Appeal 08-2105). Chiang's Initial Brief ("App. Br. / ##") / 1, 10, 11–14.

Additionally, after Magistrate Judge Dein issued her Report and Recommendation, Chiang filed a motion to amend his amended complaint. App. Appx. II / 300–301 (Docket No. 49). The Government opposed (Docket No. 53), and by electronic order, the District Court denied Chiang's motion to amend his amended complaint (Docket Entry of August 11, 2008). Chiang did not raise a

challenge to this separate ruling in his notice of appeal (*see* App. Appx. II / 313-314), but he continues to press this issue in his initial brief (App. Br. / 2, 10,

14–17).

## STATEMENT OF THE FACTS

On September 7, 2006, Chiang, a United States citizen, filed a petition with the USCIS to have Amy classified as a nonimmigrant under 8 U.S.C. § 1101(a)(15)(K)(I), as an alien fiancée who seeks to enter the United States to conclude a valid marriage within 90 days ("I-129F, Petition for Fiancée" or I-129F Petition").  Gov. Supp. Appx. / 21–22 (Docket No. 23, Defendants' Opposition to Motion for TRO, at Exhibit A, Declaration of Rachel Ann Peterson, U.S. Department of State, August 2, 2007 ("Peterson Declaration"), ¶ 3.  On October 23, 2006, the USCIS mailed Chiang a notice that the USCIS had approved the I-129F Petition.  Gov. Supp. Appx. / 23 (Docket No. 23, Exhibit B).

As the beneficiary of a fiancée petition, Amy was subject to a routine name check as required in Volume 9 of the United States Department of State Foreign Affairs Manual ("FAM"), 9 FAM 42.62 PN3.1.  Pursuant to 9 FAM 42.62 PN3.1,[2] an applicant's petition for Immigrant Visa and Alien Registration cannot be processed before the name check is completed.  Gov. Supp. Appx. / 21–22 (Peterson Declaration, ¶ 4).  On March 3, 2007, the National Visa Center ("NVC")

---

[2]    Foreign Affairs Manual; 9 FAM – "Visas" *available at*: http://foia.state.gov/regs/fams.asp?level=2&id=10&fam=0.

sent Amy's case to the Consulate in Guangzhou, China, and the required name

check for Amy was completed on April 24, 2007 (Gov. Supp. Appx. / 21–22

(Peterson Declaration, ¶¶ 5, 6)).

Chiang and Amy were married in China in April 2007, according to Chiang,

Amy, and a witness. App. Appx I /41 at n. 2 ("Chiang married his fiancée in

China. This marriage is honored by the Chinese people."); App. Appx. I /54 ¶ 5

(Chiang's affidavit); App. Appx I / 58 ¶¶ 1, 3 (Amy's affidavit); App. Appx. I / 64

¶ 4 (witness affidavit).

On April 30, 2007, the Consulate sent Amy the appropriate applications to

submit, including an Application for Immigrant Visa and Alien Registration

("Form DS-230"), as required pursuant to 9 FAM 41.81 PN 3.2 and 22 C.F.R. §

41.81. Gov. Supp. Appx. / 21–22 (Peterson Declaration, ¶ 7; *see also* DOS,

Guangzhou, China, Visas to the United States, Application Procedures, at

http://guangzhou.usembassy-china.org.cn/iv_k1/k2.htm.) The Consulate received

Amy's Form DS-230 on July 13, 2007 (Gov. Supp. Appx. / 21–22 (Peterson

Declaration, ¶ 8), and pursuant to the requirements of 9 FAM 42.63 PN5.1-1(e), 9

FAM 41.81 N3.4 and 22 C.F.R. § 42.62, an interview was scheduled for Amy at

the Consulate on September 25, 2007. Gov. Supp. Appx. / 21–22 (Peterson

Declaration, ¶ 9; Gov. Supp. Appx. / 24 (Docket No. 23, Gov. Opposition to TRO

9

– Declaration of Jeffrey Gorsky, U.S. Department of State, October 3, 2007, ¶ 2

("Gorsky Declaration")).[3]

A consular officer conducted the interview with only Amy present in

accordance with Consulate policy and adjudicated Amy's nonimmigrant visa

application after the interview was completed.  22 C.F.R. § 41.81; Gov. Appx. / 24

(Gorsky Declaration at ¶ 2).[4]  Based on Amy's testimony, documents and other

evidence, the consular officer determined that Amy and Chiang's relationship was

not bona fide, denied the visa petition, and returned the case to the USCIS for

review and possible revocation of Chiang's I-129F Petition.  App. Appx. I / 62.[5]

The reasons cited in the Consulate case notes for ineligibility included: (1) the fact

---

[3]    *See also* DOS, Guangzhou, China, Application Procedures, at
http://guangzhou.usembassy-china.org.cn/iv_k1/k2.htm; DOS, Guangzhou, China,
Application Procedures, Interview, at
http://guangzhou.usembassy-china.org.cn/iv_interview.htm (strongly advising
beneficiaries not to make irreversible commitments or plans until a visa is issued).

[4]    *See also* DOS Visas to the United States, Guangzhou, China,
Interviews, at http://guangzhou.usembassy-china.org.cn/iv_interview.htm
and Frequently Asked Questions, No. 35 at
http://guangzhou.usembassy-china.org.cn/iv_faqs.htm#35 (Petitioners are not
allowed to attend the interview except in rare exceptions) and No. 40 (outside of
the initial interview, Consulate officers are not allowed to discuss individual
cases).

[5]    *See also* DOS Visas to the United States, Guangzhou, China,
Application Procedures, Visa Refusals, at
http://guangzhou.usembassy-china.org.cn/visa_refusals.htm

that Chiang had previously filed for two other women from China as fiancées, (2) one of the women he brought to the United States and then divorced in 2003, (3) he filed for the other woman in 2006, the application was withdrawn, and there were discrepancies between the explanations provided for the withdrawal from the petitioner, applicant, and information in the visa file, and (4) the consular officer questioned the credibility of the evidence presented to prove the bona fide nature of the relationship between Amy and Chiang.  Gov. Supp. Appx. / 24 (Gorsky Declaration, ¶ 2).

The Consulate returned the case to the USCIS, and on May 9, 2008, the Government filed a Notice of Agency Action in the District Court reporting that the USCIS had denied Chiang's I-129F Petition on the grounds that because of his representations in the District Court about his marriage to Amy in China after the filing of his I-129F Petition, but before the Consulate interview, he had failed to establish eligibility for the immigration benefit (fiancée) sought in his I-129F Petition.  Gov. Supp. Appx. / 54–57 (Docket No. 39).[6]

---

[6]     *See also* Consulate General of the United States, Guangzhou, China, K-1 Frequently Asked Questions at: http://guangzhou.usembassy-china.org.cn/kvfaq.html:

**We decided to get married before my K-1 petition could be processed. What should I do?**

11

Chiang filed an administrative appeal of the USCIS determination with the USCIS Office of Administrative Appeals ("OAA"). App. Appx. II / 290–298. On March 17, 2009, the USCIS OAA, issued a three page decision on Chiang's administrative appeal denying the appeal and dismissing Chiang's I-129F Petition. Gov. Addnm. / 13–15.[7]

## SUMMARY OF ARGUMENT

The District Court correctly managed and decided all of the issues Chiang has appealed in this action.

---

If you get married, your K-1 petition will no longer be valid. Your spouse will need to file a different petition, Form I-130, with the [US]CIS.

[7]    On March 18, 2009, the Government filed a motion to supplement the record pursuant to Fed. R. App. P. 10(e)(3), to include the March 17, 2009, USCIS OAA decision. CA Docket Entry of March 18, 2009. The Plaintiff-Appellant did not file an opposition to the motion and the Court has not yet ruled on the motion.

First, Chiang has already voluntarily dismissed, in this Court, his appeal of the denial of his fourth motion for injunction and, as a consequence, there is no jurisdiction to hear an appeal on this issue.  Even if the Court were to consider the issue, it is clear from the record that the District Court did not abuse its discretion in denying Chiang's fourth motion for injunction because (1) the court lacked jurisdiction to review consular decisions; (2) Chiang failed to demonstrate that the USCIS's reason for denying his I-129F Petition was illegitimate; and (3) Chiang's constitutional claims were speculative and unfounded.

Second, Chiang is jurisdictionally barred from challenging the District Court's denial of his motion to amend his amended complaint, because he failed to specify this as an issue in his notice of appeal.  Regardless of this pleading defect, the District Court did not abuse its discretion in denying Chiang's motion to amend his amended complaint because (1) Chiang had sufficient notice and opportunity to cure the deficiencies in his initial complaint; (2) Chiang has repeatedly altered and amended his complaint in the face of adverse rulings; and (3) allowing amendment would be futile as the complaint would still fail to state a claim.

Finally, the District Court correctly dismissed Chiang's amended complaint for failure to state a claim because (1) Chiang's constitutional claims will not lie against federal agencies or federal officials acting in their official capacity; (2)

13

even if Chiang had intended to attribute his constitutional claims to federal officials in their individual capacity, such claims would still fail because Chiang offers no facts to support his claims; and (3) the doctrine of consular non-reviewability jurisdictionally bars review or reversal of the Consulate's decisions.

As explained further below, the District Court's rulings should be affirmed.

## ARGUMENT

### I. The District Court Correctly Denied Chiang's May 15, 2008 Motion For Preliminary Injunction

#### A. Chiang's Voluntary Dismissal Of the Appeal Of The Denial Of His May 18, 2008 Motion For Preliminary Injunction Renders The Issue Moot And The Court Lacks Jurisdiction Over the Issue

Chiang's voluntary dismissal of his appeal of the District Court's denial of his May 18, 2008 motion for preliminary injunction ("fourth motion for injunction") (Appeal 08-1909) (Gov. Supp. Appx. / 52–53) precludes him from reinstating this issue in this appeal.  In *Zheng v. Mukasey*, 546 F.3d 70 (1st Cir. 2008), an immigration case involving a denial of asylum, this Court addressed the issue of whether a plaintiff may reinstate an appeal that was previously withdrawn. Referencing the Ninth Circuit case of *United States v. Arevalo*, 408 F.3d 1233 (9th Cir. 2005), this Court held that "voluntary dismissal of an appeal usually deprives an appellate court of jurisdiction." *Zheng*, 546 F.3d at 71.  In *Arevalo*, the Ninth

Circuit adopted the approach of the Fifth, Sixth, and Seventh Circuits, holding that

"once an appeal is voluntarily dismissed appellate courts no longer have

jurisdiction over the merits of the appeal."  *Arevalo*, 408 F.3d at 1236.

In *Zheng*, the Court recognized an exception to the general rule that

voluntary dismissal deprives a court of jurisdiction, noting that courts "have

reinstated out of time appeals in extraordinary circumstances, such as when an

appeal has been dismissed by an attorney without the approval of the client."  546

F.3d at 71.  The Court permitted the *Zheng* plaintiff to reinstate her appeal because

it was withdrawn by her attorney without her consent.  *Id.*

Other than the exception provided in *Zheng*, voluntary dismissals are

generally unappealable unless a plaintiff moves for voluntary dismissal in order to

secure a final judgment to support appeal of an interlocutory order.  In *Cashmere

& Camel Hair Mfrs. v. Saks Fifth Ave.*, 284 F.3d 302, 308 (1st Cir. 2002),  the

court recognized that "[i]t is well known that generally a plaintiff may not appeal a

voluntary dismissal because there is no involuntary or adverse judgment against

him" unless the dismissal was sought to expedite review of a prejudicial

interlocutory ruling.

In the instant case, there is no indication that Chiang's attorney dismissed

Appeal 08-1909 without Chiang's consent or that there is any other extraordinary

15

circumstance that would justify reinstatement of the appeal. Moreover, Chiang's

voluntary dismissal of Appeal 08-1909 was in response to the Court's order to

show cause why the appeal should not be dismissed for lack of jurisdiction, or for

Chiang to move for voluntary dismissal. Gov. Addm. / 10–11 (CA 08-1909, Order

of September 3, 2008). Chiang elected to voluntarily dismiss Appeal 08-1909, and

the Court allowed the motion and dismissed the appeal. Gov. Addm/ 12. Chiang

did not file a new notice of appeal, amend his August 18, 2008, amended notice of

appeal, or file a subsequent notice of appeal after the voluntary dismissal of Appeal

08-1909 in this Court, to preserve or reinstate a challenge to the District Court's

denial of the fourth motion for injunction. Accordingly, Chiang should not be

allowed to reinstate this challenge again in this appeal.[8]

─────────────────

[8]     There is additional justification in the record to support the finality of
Chiang's voluntary dismissal of the appeal of the denial of the preliminary
injunction. First, in section C of the U.S. Court of Appeals Docketing Statement,
filed on October 6, 2008, Chiang indicates that he had previously appealed the
denial of the preliminary injunction and that the appeal was dismissed after the
District Court entered final judgment. Gov. Supp. Appx. / 58–64; CA Docket
Entry of October 7, 2009. Second, Chiang admits in his Initial Brief that "Chiang
did file a motion to dismiss that appeal.. .", and that "[i]n retrospect, perhaps
Chiang should have attempted to show cause why that appeal should have
proceeded." App. Br. / 11. Finally, the testimony of Chiang's counsel at the
hearing before Magistrate Judge Dein contradicts Chiang's argument that he is still
seeking injunctive relief in this action since, at that point, Chiang's counsel appears
to have represented to Magistrate Judge Dein that Chiang was resolved to seek a
remedy of only monetary damages for alleged constitutional violations. Gov.
Supp. Appx. / 65–72, at 69–71 (Docket No. 58, Transcript of Motion Hearing held

16

**B.    The District Court Did Not Abuse Its Discretion In Denying Chiang's May 18, 2008 Motion For Preliminary Injunction**

Even if this Court were to consider the denial of Chiang's fourth motion for injunction, this Court should still affirm the determination of the District Court.

Review of the District Court's grant or denial of a preliminary injunction is for abuse of discretion. *Bl(a)ck Tea Society v. City Of Boston*, 378 F.3d 8, 11 (1st Cir. 2004) *citing Charlesbank Equity Fund II v. Blinds to Go, Inc.*, 370 F.3d 151, 158 (1st Cir. 2004). The standard of review is deferential, and " the deference that it entails is most appropriate with respect to issues of judgment and the balancing of conflicting factors." *Id.*

The District Court carefully considered Chiang's fourth motion for injunction, applied the correct standard, and appropriately concluded that Chiang had failed to demonstrate a likelihood of success on the merits of his challenge to the USCIS's denial of his I-129F Petition, or his alleged constitutional claims. App. Addm. / 8–11 (Docket No. 46). In contrast, on appeal Chiang has done nothing more than rehash the same arguments previously rejected by the District

---

on May 12, 2008). In sum, Chiang's appeal of the denial of the fourth motion for injunction is moot. As noted by the Court in its Order to Plaintiff on September 3, 2008, "preliminary injunctions, which are interlocutory in nature, cannot survive a final order of dismissal." *Chaparro-Febus v. Int'l Longshoremen Assoc.*, 983 F.2d 325, 331 n.5 (1st Cir. 1993).

Court without articulating any explanation or authority showing that the District

Court's decision was in error.  App. Br. / 11–14.

The District Court correctly set the foundation for its analysis by first

reiterating its prior determination that there was no jurisdiction to review the

facially legitimate and bona fide reasons for the Consulate's denial of Amy's visa

application pursuant to the well established doctrine of consular non-reviewability.

App. Addm. / 8; Gov. Supp. Addm. / 1–9; *Chiang*, 529 F. Supp. 2d at 170–171

(citing  *Am. Acad. Of Religion v. Chertoff*, 463 F. Supp. 2d 400, 418–419

(S.D.N.Y. 2006)); *Kleindienst v. Mandell*, 408 U.S. 753, 770 (1972); *Abourezk v.*

*Reagan*, 592 F. Supp. 880, 887 (D.D.C. 1984); *see also Bustamante v. Mukasey*,

531 F. 3d 1059 (9th Cir. 2008); *Silverman v. Rogers*, 437 F. 2d 102 (1st Cir. 1970).

The District Court then moved on to the USCIS's denial of Chiang's I-129F

Petition, observing that in the face of a constitutional challenge the USCIS must

present a "facially legitimate and bona fide" reason for the denial of an

immigration benefit.  App. Addm. / 9, citing *Am. Acad. Of Religion* and

*Kleindienst supra*.  Based on this standard, the District Court went on to explain

that the USCIS's determination to deny Chiang's I-129F Petition was facially

legitimate and bona fide because it relied on Chiang's and Amy's representations

that they had been married in China in April of 2007, prior to the Consulate's

18

adjudication of Amy's visa application.  The District Court also found that Chiang, by his own representations, no longer met his burden of establishing the necessary eligibility for the benefit sought – unmarried with a bona fide intention to marry within 90 days after entry into the United States.  App. Addm. / 10; Gov. Supp. Appx. / 38–51 (Docket No. 44).  The District Court concluded by finding that Chiang had failed to demonstrate that the USCIS's determination was meritless and that he had a likelihood of success on his claim.  App. Addm. / 10.

The District Court also correctly distinguished Chiang's attempts to apply Bureau of Immigration Appeals ("BIA") precedents regarding the significance of "legally recognized" and "traditional" marriages in China in the asylum and refugee context to the I-129F Petition process (App. Addm. / 9–10).  Chiang simply rehashes these arguments on appeal (App. Br. / 21–23).  These arguments are fundamentally flawed because (1) they involve entirely different and distinct statutory provisions and requirements, and (2) Chiang's misplaced interpretation of the BIA precedents he cites is not valid in the asylum and refugee context, let alone in the I-129F Petition context.  *See* App. Addm. / 9–10; Gov. Supp. Appx. / 47–48 (Docket No. 44).  The flawed logic presented by Chiang on this issue was also rejected for substantially the same reasons in the USCIS OAA's recent decision dismissing Chiang's administrative appeal and affirming the denial of his I-129F

Petition (discussed below).  Gov. Addm. / 13–15; *see also* note 7 *supra*.       Most

importantly, though, the asylum and refugee arguments are not applicable because

the USCIS's denial of Chiang's I-129F Petition, based on Chiang's representations

that he married Amy in China prior to the Consulate interview, does not validate

the argument that a traditional marriage suffices as proof of an official or legal

marriage for purposes of denial of an I-129F Petition (or for the granting of an I-

130 spouse petition); rather, the denial reflects a determination by the USCIS that

Chiang has failed to meet his burden of **establishing eligibility** for the benefit

sought  – unmarried with the intent to conclude a valid marriage within 90 days

after admission to the United States.  *Id.*

By regulation and case law, an individual must submit specific types of

evidence to establish a spousal relationship for immigration purposes, including a

certificate of marriage issued by civil authorities.  8 C.F.R. § 204.2(a)(2) (an I-130

petition).  In the context of an I-129F Petition, however, the lack of such formal

evidence of a spousal relationship does not compel the conclusion that the alien is

unmarried.

The affidavits and representations in Chiang's pleadings in the District Court

clearly put into question the intent and eligibility elements of the I-129F Petition

since it appears that Chiang and Amy in fact were married.  *See* App. Appx I /41 at

n. 2 ("Chiang married his fiancée in China.  This marriage is honored by the Chinese people."); App. Appx. I /54 ¶ 5 (Chiang's affidavit); App. Appx I / 58 ¶¶ 1, 3 (Amy's affidavit); App. Appx. I / 64 ¶ 4 (witness affidavit).   This raised legitimate concerns at the USCIS, and the petition was appropriately denied, not necessarily because of the marriage, but because Chiang had not met his burden of establishing the necessary eligibility for the benefit sought.

Contrary to Chiang's assertions, it is well established under the Immigration and Nationality Act and in BIA decisions that the burden of proving eligibility for an immigration benefit remains entirely with the applicant, not with the USCIS. *See* 8 U.S.C. § 1361; *Matter of Brantigan*, 11 I. & N. Dec. 493 (BIA 1966).  As the District Court observed, the burden is on Chiang to establish eligibility for the benefit he has sought, and it was not illegitimate for the USCIS to deny the I-129F Petition based on Chiang's representations that he had been married.  App. Addm. / 9–10.

The District Court's conclusions are also consistent with BIA precedence as articulated in the recently issued decision of the USCIS OAA, dismissing Chiang's administrative appeal and affirming the denial of his I-129F Petition.  Gov. Addm. / 13–15; *see also* note 7 *supra*.  Similar to the District Court's analysis, the USCIS OAA found (1) that the burden of demonstrating eligibility for a benefit – by a

21

preponderance of the evidence – is on the petitioner, (2) that Chiang had not provided sufficiently probative evidence to meet his burden to demonstrate that the marriage was not legally valid, and (3) that reliance on the asylum and refugee arguments was misguided because the BIA has not issued a decision addressing the issue of validity of traditional marriages in China.  Gov. Addm. / 13–15.

Chiang also incorrectly contends on appeal that the Government has changed its grounds for the denial of Amy's visa and no longer relies on the Consulate's finding of the lack of a bona fide relationship, but instead on the USCIS's determination that Chiang and Amy are married.  App. Br. 20, 27–28. The two determinations are distinct and stand on their own.  The Consulate's determination was based on the interview of Amy, the alien nonimmigrant beneficiary, and an evaluation of the DS-230 application.  *See* App. Appx. I / 62; Gov. Supp. Appx. / 24 (Gorsky Declaration, ¶ 2).  The USCIS determination, as explained above, addresses the U.S. citizen petitioner's (Chiang's) I-129 Petition, and the petitioner's eligibility for the immigration benefit sought.  *See* Gov. Supp. Appx. / 56–57 (Docket No. 39); Gov. Addm.. / 13–15.  Thus, as the District Court correctly concluded, "[t]he fact that the Consulate and the USCIS gave two different reasons for the denial does not render either of those reasons ineffective.

Chiang and Amy could be both married and lacking a bona fide relationship." App. Addm. / 10.

The District Court also addressed Chiang's constitutional claims and found them lacking and unfounded.  App. Addm. / 10–11.  In particular, the District Court found that Chiang had failed to demonstrate that the USCIS is excluding Amy to prevent her from marrying Chiang, and that Chiang's contention that an unnamed lawyer in the Consulate building informed him that the Consulate's denial of Amy's visa was in retaliation for his District Court action was insufficient to sustain injunctive relief.  *Id*.  Chiang's appeal has added nothing to these speculative and unsubstantiated allegations.  App. Br. / 6–10,18–20, 26–28.

Finally, the District Court addressed Chiang's allegation of continuing delay in the visa adjudication and administrative appeal process.  The District Court dismissed that argument because the USCIS had already denied Chiang's I-129 Petition, and because only one month had passed since Chiang had filed his administrative appeal of the denial, which was not unreasonable.  App. Addm. / 11. Chiang has reasserted this allegation on appeal and speculated, without any substantiation, that it could take two or three, or even twenty years to resolve the appeal with the USCIS.  App. Br. / 12.  This argument is now moot since the

23

USCIS OAA has issued a decision dismissing Chiang's appeal and affirming the denial of his I-129F Petition.  Gov. Addm.. / 13–15.

In summary, the District Court's denial of Chiang's fourth motion for injunction was thorough and well founded.  On appeal, Chiang has failed to demonstrate how the District Court erred and has provided no basis for a finding that the District Court abused its discretion.  Accordingly, the District Court's denial of Chiang's fourth motion for injunction should be affirmed.

## II.    The District Court Correctly Denied Chiang's Motion To Amend His Amended Complaint

### A.    Chiang Should Not Be Allowed To Contest The Denial Of His Motion To Amend His Amended Complaint Because His Amended Notice Of Appeal Did Not Specify The District Court's Denial Of His Motion To Amend His Amended Complaint

In his August 18, 2008, amended notice of appeal, Chiang states that he appeals two specific orders: (1) the District Court's June 11, 2008, order dismissing his fourth motion for injunction (which was voluntarily dismissed at the

appellate level), and (2) the District Court's August 14, 2008, order dismissing his amended complaint "in accordance with the [District] Court's adoption of the Report and Recommendation allowing the [Government's] motion to dismiss." App. Appx. / 313–314 (Docket No. 55).  Despite this specific delineation of the issues on appeal, Chiang's Initial Brief includes a third issue: the District Court's August 11, 2008, denial of his motion to amend his amended complaint.  App. Br. / 2.  Because Chiang did not include this issue in his August 18, 2008, amended notice of appeal, the Court lacks jurisdiction to consider the issue.

Federal Rule of Appellate Procedure 3(c)(1)(B) states that the notice of appeal must "designate the judgment, order, or part thereof being appealed,"  Fed. R. App. P. 3(c)(1)(b), before it confers jurisdiction on a court of appeals to hear a case.  Although the Court construes the Rule 3 requirements liberally, it adopts the general rule that "if an appellant...chooses to designate specific determinations in his notice of appeal – rather than simply appealing from the entire judgment – only the specified issues may be raised on appeal."  *Constructora Andrade Gutierrez, S.A. v. American Intern. Ins. Co. of Puerto Rico ("Andrade")*, 467 F.3d 38, 43 (1st Cir. 2006) (citing *United States v. Universal Mgmt. Servs., Inc.*, 191 F.3d 750, 756 (6th Cir.1999));  *See also Brooks v. AIG SunAmerica Life Assur. Co.*, 480 F.3d 579, 585 (1st Cir. 2007) (citing *Andrade*).

25

Notices of appeal are not analyzed "in a vacuum" but rather "in the context of the entire record." *Kotler v. Tobacco Co.*, 981 F.2d 7, 11 (1st Cir. 1992); *Andrade* at 44 (citing *Blockel v. J.C. Penney Co., Inc.*, 337 F. 3d 17, 23-24 (1st Cir. 2003)).  Indeed, the Court has stated that "it is an elementary principle that a notice of appeal cannot be filed in a desultory fashion but, rather, must specify a particular order or judgment and must be filed within the four corners of the case in which that order or judgment was entered." *In re High Voltage Engineering Corp.*, 544 F.3d 315, 318 (1st Cir. 2008).  Such failure to include a particular issue in a notice of appeal "can be fatal to this court's jurisdiction over that issue." *Andrade*, 467 F.3d at 43–44 (citing *Poy v. Boutselis*, 352 F.3d 479, 486 (1st Cir. 2003)).

The Court has excused a plaintiff's failure to specifically denote the issues for appeal when the notice, in context, "adequately apprise[s] one party of the other's intention to appeal a given order." *Alstom Caribe, Inc. v. George P. Reintjes Co.*, 484 F. 3d 106, 112 (1st Cir. 2007) (citing *Kotler*, 981 F.3d 7, 11 (1st Cir. 1992)).  In this case, omitting the order denying the motion to amend, while at the same time specifying completely separate orders in the notice of appeal "loudly proclaims plaintiff's intention not to appeal from the former order." *Kotler*, 981 F.3d at 11.  The Government was not apprised of any intention by Chiang to appeal the District Court's denial of his motion to amend his amended complaint, and his

amended notice of appeal was unequivocally specific to the District Court's order of dismissal of his amended complaint. App. Appx. / 313–314 (Docket No. 55).

Thus, Chiang's failure to specify in his amended notice of appeal the District Court's denial of his motion to amend his amended complaint precludes this Court from exercising jurisdiction over this issue.[9]

> **B.    The District Court's Denial of Chiang's Motion to Amend His Amended Complaint Should Be Affirmed Because Chiang Failed To Cure The Deficiencies Of His Original Complaint In His Amended Complaint, He Sought To Amend His Allegations Whenever An Unfavorable Decision Seemed Likely, And Because Further Amendment Would Be Futile**

---

[9]     The Government acknowledges the rule articulated in *John's Insulation, Inc. v. L. Addison & Assoc.*, 156 F.3d 101, 105 (1st Cir. 1998), that a notice of appeal that designates the final judgment encompasses not only that judgment, but also all earlier interlocutory orders that merge in the judgment. *Id.* (citations omitted). However, the Government submits that the procedural history of this case fits the exception to this rule in that the dismissal of Chiang's amended complaint demonstrates that Chiang failed to comply with the District Court's initial Memorandum and Order of December 4, 2007, to amend his complaint to "include any justiciable claims not dismissed herein." *Chiang*, 529 F. Supp. 2d at 174. The ultimate determination and reasoning of the District Court is also consistent with the reasoning for the exception to the rule. *See John's Insulation, Inc.*, 156 F.3d at 107 ("In affirming a judgment dismissing a complaint for failure to prosecute or to **comply** with the district court's orders, an appellate court is determining that the plaintiff's lack of diligence in litigation deserved to be sanctioned by having its complaint ejected from the courts . . .") (emphasis added).

Even if this Court had jurisdiction to consider the District Court's denial of Chiang's motion to amend his amended complaint, the Court should affirm the District Court's order.

Denial of a motion to file an amended complaint is reviewed for abuse of discretion and to assess whether there is an adequate reason for the denial of leave to amend (e.g., undue delay, bad faith, dilatory motive, futility of amendment, prejudice). *Glassman v. Computervision Corp.*, 90 F.3d 617, 622 (1st Cir. 1996). In reviewing for futility, the same standard of legal sufficiency as applies to a Rule 12(b)(6) motion for failure to state a claim is applied. *Id.* at 623.

Chiang sought to amend his amended complaint on the grounds that the Magistrate Judge "ruled that some defendants were improper and made other rulings regarding the claims set forth in the Amended Complaint." App. Appx. / 300–301 (Docket No. 49). Specifically, Chiang's motion to amend his amended complaint sought to remove the United States and the Consulate as defendants, as well as assert claims against Vice General Consul Ferinden individually, as opposed to officially, and to add two unknown Consulate officials. *Id.* There are three reasons why the District Court's denial of Chiang's motion to amend his amended complaint should be affirmed.

28

First, Chiang has already had the opportunity to amend his complaint, but failed to adequately cure the deficiencies of his original complaint. Federal Rule of Civil Procedure 15(a) states that leave to amend a pleading "shall be freely given when justice so requires" reflecting the liberal amendment policy underlying the rule. *O'Connell v. Hyatt Hotels of P.R.*, 357 F.3d 152, 154 (1st Cir. 2004). Even with this policy, though, a district court has broad discretion in ruling on a motion to amend the pleadings. *U.S. Inv. and Dev. Corp. v. Cruz*, 780 F.2d 166, 167 (1st Cir. 1986). Legitimate grounds for denial include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment ,etc. . . ." *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also ACA Fin. Guar. Corp. v. Advest, Inc.*, 512 F.3d 46, 57 (1st Cir. 2008); *U.S. ex rel. Rost v. Pfizer, Inc.*, 507 F.3d 720, 733-734 (1st Cir. 2007).

This Court has previously upheld a district court's denial of  plaintiffs' motion to amend their amended complaint on the grounds that plaintiffs had sufficient notice and opportunity to cure deficiencies. *Mirpuri v. ACT Mfg., Inc.*, 212 F.3d 624 (1st Cir. 2000). In *Mirpuri* the Court relied on the district court's decision that made clear that a plaintiff's failure to rectify his or her complaint after

29

notice of defect and time for amendment should cause a court to enter final

judgment. *Id.* at 626–627.  The district court noted:

> The plaintiffs were given fair warning both of the deficiencies in their initial complaint and the need to draft an amended complaint upon which the court could finally act at the motion to dismiss stage. They were afforded adequate time to do so. The evaluation of pleadings cannot be extended endlessly. These plaintiffs have failed in their effort to present a complaint which can withstand scrutiny and that failure should be recognized with finality in this case.

*Id.*; *see also ACA Fin. Guar. Corp.*, 512 F.3d at 57 ("The plaintiffs do not get

leisurely repeated bites at the apple forcing a district judge to decide whether each

successive complaint was adequate under the PSLRA.").

In the December 4, 2007, Memorandum and Order dismissing the majority

of Chiang's original compliant, the District Court apprised Chiang of the numerous

jurisdictional problems related to his claims and ordered him to amend his

complaint accordingly or risk dismissal of the complaint in its entirety.  Gov.

Addm. / 9; *Chiang*, 529 F. Supp. 2d at 174.  Despite this notice, Chiang reasserted

his constitutional *Bivens*[10] claims against the United States and the Consulate in his amended complaint. App. Appx. II / 170–177 (Docket No. 27).

Chiang is engaged in exactly the same type of repetitive filing without basis as in *Mirpuri* and *ACA*, and should not be allowed to amend his amended complaint. Chiang has already had the opportunity to amend his complaint, but simply failed to adequately cure its deficiencies or to state any justiciable claims. Chiang's failure to heed the District Court's direction justified the denial of his motion to amend as well as the dismissal of his action. *See* Gov. Addm. / 9; *Chiang*, 529 F. Supp. 2d at 174.

Second, Chiang has amended, or attempted to amend, his complaint whenever the case appears to be proceeding in an adverse direction. Indeed, Chiang's last motion to amend his amended complaint was filed on July 17, 2008, fourteen days after Magistrate Judge Dein recommended dismissal of Chiang's amended complaint on July 3, 2008. Docket Nos. 48, 49. As the District Court noted in its June 6, 2008, Memorandum and Order concerning Chiang's fourth motion for injunction, Chiang has continued to make new allegations against the

---

[10]    *Bivens v. Six Unknown Fed. Narcotics Officers*, 403 U.S. 388, 91 (1971). *Bivens* established a cause of action in federal court for damages against federal officials in their individual capacity who have violated a victim's constitutional rights under color of law.

31

Government in motions filed in this action and continues to alter his claims as the

government processes his petition.  App. Addm. / 2 (Docket No. 46).  Chiang

should not be entitled to continue to gamble with his claims in the hope of striking

one that will persuade the court.  *Mirpuri, 212 F.3d at 626–627;  ACA Fin. Guar.

Corp.*, 512 F.3d at 57.[11]

Finally, the District Court's denial of Chiang's motion to amend his

amended complaint should be affirmed because of the futility of allowing such

amendment.  "'Futility' means that the complaint, as amended, would fail to state a

claim upon which relief could be granted."  *Glassman*, 90 F.3d at 623.  The district

court applies the same standard of legal sufficiency as applies to a Rule 12(b)(6)

---

[11]       Chiang has attempted to alter his claims even when they are
contradicted by the record.  For example, and significantly, in his February 29,
2008, opposition to the Government's motion to dismiss the amended complaint,
Chiang contended that his *Bivens* claims were valid and were brought against the
officials personally.  App. Appx. II / 180–189 (Docket No. 31, 32).  However, this
contention is flatly contradicted by the plain language of his amended complaint, in
which the defendants are listed only in their official capacities.  App. Appx. /
170–177 (Docket No. 27).  Magistrate Judge Dein found the same in her Report
and Recommendation and concluded that Chiang's alleged *Bivens* claims were not
actionable.  App. Addm. / 22–25 (Docket No. 48).  Having failed to properly plead
his *Bivens* claims, Chiang now attempts to amend his amended complaint to
narrow its scope and to allege claims against named and unnamed Consulate
employees in their individual capacities instead of their official capacities. App.
Appx. II / 300-301 (Docket No. 49).  Chiang should not be permitted to repeatedly
amend and alter his complaint as his case progresses and unfavorable rulings are
issued; at some point, Chiang must be required to 'fish or cut bait.'

motion for failure to state an actionable claim when reviewing for futility of an amendment. *Id.*

While Chiang's removal of the United States and the Consulate as defendants would correctly address some of the amended complaint's defects that Magistrate Judge Dein identified in her Report and Recommendation, Chiang ignored the other findings as to the liability of Brian Ferinden, Vice General Consul in Guangzhou, China. Magistrate Judge Dein found that Chiang failed to state a claim against Ferinden in his official capacity and that "even if [Chiang's allegation] could be attributed to Ferinden in his individual capacity (which it cannot), it does not rise to the level of a constitutional violation" because "none of [Chiang's] allegations state or even suggest that any of the individual defendants had any direct, or even indirect, involvement in the processing of Amy's visa application." App. Addm. / 25, n.5 (Docket No. 48).

Instead of heeding this notice, Chiang proceeded in direct opposition to it by seeking to add a constitutional claim against Ferinden in his individual capacity without a shred of support for the claim. App. Appx. II / 300 (Docket No. 49). Chiang did not attribute any statements to Ferinden or make any allegation as to his involvement in the processing of Amy's visa, let alone allegations that Ferinden

violated Chiang's constitutional rights. *Id.*[12] Thus, even if the amended complaint were amended to allow claims against Ferinden in his individual capacity, it would still fail the requisite standard of legal sufficiency.[13]

In summary, Chiang's motion to amend his amended complaint appears to be solely designed to avert imminent defeat and any amendment of the amended complaint would still fail to state a cognizable claim for relief. *See Glassman*, 90 F.3d at 623; *Mirpuri supra*. Accordingly, the District Court's denial of the motion to amend the amended complaint should be affirmed.

## III. The District Court Correctly Dismissed Chiang's Amended Complaint By Adopting Magistrate Judge Dein's Report And Recommendation

---

[12] *See also c.f. Castellanos, et al. v. Pfizer, Inc., et al.*, 511 F.Supp. 2d 1343, 2008 WL 2127987 (S.D. Fla) at 6–7 (Because plaintiffs were not located within the United States at the time their visas were revoked, they are not entitled to the protections of the Fifth Amendment, and the court is without the power to review the revocation of visas by the State Department and its officers. *Citing* 8 U.S.C. § 1201(I)).

[13] Chiang also seeks to amend the amended complaint to add claims against two consular officials, whose names are unknown. According to Chiang, the first consular official deprived him of his constitutional rights by making his fiancée "wait until she was the last person interviewed", and the second consular official of "acting in the concerted effort to deny Chiang's constitutional rights" by taking Chiang's entire file. App. Appx. II / 300–301. Like the Ferinden allegations, however, there is no explanation as to how these consular officials' actions deprived Chiang of any constitutional rights, nor can any plausible inference be made to support these claims. Accordingly, these claims fail as well.

A district court's allowance of a motion to dismiss for failure to state a claim is reviewed de novo. *Marrero-Gutierrez v. Molina*, 491 F.3d 1, 5 (1st Cir. 2007) ( ". . .taking as true the well pleaded facts in the complaint and drawing all reasonable inferences in favor of the plaintiff."); *McCloskey v. Mueller*, 446 F.3d 262, 266 (1st Cir. 2006) (same) (citing, inter alia, *Redondo-Borges v. U.S. Dep't of Housing & Urban Dev.*, 421 F.3d 1, 5 (1st Cir. 2005)).

As explained below, Magistrate Judge Dein's Report and Recommendation thoroughly examined the sufficiency of Chiang's amended complaint and found it lacking on multiple grounds including the standard of review for evaluating the sufficiency of complaints articulated by the Supreme Court in *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964–1969 (2007).

Chiang's challenge to the dismissal of his amended complaint is fundamentally flawed because it relies on a faulty interpretation of the standard of review under Federal Rule of Civil Procedure 12(b)(6). Chiang cites *Conley v. Gibson,* 355 U.S. 41, 46 (1957), for the proposition that a court may dismiss for failure to state a claim only when "it appears beyond doubt that the plaintiff can prove 'no set of facts' in support of his claim." App. Br. / 18. Chiang's reliance on *Conley*, however, is misplaced and applies a "literal" interpretation of the

language in *Conley* which was soundly distinguished and rejected by the Supreme

Court in *Bell Atlantic*, 127 S. Ct. at 1964–1969.

 In *Bell Atlantic*, the Supreme Court clarified the understanding of the "no set

of facts" language established in *Conley*, noting that:

> . . . *Conley's* "no set of facts" language has been questioned,
> criticized, and explained away long enough. To be fair to the *Conley*
> Court, the passage should be understood in light of the opinion's
> preceding summary of the complaint's concrete allegations, which the
> Court quite reasonably understood as amply stating a claim for relief.
> But the passage so often quoted fails to mention this understanding on
> the part of the Court, and after puzzling the profession for 50 years,
> this famous observation has earned its retirement. The phrase is best
> forgotten as an incomplete, negative gloss on an accepted pleading
> standard: once a claim has been stated adequately, it may be supported
> by showing any set of facts consistent with the allegations in the
> complaint. (citations omitted).

 *Bell Atlantic*, 127 S. Ct. at 1969; *see also Rodriguez-Ortiz v. Margo Caribe, Inc.,*

490 F. 3d 92, 95–96 (1st Cir. 2007) (quoting *Bell Atlantic*).

 The Supreme Court articulated that *Conley* "described the breadth of

opportunity to prove what an adequate complaint claims, **not the minimum**

**standard of adequate pleading to govern a complaint's survival**." *Id.*

(emphasis added).  In *Bell Atlantic*, the Supreme Court concluded that the correct

standard does not require heightened fact pleading but "only enough facts to state a

claim for relief that is plausible on its face," and because the plaintiffs  "have not

36

nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Bell Atlantic*, 127 S. Ct. at 1974.

Here, Magistrate Judge Dein properly applied the *Bell Atlantic* standard. First, Magistrate Judge Dein reviewed Chiang's amended complaint to see if he had properly alleged any claims.  App. Addm. / 22–27.  Magistrate Judge Dein correctly found that Chiang had failed to properly plead any *Bivens* constitutional claims in Counts I through IV, because Chiang only named the United States and the Consulate, a federal agency.  App. Addm. / 25.  Accordingly, Magistrate Judge Dein recommended dismissal of these claims because *Bivens* actions will not lie against an agency of the federal government or officers acting in their official capacity – but only against officials in their individual capacities, and, even then, a plaintiff must state a claim for direct, rather than vicarious liability.  App. Addm. / 22–25, *citing McClosky v. Mueller*, 446 F. 3d 262, 271–272 (1st Cir. 2006) and *Ruiz Rivera v. Riley*, 209 F. 3d 24, 26, 28–29 (1st Cir. 2000) (failure to name the proper defendants in a *Bivens* action mandates the dismissal of the action).  Hence, it was unnecessary for Magistrate Judge Dein to even reach the second step of *Bell Atlantic* to determine whether the facts upon which Chiang based his claims crossed the line from conceivable to plausible, since Chiang failed to even properly state a claim.

37

Second, Magistrate Judge Dein drew all reasonable inferences in favor of Chiang's constitutional allegations, applied the core plausibility analysis of *Bell Atlantic*, and still found Chiang's complaint deficient. App. Addm. / 25–26, n. 5. Magistrate Judge Dein found that Chiang had failed to state a claim against Vice General Consul Brian Ferinden (sued in his official capacity), and that "even if [Chiang's allegation] could be attributed to Ferinden in his individual capacity (which it cannot), it does not rise to the level of a constitutional violation" because "none of [Chiang's] allegations state or even suggest that any of the individual defendants had any direct, or even indirect, involvement in the processing of Amy's visa application." *Id.*; *see also Bell Atlantic*, 127 S. Ct. at 1969, *citing O'Brien v. DiGrazia*, 544 F. 2d 543, 546, n. 3 (1st Cir. 1976) ("[W]hen a plaintiff ... supplies facts to support his claim, we do not think that *Conley* imposes a duty on the courts to conjure up unpleaded facts that might turn a frivolous claim of unconstitutional ... action into a substantial one").

Finally, with respect to the remaining counts in Chiang's amended complaint (Counts V, VI and VII), Magistrate Judge Dein correctly found that they were jurisdictionally barred since they ultimately sought mandamus of the Consulate to re-review Amy's application, and review or reversal of the Consulate's previous decisions. App. Addm. / 25–27. In doing this Magistrate Judge Dein reiterated the

38

District Court's ruling in *Chiang* that the doctrine of consular non-reviewability bars the review of a consular's decision to exclude an alien from the United States, and directly noted that the constitutional arguments raised by *Chiang* in his amended complaint were insufficient to overcome the jurisdictional bar. *Id.*

In summary, the recommendation of dismissal was well founded and justified, and the District Court's adoption of the recommendation was appropriate and should be affirmed.

## CONCLUSION

For all the foregoing reasons, the Government requests that the Court of Appeals affirm the determinations of the District Court.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

39

By: _____

       Anton P. Giedt
       Assistant U.S. Attorney
       U.S. Attorney's Office
       1 Courthouse Way - Suite 9200
       Boston, MA 02210
       (617) 748-3309

## CERTIFICATE OF COMPLIANCE WITH FRAP 32(a)(7)( C )

The foregoing brief was prepared using Corel WordPerfect 12 in Times New Roman, 14 point, proportional typeface.  I hereby certify that, according to the calculation made by WordPerfect, there are 9,141 words contained in this brief, inclusive of footnotes.

_____

Anton P. Giedt
Assistant U.S. Attorney
Attorney for the United States
1 Courthouse Way - Suite 9200
Boston, MA 02210
617-748-3309  (Voice)

## **<u>CERTIFICATE OF SERVICE</u>**

  I, Anton P. Giedt, Assistant U.S. Attorney, certify that I have caused two copies of the Government's brief to be served by first-class mail on the Plaintiff-Appellant's counsel Dean Carnahan, at the Law Offices of Dean Carnahan, 51 Newcomb Street, Arlington, MA 02474.

     By: _____

        Anton P. Giedt
        Assistant U.S. Attorney

Appeal No. 08-2105
_____

# UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

_____

WEN Y. CHIANG,
Plaintiff-Appellant,

v.

LYNN SKIERIK, ET AL.,
Defendant-Appellees.

_____

BRIEF OF DEFENDANT-APPELLEES

_____

ADDENDUM TABLE OF CONTENTS

_____

1.  *Chiang v. Skeirik*, 529 F. Supp. 2d 166 (D. Mass. 2007 . . . . . . . . . . . . . . . 1

2.  U.S. Court of Appeals for the First Circuit,
    *Chiang v. Skeirik*, 08-1909, Order of the Court, September 3, 2008  . . . . . 10

3.  U.S. Court of Appeals for the First Circuit,
    *Chiang v. Skeirik*, 08-1909, Judgment, October 7, 2008  . . . . . . . . . . . . . 12

4.  USCIS Office of Administrative Appeals,
    Decision on Petitioner Wen Yih Chiang Appeal of USCIS
    Denial of Petitioner's Petition for Alien Finace′(e)  . . . . . . . . . . . . . . . . . 13

PACA is not a *per se* Chapter 93A violation, if Friendly Fruit can prove harm to consumers or to the public, it is possible that a violation of PACA could lead to Chapter 93A liability. Sodexho's motion for summary judgment with respect to the Chapter 93A claim based on PACA will also be denied.

### iii.  Actual Damages for the Second Period

[11]  Section 11 of Chapter 93A requires the plaintiff to demonstrate actual damages in the form of "loss of money or property, real or personal" in order to prove liability. Mass. Gen. Laws ch. 93A, § 11. The same section permits the court to double or triple the "amount of the judgment on all claims arising out of the same and underlying transaction or occurrence." *Id.* Sodexho contends that the money it paid Friendly Fruit in April, 2007, negates the occurrence of any actual damages and that there is, therefore, no amount to award or multiply under Chapter 93A.

Sodexho points to a line of cases that makes clear that neither a settlement nor an arbitration award constitutes a judgment for purposes of multiplying damages under Chapter 93A. *Murphy v. Nat'l Union Fire Ins. Co.,* 438 Mass. 529, 531–32, 781 N.E.2d 1232 (2003) (holding that arbitration award does not qualify as judgment); *Clegg v. Butler,* 424 Mass. 413, 424–25, 676 N.E.2d 1134 (1997)(holding that settlement cannot be reduced to a judgment for purposes of a Chapter 93A claim).

Other case law, however, indicates that a payment similar to Sodexho's is to be con-

sidered only at the conclusion of a damages calculation and after application of an appropriate multiple. *See, e.g., Ameripride Linen & Apparel Servs., Inc. v. Eat Well, Inc.,* 65 Mass.App.Ct. 63, 836 N.E.2d 1116 (2005). Friendly Fruit and Sodexho explicitly agreed that the April, 2007 payment was not a settlement of any kind. Consequently, if any liability is found under Chapter 93A, the April, 2007 payment functions only as an offset to any damages that may be found by the fact finder. Sodexho's motion for summary judgment on the Chapter 93A claim will be denied.

### ORDER

In accordance with the foregoing, the plaintiff's motion for summary judgment (Docket No. 28) and the defendant's motion for partial summary judgment (Docket No. 27) are **DENIED.**

**So ordered.**



**Wen Y. CHIANG, Plaintiff,**

**v.**

**Lynne SKEIRIK, Director of the National Visa Center, Condoleezza Rice, Secretary of State, and Michael Chertoff, Secretary of Homeland Security, Defendants.**

**Civil Action No. 07–10451–NMG.**

United States District Court,
D. Massachusetts.

Dec. 4, 2007.

**Background:** Citizen brought tort and *Bivens* suit against director of National Visa

---

regulations or laws, meant for the protection of the public's health, safety, or welfare promulgated by the Commonwealth or any political subdivision thereof intended to provide the consumers of this Commonwealth protec-

tion." There is no corresponding regulation under federal law and thus it is doubtful that a Chapter 93A violation can result solely from the violation of federal law.

Center and federal officials, alleging negligence in processing his fiance's immigration application and violation of his constitutional rights as result of delay. Citizen moved for temporary restraining orders and preliminary relief. Government moved to dismiss for lack of subject matter jurisdiction.

**Holdings:** The District Court, Gorton, J., held that:

(1) court lacked jurisdiction to review merits of consulate's denial of visa petition;

(2) court had jurisdiction to consider citizen's *Bivens* claims that federal employee's acts in processing application violated his constitutional rights;

(3) federal officials were not subject to tort liability for alleged negligence under Federal Tort Claims Act (FTCA);

(4) motion for preliminary injunction ordering that officials schedule interview with alien was mooted by their conduct of interview and denial of her non-immigrant visa application; and

(5) citizen did not show substantial likelihood of success on merits of his claims, as required for temporary restraining order (TRO).

Motions granted in part and denied in part.

## 1. Aliens, Immigration, and Citizenship
### ☞207

Doctrine of consular non-reviewability deprived district court of subject matter jurisdiction to review the reason for the denial of alien's immigration petition, but did not bar review of propriety of the application and review process.

## 2. Aliens, Immigration, and Citizenship
### ☞207

Doctrine of consular non-reviewability bars court from reviewing a consular's decision to exclude an alien from the United States.

## 3. Aliens, Immigration, and Citizenship
### ☞207

Under doctrine of consular non-reviewability, court would not second guess merits of government's decision to deny visa application, given government's presentation of facially legitimate and bona fide reasons for denying Chinese alien's non-immigrant visa application, which was granted to aliens who sought to enter solely to conclude valid marriage within 90 days after admission, based on alien's ineligibility due to her marriage in China and questions about the bona fides of her relationship with her fiance, who had filed similar applications on behalf of other women. Immigration and Nationality Act, § 101(a)(15)(K)(i), 8 U.S.C.A. § 1101(a)(15)(K)(i).

## 4. Aliens, Immigration, and Citizenship
### ☞207

District courts have subject matter jurisdiction to review the lawfulness of the immigration application procedure.

## 5. Aliens, Immigration, and Citizenship
### ☞207

District court had federal question jurisdiction to consider citizen's claims that federal officials' conduct during visa application process for his Chinese fiance violated his constitutional rights. 28 U.S.C.A. § 1331.

## 6. United States ☞50.10(1)

Under Federal Tort Claims Act (FTCA) federal officials were immune from suit for alleged negligence in processing non-immigrant fiance visa application, as acts fell within scope of their employment, such that United States was proper party defendant. 28 U.S.C.A. § 2679(b)(1).

**168**          **529 FEDERAL SUPPLEMENT, 2d SERIES**

### 7. Injunction ⇐22

Motion for preliminary relief directing that federal officials schedule interview with citizen's fiance on visa petition and grant her entry was mooted after interview was conducted and immigration petition denied.

### 8. Injunction ⇐150

To obtain a temporary restraining order, the plaintiff must demonstrate: (1) a substantial likelihood of success on the merits, (2) a significant risk of irreparable harm if the injunction is withheld, (3) a favorable balance of hardships, and (4) a fit, or lack of friction, between the injunction and the public interest.

### 9. Civil Rights ⇐1457(7)
### Injunction ⇐150

Citizen seeking temporary restraining order preventing consulate from returning his Chinese fiance's visa application to United States Citizenship and Immigration Services (USCIS) did not show substantial likelihood of success on merits of his claims that federal officials' allegedly improper delay in processing application violated his right to due process and violated Administrative Procedure Act (APA). U.S.C.A.Const.Amend. 5; 5 U.S.C.A. § 551 et seq.

### 10. Injunction ⇐150

Citizen seeking temporary restraining order preventing consulate from transferring his Chinese fiance's non-immigrant visa application to United States Citizenship and Immigration Services (USCIS) did not show likelihood of success on claims attacking purported reason for denial of application, claiming that consular officials did not follow statutes or regula-

tions in conducting visa interview, and claiming impropriety in retention of certain documents that alien provided in connection with application.

————

Dean Carnahan, Law Offices of Dean Carnahan, Arlington, MA, for Plaintiff.

Anton P. Giedt, United States Attorney's Office, Boston, MA, for Defendants.

### MEMORANDUM & ORDER

GORTON, District Judge.

In this action arising from events surrounding an immigration petition, the plaintiff has filed two motions for a temporary restraining order and a motion for a preliminary injunction, and the defendant has filed a motion to dismiss for lack of subject matter jurisdiction.

### I. *Background*

On March 6, 2007, plaintiff, Wen Y. Chiang ("Chiang") filed a complaint against Lynne Skeirik, Director of the National Visa Center, Condoleezza Rice, Secretary of State, and Michael Chertoff, Secretary of Homeland Security. Chiang alleges two counts: Count I for negligence in the processing of his fiancé's immigration application, for which he seeks damages in the amount of $50,000, plus interest, costs and attorney's fees, and Count II for violation of 42 U.S.C. § 1983 by improperly processing his fiancé's application which, in turn, restricted Chiang's right to marry. Chiang seeks damages of $100,000, plus interest and costs for that alleged violation.[1]

---

**1.** Because Chiang is suing federal rather than state officials, his cause of action will be construed as brought under *Bivens v. Six Unknown Fed. Narcotics Officers*, 403 U.S. 388,

91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), not § 1983, but this distinction does not affect the Court's analysis of the motions considered in this memorandum.

This case has had an unusual procedural and factual history. After Chiang filed the complaint, the government continued to process his fiancé's petition but eventually denied it. Throughout the application process, Chiang continued to make additional allegations against the government in the form of motions filed in this action. Despite the new allegations in intermittent pleadings and the fact that the government has considered and denied the fiance's immigration application, Chiang has not amended (or moved to amend) the complaint to clarify the relief he now seeks. Nevertheless, the pending motions will be resolved as follows.

## II. *Factual and Procedural Chronology*

Because the factual and procedural histories of this case are intertwined, they are discussed together. On September 7, 2006, Chiang, a United States citizen, filed a petition with the United States Citizenship and Immigration Service ("USCIS") to have his fiancé, Wen Hua Zhang (who took the Anglicized name, "Amy"), classified as a nonimmigrant under the Immigration and Nationality Act, ("INA"), 8 U.S.C. § 1101(a)(15)(K)(i). Chiang sought to have Amy classified as an alien who seeks to enter the United States to conclude a valid marriage within 90 days. The USCIS approved Amy's Petition for Fiancee (form I–129F), on October 23, 2006, and an attached notice indicated that it would expire on February 23, 2007.

According to attorney Rachel Peterson ("Peterson"), of the U.S. Department of State Visa Office, Bureau of Consular Affairs, the National Visa Center ("NVC") sent Amy's case to the U.S. Consulate in Guangzhou, China ("the Consulate") on March 3, 2007, three days before Chiang filed the complaint in this case. The required namecheck for Amy was completed on April 24, 2007, and during that same month, Chiang and Amy participated in a marriage ceremony of some sort in China.

On June 21, 2007, the defendants answered the complaint. Six days later, Chiang moved for a preliminary injunction requesting that the Court order the defendants "forthwith" to schedule an interview with Chiang's fiancé and to grant her entry into the United States. It is undisputed that on or before July 13, 2007, the Consulate possessed Amy's completed application, including the DS–230 form.

On July 31, 2007, the Consulate informed Chiang that Amy would be interviewed on September 25, 2007. A few days later, the defendants filed a motion to dismiss this case for lack of subject matter jurisdiction. On September 25, 2007, Amy and Chiang went to the Consulate for the interview. Chiang alleges that several improprieties occurred during the interview, including that: 1) Chiang was not allowed to accompany Amy into the interview room, 2) Amy was the last person interviewed despite having a low number which meant that she waited for over five hours for an interview, 3) a consular official told Amy that he thought the photos of her and Chiang were taken over a short period despite the dates printed on them and 4) the consular official refused to return (and later denied having received) certain documents and photos.

At the conclusion of the interview on September 25, 2007, a consular official handed Amy a piece of paper informing her that her application for a visa had been denied based on the conclusion that she did not have a bona fide relationship with her petitioner, Chiang, and that her case would be returned to the USCIS for review.

Three days after the interview, Chiang filed a motion for a temporary restraining order. He asked the Court to enjoin the Consulate from transferring Amy's case to

the USCIS until further order of the Court. On October 4, 2007, this Court held a hearing on the motions for a temporary restraining order and preliminary injunction. It denied the temporary restraining order and ruled the motion for a preliminary injunction moot. On November 16, 2007 Chiang filed a second motion for a temporary restraining order which this Court denied without opinion three days later. This Memorandum & Order outlines the reasons for those rulings, resolves the motion to dismiss for lack of subject matter jurisdiction and orders other relief so as to clarify the remaining claims.

### III.  *Analysis*

#### A.  **The Government's Motion to Dismiss for Lack of Subject Matter Jurisdiction (Docket No. 14)**

[1]  Relying on the doctrine of consular non-reviewability, the government moves to dismiss this action for lack of subject matter jurisdiction. Although the doctrine of non-reviewability bars this Court from reviewing the reason for the denial of Amy's immigration petition, it does not bar review of the application process.

#### 1.  **Review of the Reasons for Denial of Amy's Petition**

[2]  The doctrine of consular non-reviewability bars this Court from reviewing a consular's decision to exclude an alien from the United States. *Saavedra Bruno v. Albright*, 197 F.3d 1153, 1159–60, 1162–63 (D.C.Cir.1999). Some courts have held that denial of a visa is reviewable, however, in cases brought by U.S. citizens raising constitutional claims. *Abourezk v. Reagan*, 592 F.Supp. 880 (D.D.C.1984) va-

cated on other grounds by *Abourezk v. Reagan*, 785 F.2d 1043 (D.C.Cir.1986); *Am. Acad. of Religion v. Chertoff*, 463 F.Supp.2d 400, 416 (S.D.N.Y.2006)(finding jurisdiction where plaintiffs allege that the visa process was stalled in a manner violating their First Amendment rights). Other courts have found that the doctrine of non-reviewability extends to generalized allegations of due process violations. *De Castro v. Fairman*, 2006 WL 229022 (11th Cir.) *citing Burrafato v. United States Dep't of State*, 523 F.2d 554, 556 n. 2 (2d Cir.1975).[2]

The courts that have found subject matter jurisdiction to review the reasons for denial of visas based on constitutional violations look only to whether the government has a "facially legitimate and bona fide" reason for the denial. *Am. Acad. of Religion*, 463 F.Supp.2d at 418–19 (citing *Kleindienst v. Mandel*, 408 U.S. 753, 770, 92 S.Ct. 2576, 33 L.Ed.2d 683 (1972)); *Abourezk*, 592 F.Supp. at 887. If the government presents such a reason, the "courts' role is at an end: they must defer to the Executive decision." *Abourezk*, 592 F.Supp. at 887.

[3]  At various times during the course of this litigation, Chiang has alleged that denial of Amy's petition violated three of his constitutional rights: 1) his right to marry and be with his wife, 2) his Seventh Amendment right to a jury trial and 3) his right to be free from discrimination based on country of origin. These constitutional claims do not overcome the doctrine of non-reviewability, however, because the government has presented two "facially legitimate and bona fide" reasons for the denial of Amy's application.

**2.**  These courts have reviewed the visa decisions of consular officials as well as those made by the State Department and the Department of Homeland Security and conclud-

ed as to each that if the decision on a visa creates a constitutional question, the court has jurisdiction to ensure the constitutionality of the official's conduct.

First, as the government points out, Amy's status had changed by the time of her interview at the Consulate, giving the Consulate a legitimate reason to deny the visa. By Chiang's own admission, Amy and Chiang were married in China in April, 2007. Although Chiang now asserts that the April event was not a state-sanctioned marriage ceremony, at various points in this litigation, he has referred to his marriage to Amy, suggesting that she is now his wife.

Under the INA, § 1101(a)(15)(K)(i), pursuant to which Chiang sought Amy's visa, a non-immigrant is defined as the fiancé of a citizen of the United States "who seeks to enter the United States solely to conclude a valid marriage with the petitioner within 90 days after admission." Section 1184(d)(1) of the INA states that the visa shall be approved only if the petitioner and the beneficiary intend to marry and are legally able and actually willing to conclude a marriage within the United States. If Amy and Chiang were already married, Amy no longer qualifies for that kind of visa.

Second, the Consulate informed Amy that her visa application was denied based on the conclusion that she and Chiang did not have a bona fide relationship. In a declaration, Jeffrey Gorsky ("Gorksy"), the Chief of the Legal Advisory Opinions Division of the Visa Office, Bureau of Consular Affairs, U.S. Department of State, explains that, according to the notes on Amy's case, Chiang had in the past filed fiancé petitions for two other women from China. One he brought into the United States and later divorced in 2003. He filed an application on behalf of the other woman within the past two years, but it was later with-

drawn and there were discrepancies with respect to the explanation. Based on such information, the Consulate determined that Chiang and Amy did not have a bona fide relationship and the application was denied. Adhering to the doctrine of consular non-reviewability, this Court will not second-guess that decision.

## 2.  The Application Process

**[4]**  In Chiang's complaint, he does not object to the denial of the visa, which had not yet occurred at the time of filing, but to the conduct of federal officials during the application process. He claims negligence and violations of his constitutional rights and seeks damages. The doctrine of consular non-reviewability does not apply to claims of illegal behavior during the application process. It only restricts review of consular decisions. District courts have subject matter jurisdiction to review the lawfulness of the immigration application procedure. *See, e.g., Osunsanya v. United States Citizenship and Immigration Services*, 2007 WL 484864, *4 (D.Mass.2007).

### a.  Jurisdiction over the constitutional claims

**[5]**  Although Chiang does not cite the source of this Court's purported jurisdiction, he would presumably argue that this Court can hear his constitutional claims under 28 U.S.C. § 1331, which gives district courts jurisdiction over "actions arising under the Constitution". Because Chiang's complaint alleges constitutional violations in the application procedure, this Court will exercise jurisdiction over those claims.[3]

---

**3.**  The officers have qualified immunity against any constitutional claims but they lose that immunity if they violate "clearly established statutory or constitutional rights of which a

reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Neither party discusses qualified immunity in his/their brief,

### b. Jurisdiction over the negligence claims

**[6]** Chiang offers no basis for jurisdiction as to his negligence claims, perhaps because there is none. Under the Federal Tort Claims Act ("FTCA"), the United States is the only proper defendant to a negligence claim arising from acts or omissions of its employees acting within the scope of their employment. 28 U.S.C. § 2679(b)(1). Moreover, when an employee so acts, the FTCA provides the exclusive remedy for his or her tortious conduct. *Id.* Consequently, federal employees are absolutely immune from suit for torts committed within the scope of their employment. *Id.; Aversa v. United States,* 99 F.3d 1200, 1203 (1st Cir.1996).

The negligent acts Chiang alleges all occurred in the context of processing Amy's visa application and therefore were acts within the scope of the defendants' employment. Accordingly, their motion to dismiss as to the negligence claim will be allowed.

In summary, to the extent that Chiang seeks review of the reasons for the Consulate's denial of his fiancé petition or asserts negligence claims against the individual officers, the government's motion to dismiss for lack of subject matter jurisdiction will be allowed. The government's motion to dismiss with respect to Chiang's constitutional claims in the context of the application process will be denied.

### B. Chiang's Motion for a Preliminary Injunction (Docket No. 11)

**[7]** In his June 18, 2007, motion for a preliminary injunction, Chiang requests that the Court order the defendants "forthwith" to schedule an interview with Chiang's fiancé and grant her entry into the United States. Amy has already had

her interview and the Consulate has denied her immigration petition. As a result, this motion is now moot.

### C. Chiang's Motion for a Temporary Restraining Order (Docket No. 20)

In his first motion for a temporary restraining order, Chiang argues that the defendants have violated his constitutional right to marry and be with his wife, his due process rights and his right to trial by jury. Chiang also contends that the defendants have violated the Administrative Procedure Act, 5 U.S.C. § 555(b) ("APA"), which requires an agency decision "within a reasonable time" and that the Consulate is discriminating against Amy on the basis of her country of origin in violation of 8 U.S.C. § 1152(a)(1) or because Chiang has filed the current lawsuit. Chiang claims that he will suffer irreparable injury if the TRO is not granted.

### 1. Legal Standard

**[8]** To obtain a temporary restraining order (or a preliminary injunction), the plaintiff must demonstrate: 1) a substantial likelihood of success on the merits, 2) a significant risk of irreparable harm if the injunction is withheld, 3) a favorable balance of hardships, and 4) a fit (or lack of friction) between the injunction and the public interest. *Nieves–Márquez v. Puerto Rico,* 353 F.3d 108, 120 (1st Cir.2003) (citation omitted). Likelihood of success on the merits is the critical factor in the analysis. *Weaver v. Henderson,* 984 F.2d 11, 12 (1st Cir.1993) (citations omitted).

### 2. Likelihood of Success on the Merits

As a preliminary matter, Chiang, in his complaint, seeks money damages under different theories of liability than those

and thus the Court will not address that issue    at this time.

raised in his motion for a temporary restraining order. Success on the merits, therefore, will be analyzed only under those theories raised in the motion. Moreover, an order preventing the Consulate from returning the application to USCIS is appropriate only if either the act of the return is unlawful or denial of his fiancé's visa application was improper. As discussed above, this Court does not have subject matter jurisdiction to review the Consulate's reasons for denying the petition because the government has presented a "facially legitimate and bona fide reason" for the denial. Consequently, Chiang's only likelihood of success arises from his allegations relating to the processing of the application.

[9] With regard to the application process, Chiang argues that the defendants have violated the APA and his right to Due Process. Because the Consulate denied the visa a little over one year after Amy applied, a decision was made within a reasonable time. Consequently, the APA claim has little chance of success. The due process allegations are also unlikely to succeed because they are vague and appear to affect Amy rather than Chiang. Moreover, although some of the alleged occurrences at the Consulate interview may have been objectionable, they do not rise to the level of due process violations.

Because the plaintiff lacks a likelihood of success on the merits, his motion for a temporary restraining order was denied.

## D. Chiang's Second Motion for a Temporary Restraining Order (Docket No. 24)

[10] In Chiang's second motion for a temporary restraining order, he argues that 1) his marriage ceremony in China was invalid and therefore Amy is still his fiancé, 2) the affidavit of Gorsky is misleading with respect to Chiang's prior peti-

tions, 3) the Consulate's actions violated 22 C.F.R. § 42.62 and 9 FAM 42.62 and 4) the Consulate's actions in absconding with Amy's papers was an illegal seizure, giving rise to *Bivens* liability.

None of these new allegations improve Chiang's likelihood of success on the merits. First, although the marriage ceremony may not have been legally valid, Chiang described the ceremony as a marriage and Amy presented photographs of the event to the Consulate official, indicating that she and Chiang were then married. Second, as to the Gorsky affidavit, although some of the dates in it may have been inaccurate or misleading, the fact remains that Chiang has filed fiancé petitions for two other women, one of whom he divorced in 2003 and one whose application was submitted and then withdrawn within the past two years. It was those facts which led the Consulate to doubt the bona fide nature of the relationship between Chiang and Amy and provided a legitimate reason for the denial of her application.

Third, the regulations that Chiang cites as having been violated by the Consulate require consular officials to make visa determinations based on the application, relevant documentation and answers provided by the applicant and to make every effort to conduct visa interviews fairly and sympathetically. The only support Chiang provides for his claim that the Consulate failed to follow those procedures is vague and speculative. Without more, Chiang cannot demonstrate a reasonable likelihood of success.

Finally, success on a *Bivens* action based on the alleged seizures, if they occurred, would not affect the propriety of the denial of the visa and the transfer of Amy's application to the USCIS. Chiang does not allege that the Consulate based its denial of Amy's petition on the contents

of documents illegally seized. In fact, Chiang admits that Amy gave the Consulate the documents for official use in connection with her application. Any illegal retention of the documents may constitute a claim separate and apart from the decision to deny the visa. As a result, the second motion for a temporary restraining order was denied.

### E. Requirement to File Amended Complaint

Due to the unusual procedural history of this case, the events that allegedly occurred in the processing of Amy's application since the filing of the original complaint and this Court's decision to dismiss substantial portions of the complaint for lack of subject matter jurisdiction, the plaintiff will be required to file an amended complaint stating any remaining justiciable claims he possesses.

### ORDER

In accordance with the foregoing:

1) the defendants' motion to dismiss for lack of subject matter jurisdiction (Docket No. 14) is, to the extent that Chiang seeks review of the reasons for the Consulate's denial of his fiancé's petition or asserts negligence claims against the individual officers, **ALLOWED,** but is otherwise **DENIED,**

2) the plaintiff's motion for a preliminary injunction (Docket No. 11) is **DENIED** as moot,

3) the plaintiff's motion for a temporary restraining order (Docket No. 20) is **DENIED,**

4) the plaintiff's second motion for a temporary restraining order (Docket No. 24) is **DENIED,** and

5) in light of the changed circumstances since the filing of the original complaint, the plaintiff is directed to file, on or before January 18, 2008, an amended complaint, restating any justiciable claims not dismissed herein. In default of such filing, the complaint will be dismissed in its entirety.

**So ordered.**



### INTERNATIONAL FLOOR CRAFTS, INC., Plaintiff,

### v.

### David W. ADAMS, Tyrone Williams, Ronald E. Mitchell and Jane Dziemit, Defendants.

### Civil Action No. 05–11654–NMG.

United States District Court,
D. Massachusetts.

Dec. 12, 2007.

**Background:** Employer brought action against former employees who allegedly contrived and perpetuated a scheme with other individuals in several states to extort approximately $5 million from employer. Defendant moved to stay proceedings, and counsel for a co-defendant moved to withdraw.

**Holdings:** The District Court, Gorton, J., held that:

(1) stay was not warranted, and

(2) defendant's failure to pay fees constituted good cause for counsel to withdraw.

Ordered accordingly.

# United States Court of Appeals
## For the First Circuit

––––––––––––––––––––––––––––

No. 08-1909

WEN Y. CHIANG

Plaintiff - Appellant

v.

LYNN SKEIRIK, in her official capacity as Director of the National Visa Center;
CONDOLEEZZA RICE, in her official as Secretary of State; MICHAEL CHERTOFF, in his
official capacity as Secretary of Homeland Security; BRIAN FERINDEN, in his official capacity
as Vice General Counsular in Guangzhou, China; The U.S. Consulate in Guangzhoum, China;
UNITED STATES

Defendants - Appellees

––––––––––––––––––––––––––––

**ORDER OF COURT**

Entered: September 3, 2008
Pursuant to 1st Cir. R. 27.0(d)

Upon review of appellant's extension motion and the district court docket, it appears that
the court may lack jurisdiction over this appeal from the denial of a preliminary injunction.
While the appeal has been pending, the district court dismissed the underlying case.  Under the
circumstances, the appeal would appear to be moot.  See Chaparro-Febus v. International
Longshoremen Association, 983 F.2d 325, 331 n.5 (1st Cir. 1993) (finding plaintiffs' complaints
on appeal concerning denial of preliminary injunction to be moot given  final judgment
dismissing the case).

Accordingly, appellant is ordered either to show cause, in writing filed by **09/17/08**, why
this appeal should not be dismissed as moot given the dismissal of the underlying action, or
move for voluntary dismissal pursuant to Fed. R. App. P. 42(b).  The failure to take either action
will lead to dismissal of the appeal for lack of diligent prosecution. 1st Cir. R. 3.0(b).  In light of
this show cause order, the briefing schedule is vacated and a new schedule will be set once it is
determined whether this appeal will be allowed to proceed.

By the Court:

/s/Richard Cushing Donovan, Clerk.

cc:
Dean Carnahan
Anton P. Giedt

Thornton

# United States Court of Appeals Judge Gorton
## For the First Circuit Dc#:07-10451

No. 08-1909

WEN Y. CHIANG

Plaintiff - Appellant

v.

LYNN SKEIRIK, in her official capacity as Director of the National Visa Center;
CONDOLEEZZA RICE, in her official as Secretary of State; MICHAEL CHERTOFF, in
his official capacity as Secretary of Homeland Security; BRIAN FERINDEN, in his
official capacity as Vice General Counsular in Guangzhou, China; The U.S. Consulate in
Guangzhoum, China; UNITED STATES

Defendants - Appellees

**JUDGMENT**
Entered: October 7, 2008
Pursuant to 1st Cir. R. 27.0(d)

Upon consideration of appellant's motion, it is hereby ordered that this appeal be
voluntarily dismissed.

Mandate to issue forthwith.

By the Court:
/s/Richard Cushing Donovan, Clerk.

cc:
Wen Y. Chiang
Dean Carnahan
Anton P. Giedt

CERTIFIED COPY
I HEREBY CERTIFY THIS DOCUMENT
IS A TRUE AND CORRECT COPY OF
THE ORIGINAL ON FILE IN MY OFFICE
AND IN MY LEGAL CUSTODY.

FIRST CIRCUIT COURT OF APPEALS
BOSTON, MA
By Melenh M    Date: 12/17/08



**U.S. Department of Homeland Security**
U. S. Citizenship and Immigration Services
Office of Administrative Appeals
Washington, DC  20529-2090

**U.S. Citizenship
and Immigration
Services**

WEN YIH CHIANG

FILE:                          Office:  VERMONT SERVICE CENTER        Date:  MAR 17 2009

IN RE:          Petitioner:     WEN YIH CHIANG
                Beneficiary:    WEN HUA ZHANG
                                AKA:  AMY ZHANG

PETITION:      Petition for Alien Fiancé(e) Pursuant to § 101(a)(15)(K) of the Immigration and Nationality
               Act, 8 U.S.C. § 1101(a)(15)(K)

ON BEHALF OF PETITIONER:

DEAN CARNAHAN
LAW OFFICES OF DEAN CARNAHAN
51 NEWCOMB STREET
ARLINGTON, MA  02474

INSTRUCTIONS:

This is the decision of the Administrative Appeals Office in your case.  All documents have been returned to
the office that originally decided your case.  Any further inquiry must be made to that office.

If you believe the law was inappropriately applied or you have additional information that you wish to have
considered, you may file a motion to reconsider or a motion to reopen.  Please refer to 8 C.F.R. § 103.5 for
the specific requirements.  All motions must be submitted to the office that originally decided your case by
filing a Form I-290B, Notice of Appeal or Motion, with a fee of $585.  Any motion must be filed within 30
days of the decision that the motion seeks to reconsider, as required by 8 C.F.R. 103.5(a)(1)(i).

John F. Grissom
Acting Chief, Administrative Appeals Office

GOV. ADDENDUM    13

Page 2

**DISCUSSION**: The nonimmigrant visa petition was approved by the Director, Vermont Service Center. Based upon information obtained from the beneficiary during her visa issuance process at the U.S. Consulate General in Guangzhou, China, the director determined that the beneficiary was not clearly eligible for the benefit sought. The director then denied the petition. The matter is now before the Administrative Appeals Office (AAO) on appeal. The appeal will be dismissed.

The petitioner is a citizen of the United States who seeks to classify the beneficiary, a native and citizen of China, as the fiancé(e) of a United States citizen pursuant to § 101(a)(15)(K) of the Immigration and Nationality Act (the Act), 8 U.S.C. § 1101(a)(15)(K).

The director denied the petition because the petitioner indicated that he and the beneficiary were married after the approval of the petition. On appeal, counsel states, in part, that the petition was denied in error because the traditional marriage ceremony between the petitioner and the beneficiary does not constitute a valid, legal marriage.

Section 101(a)(15)(K) of the Act defines "fiancé(e)" as:

> An alien who is the fiancée or fiancé of a citizen of the United States and who seeks to enter the United States solely to conclude a valid marriage with the petitioner within ninety days after entry. . . .

Section 214(d) of the Act, 8 U.S.C. 1184(d), states in pertinent part that a fiancé(e) petition:

> [s]hall be approved only after satisfactory evidence is submitted by the petitioner to establish that the parties have previously met in person within two years before the date of filing the petition, have a bona fide intention to marry, and are legally able and actually willing to conclude a valid marriage in the United States within a period of ninety days after the alien's arrival . . . .

In the director's denial letter, he noted that the petitioner had submitted evidence indicating that he and the beneficiary had been married after the petition was filed. The evidence that the director relied upon included statements from the petitioner, the beneficiary, and a witness to the marriage, Paul S. Garigosian. On appeal, the beneficiary provides a statement and counsel submits a brief in support of their contentions that the petitioner and the beneficiary celebrated a customary marriage in China which is not legally recognized by the Chinese authorities.

In her statement, the beneficiary claims that she is pregnant and that she wants to be in the United States to give birth to her child. The beneficiary states that in April 2007, she and the petitioner celebrated a "traditional family ceremony" that "is not considered a legal marriage by the Chinese government." According to the beneficiary, the Chinese government had denied her and the petitioner's request to "honor" their traditional family ceremony, stating that it was not a legal marriage because there was no government involvement and a marriage certificate.

In his brief, counsel states that U.S. Citizenship and Immigration Services (USCIS) should not recognize the legality of the petitioner's and the beneficiary's traditional marriage. Counsel submits a brief from *Yi Qiang Yang v. Michael B. Mukasey*, a petition for a writ of certiorari that was denied by the U.S. Supreme Court in May 2008. According to counsel, this brief shows that the Board of Immigration Appeals (BIA) has held in rulings on asylum claims based upon China's family planning policy, that individuals who participated in traditional marriages were not legally married. In addition, counsel states that the denial of the petition

Page 3

violates the petitioner's rights under the Seventh Amendment of the Constitution, and that the petitioner, the beneficiary, and their unborn child will suffer irreparable injury if the petition is not approved.

In immigration proceedings, the law of a foreign country is a question of fact which must be proven if the petitioner relies on it to establish eligibility for an immigration benefit. *Matter of Annang*, 14 I&N Dec. 502 (BIA 1973). In visa petition proceedings, the burden is on the petitioner to establish eligibility for the benefit sought. *See Matter of Brantigan*, 11 I&N Dec. 493 (BIA 1966). The petitioner must prove by a preponderance of evidence that the beneficiary is fully qualified for the benefit sought. *Matter of Martinez*, 21 I&N Dec. 1035, 1036 (BIA 1997); *Matter of E-M-*, 20 I&N Dec. 77, 79-80 (Comm. 1989); *Matter of Soo Hoo*, 11 I&N Dec. 151 (BIA 1965).

The AAO notes that the petitioner does not dispute that a marriage ceremony was performed between him and the beneficiary in April 2007; here, the petitioner is seeking to establish that such ceremony is not legally valid under the laws of China. As supporting evidence, he provides a statement from the beneficiary as well as a brief from counsel.

The beneficiary's affidavit is not probative evidence of the invalidity of her and the petitioner's marriage. Although she claims that the Chinese government would not "honor" her marriage to the petitioner, she presented no evidence in support of her assertions. Going on record without supporting documentary evidence is not sufficient for purposes of meeting the burden of proof in these proceedings. *Matter of Soffici*, 22 I&N Dec. 158, 165 (Comm. 1998) (citing *Matter of Treasure Craft of California*, 14 I&N Dec. 190 (Reg. Comm. 1972)). The record contains no evidence, beyond the statements of the beneficiary, that the marriage ceremony that took place in April 2007 is not a legally valid marriage under the laws of China. Thus, the beneficiary's statements are not persuasive.

Similarly, counsel's reliance on a brief from a petition for a writ of certiorari is misguided. Precedent decisions of the BIA are binding on all officers of U.S. Citizenship and Immigration Services (USCIS). 8 C.F.R. § 103.3(c). The BIA has not issued a precedent decision stating that traditional marriages in China are not legally valid under the laws of China. Furthermore, unsupported assertions of counsel do not constitute evidence. *Matter of Obaigbena*, 19 I&N Dec. 533, 534 (BIA 1988); *Matter of Laureano*, 19 I&N Dec. 1 (BIA 1983); *Matter of Ramirez-Sanchez*, 17 I&N Dec. 503, 506 (BIA 1980). Thus, counsel's statements are not persuasive.

As always, the burden of proving eligibility for the benefit sought remains entirely with the petitioner. Section 291 of the Act, 8 U.S.C. § 1361. In this matter, the petitioner has not sustained his burden of proof. As the petitioner has not established this central issue, counsel's statements regarding the petitioner's rights under the Seventh Amendment of the Constitution, and the irreparable injury that the petitioner, the beneficiary, and their child will suffer shall not be addressed.

**ORDER:**        The appeal is dismissed. The petition is denied.

**Appeal No. 08-2105**

_____

**UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT**

_____

WEN Y. CHIANG,
Plaintiff-Appellant,

v.

LYNN SKIERIK, ET AL.,
Defendant-Appellees.

_____

BRIEF OF DEFENDANT-APPELLEES

_____

SUPPLEMENTAL APPENDIX

_____

# <u>TABLE OF CONTENTS</u>

Defendants' Memorandum In Support of Motion to Dismiss
(Docket No. 15).......................................................................... 1

Defendants' Opposition to Plaintiff's
 Motion for Temporary Restraining Order (Docket No. 23)................................ 13

Defendants' Memorandum In Support of
 Motion to Dismiss Plaintiff's Amended Complaint (Docket No. 30) ................. 25

Defendants' Opposition to Plaintiff's Motion for Injunctive Relief
(Docket No. 44)........................................................................... 38

Plaintiff-Appellant's Motion to Dismiss Appeal (CA 08-1909)........................... 52

Defendants' Notice of Agency Action (Docket No. 39)...................................... 54

Plaintiff-Appellant's Docketing Statement (CA 08-2105)................................... 58

Excerpts of Transcript of Motion Hearing Before
The Honorable Judith G. Dein, United States Magistrate Judge,
Civil Action No. 07-10451-NMG (USDC, Mass), May 12, 2008
 (Docket No. 58)......................................................................... 65


Docket for *Chiang v. Lynn Skeirik, et al.*,
 Civil Action No. 07-10451-NMG (USDC, Mass) (April 2, 2009)....................... 73

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

WEN Y. CHIANG,

            Plaintiff,

            v.                                  **Civil Action No. 07-10451-NMG**

LYNNE SKEIRIK, DIRECTOR OF THE
NATIONAL VISA CENTER, *et al.*,

            Defendants.

## MEMORANDUM IN SUPPORT OF
## FEDERAL DEFENDANTS' MOTION TO DISMISS AND
## OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION
## <u>FOR LACK OF JURISDICTION</u>

Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), Defendants hereby move to dismiss the above-captioned action because this court lacks jurisdiction over the subject matter of the claim. Plaintiff has failed to complete the administrative application process, and there has been no final action in the matter of his fiancee's visa application. Where an agency action from which a plaintiff seeks relief is not final, the district court lacks subject matter jurisdiction over the claim. Furthermore, even once a decision is rendered, the decision of a consular officer to grant or deny an application for an immigrant visa is not subject to judicial review.

### <u>BACKGROUND</u>

1.  On September 7, 2006, plaintiff filed a petition with the United States Citizenship and Immigration Service ("USCIS") to have his fiancée, Wen Hua Zhang, classified as a nonimmigrant under 8 U.S.C. 1101(a)(15)(K)(i), as an alien who seeks to enter the United States to conclude a valid marriage within 90 days. Exhibit A, Declaration of Rachel Ann Peterson, U.S. Department of State, August 2, 2007 (Peterson Declaration"),

at ¶ 3.

2.      On October 23, 2006 the USCIS mailed the plaintiff a notice that the USCIS had

approved the I-129F, Petition for Fiancée.  Exhibit B.

3.      The notice also indicated that the case had been forwarded to National Visa Center

("NVC") of the U.S. Department of State for processing.  Docket No. 1 ("Complaint"),

at ¶ 7.

4.      The notice indicated that it would expire on February 23, 2007. Complaint at ¶ 6.[1]

5.      As the beneficiary of a fiancée petition, plaintiff's fiancée, Wen Hua Zhang was subject

to a routine namecheck as required in Volume 9 of the U.S. Department of State Foreign

Affairs Manual ("FAM"), 9 FAM 42.62 PN3.1.  Pursuant to 9 FAM 42.62 PN3.1,[2] an

applicant's petition for Immigrant Visa and Alien Registration can not be processed

before the namecheck is completed.  Peterson Declaration, at ¶ 4.

6.      On March 3, 2007, the NVC sent Wen Hua Zhang's case to the U.S. Consulate in

Guangzhou, China.  Peterson Declaration, at ¶ 5.

7.      The required namecheck for Wen Hua Zhang was completed on April 24, 2007.  Peterson

Declaration, at ¶ 6.

---

[1]      Pursuant to 8 C.F.R. 214.2(k)(5), approval of petitions for all fiancee visas
expires after four months.  ***A petition which has expired due to the passage of time may be
revalidated*** by a director or a consular officer for a period of four months from the date of
revalidation upon a finding that the petitioner and K-1 beneficiary are free to marry and intend to
marry each other within 90 days of the beneficiary's entry into the United States (emphasis
added).

[2]      Foreign Affairs Manual; 9 FAM – "Visas" available at:
http://foia.state.gov/regs/fams.asp?level=2&id=10&fam=0

GOV. SUPPLENTAL APPENDIX    2

8.      On April 30, 2007, the U. S. Consulate in Guangzhou, China sent Wen Hua Zhang the appropriate applications to submit, including an Application for Immigrant Visa and Alien Registration (Form DS-230), as required pursuant to 9 FAM 41.81 PN 3.2 and 22 C.F.R. § 41.81.  Peterson Declaration, at ¶ 7.

9.      The U. S. Consulate in Guangzhou, China received Wen Hua Zhang's Form DS-230 on July 13, 2007.  Peterson Declaration, ¶ 8.

10.     Pursuant to the requirements of 9 FAM 42.63 PN5.1-1(e), 9 FAM 41.81 N3.4 and 22 C.F.R. § 42.62, an interview will be scheduled for Wen Hua Zhang at the U. S. Consulate, Guangzhou, China, and a consular officer will adjudicate Wen Hua Zhang's nonimmigrant visa after that interview is conducted.  22 C.F.R. § 41.81.

## Claim Presented

Plaintiff seeks damages in the amount of $50,000, alleging that NVC's "long delay and inability to state when the case would finally be processed is negligence." Additionally, plaintiff seek $100,000 in damages alleging that NVC's visa processing and background check procedures deprive him of his "constitutional right to marry a person of his choice" in violation of 42 U.S.C. §1983.

## Argument

Plaintiff is not entitled to judicial review because Ms. Zhang has not completed the administrative application process.  The U.S. Consulate in Guangzhou only recently received Ms. Zhang's form DS-230 and has not had the opportunity to interview Ms. Zhang and to complete the processing of the application for immigrant visa and render a final decision.  Under

such circumstances, the application for a visa is not complete and there is no basis for the

plaintiff to seek relief.  Accordingly, the district court lacks jurisdiction to review agency action.

I.    **Because Plaintiff Has Not Completed The Administrative Application Process, The Court Lacks Subject Matter Jurisdiction**

Where an agency has not yet reached a final decision, the district court lacks jurisdiction

over the case.  Darby v. Cisneros, 509 U.S. 137, 144 (1993) quoting  Williamson County

Regional Planning Comm'n v. Hamilton Bank of Johnson City, 473 U.S. 172, 193 (1985). See

also Ma v. Reno, 114 F.3d 128, 130 (9th Cir. 1997).  In order for a decision to be considered

final, the agency must have "arrived at a definitive position on the issue that inflicts an actual,

concrete injury."  Reno, 114 F.3d at 130. In the instant case, there has been no final agency

action, because plaintiff has not completed the administrative application process of the

Department of State.

The procedures for processing  immigrant visas are found in Volume 9 of the U.S.

Department of State Foreign Affairs Manual. 9 FAM 42.63,[3] and at 22 C.F.R. §§ 41.81 and

42.62. Since October 1991, all immigrant visa petitions approved by the Department of

Homeland Security (DHS) have been sent to the NVC.  9 FAM 42.63 PN2.  The cases are

initially processed by the NVC and held until a visa number is available and the case is current

for processing, after which the file is sent to the appropriate consular post.  Id.  All consular

posts are required to conduct both a namecheck on, and an interview of, beneficiaries of fiancée

petitions. 9 FAM 42.62 PN3.1; 22 C.F.R. § 42.62.  As part of this clearance, all applicants over

the age of 16 whose petitions were approved by DHS have their names submitted to the FBI at

_____

[3]    Foreign Affairs Manual; 9 FAM – "Visas" available at:
http://foia.state.gov/regs/fams.asp?level=2&id=10&fam=0

4

the NVC for processing.  9 FAM Appendix G, 501.3(9).  Names are also checked against the

FBI's National Crime Information Center (NCIC).  Id.  Consular officers can not issue an

immigrant visa before this process is completed. 9 FAM 42.62 PN3.1.[4]

      After namechecks are complete, the NVC forwards the case file to the post.  Id.  Upon

receiving the visa petition, the consular officer is charged with promptly sending the applicant an

application packet that includes Form DS-230, Application for Immigrant Visa and Alien

Registration, as well as other forms.  9 FAM 41.81 PN3.2.  The Alien is only invited for an

interview after all security clearances have been completed, after the alien has reported that all of

the necessary documents have been collected; and after the alien's medical examination has been

completed and the report is or will be available before the interview.  9 FAM 41.81 PN3.4; 22

C.F.R. § 42.63.   An interview can not be scheduled until the post has received all of the required

forms, including form DS-230 .  9 FAM 42.63 PN4.2-1.

      According to the CCD, plaintiff filed a petition on September 7, 2006, to have his fiancée

classified as a non-immigrant under 8 U.S.C. 1101(a)(15)(K)(i), as an alien seeking to enter the

United States to complete a valid marriage within 90 days.   Peterson Declaration, at ¶ 3.  The

CCD also reflects that, as the beneficiary of a fiancée  petition, Ms. Zhang was subject to a

routine namecheck under 9 FAM 42.62 PN3.1. Id. at ¶ 4.  Pursuant to the procedures laid out in

the FAM, the NVC sent Wen Hua Zhang's case to the U. S. Consulate in Guangzhou, China on

March 3, 2007. Id., at ¶ 5.  Ms. Zhang's namecheck was completed on April 24, 2007, and the

---

[4]     The FAM and implementing regulations  do not provide a specific time frame in
which namechecks must be completed, but notes that "prescreening will add time at the
beginning of the immigrant visa (IV) process prior to formal application and interview."  9 FAM
42.63 PN9.2-2(b)(1).

GOV. SUPPLENTAL APPENDIX     5

U.S. Consulate in Guangzhou sent Ms. Zhang an Application for Immigrant Visa and Alien Registration (DS-230) on April 30, 2007. Id. at ¶7. The completed DS-230 application was not received by the U.S. Consulate until July 13, 2007. Id. at ¶ 6.[5]

Plaintiff filed the instant action on March 7, 2007 (Docket No. 1), only four days after Ms. Zhang's application was sent to the consulate in Guangzhou. Peterson Declaration at ¶ 5. This was nearly two months before the completion of Ms. Zhang's required namecheck and four months before her completed DS-230 visa application was even received by the U.S. Consulate. Id. at ¶¶ 4–8. Because plaintiff initiated this action long before the consular office had an opportunity to process Ms. Zhang's visa application, plaintiff Chiang has failed to complete the administrative process and the district court is without subject matter jurisdiction over the case, since the agency has not issued a final decision. Reno, 114 F.3d at 131.

Furthermore, as discussed below, even after a decision is made, the court will still not have jurisdiction, since the final decision of a consular officer to grant or deny a visa application is not subject to judicial review. Centeno v. Schultz, 817 F.2d 1212 (5th Cir. 1987), cert. denied, 484 U.S. 1005 (1988).

## II. The Final Decision of a Consular Officer to Grant or Deny a Visa is Not Subject to Judicial Review

Enforcement of immigration policy has been delegated solely to those executive officers whom Congress designates. The Secretary of State is granted authority over all immigration and nationality laws relating to consular officers, with the exception of a few areas, including "those

---

[5] Plaintiff has extensively documented and tracked the delivery of Ms. Zhang's DS-230. However, screening of mail and packages and other procedural steps at the U.S. Consulate in Guangzhou, the only U.S. immigration processing consulate in China, can delay the official receipt and recording of an application in the CCD.

6

powers, duties, and functions conferred upon the consular officers relating to the granting or refusal of visas." 8 U.S.C. §1104(a)(1). The power to grant and deny visas rests solely with consular officers and the Supreme Court has recognized that the decisions of those officers are not reviewable by the courts. Lem Moon Sing v. U.S., 158 U.S. 538, 547 (1895). This longstanding precedent "still clearly expresses the Court's position," and judicial intervention is restricted to only those matters authorized by treaty, statute, or required by the Constitution. Ventura, 647 F.2d at 30, quoting Hampton v. Mow Sun Wong, 426 U.S. 88, 101 n.21 (1976). There is no statutory or other authority that authorizes judicial review of a consular officer's decision to deny a visa, and the suggestion of such review was explicitly rejected by Congress when debating passage of the INA. Ventura, 647 F.2d at 30-3; quoting H. Rep. No. 1365, 82nd Congress, 2d Sess., 1952 U.S. Code Cong. & Admin. News 1653, 1688; Accord Sharif v. Chertoff, 2007 WL 2045489 (N.D.Ill. July 18, 2007) (finding no subject matter jurisdiction to compel adjudication of a fiancée visa application).

It has long been acknowledged that the decision of a consular officer to grant or deny a visa is insulated from court review. See Centeno v. Schultz, 817 F.2d 1212 (5th Cir. 1987), cert. denied, 484 U.S. 1005 (1988); See also Li Hing of Hong Kong, Inc. v. Levin, 800 F.2d 970 (9th Cir. 1986); Ventura-Escamilla v. INS, 647 F.2d 28 (9th Cir. 1981); Rivera de Gomez v. Kissinger, 534 F.2d 518 (2d Cir.), cert. denied, 429 U.S. 987 (1976); U.S. ex rel. Ulrich v. Kellogg, 30 F.2d 984 (D.C. Cir.), cert. denied, 279 U.S. 630 (1929); Romero v. Consulate of the U.S., Barranquilla, Colombia, 860 F. Supp. 319 (E.D. Va. 1994); Garcia v. Baker, 765 F. Supp. 426 (N.D. Ill. 1990); Hermina Sague v. United States, 416 F. Supp. 217 (D.P.R. 1976). Thus, even if the U.S. consulate in Guangzhou were to deny Ms. Zhang's application after her

interview, this decision would not be reviewable by the district court.   As such, plaintiff appeals to the district court for relief to which he is not entitled, and his case should accordingly be dismissed.

### CONCLUSION

Based on the foregoing, plaintiff's complaint should be dismissed for lack of subject matter jurisdiction.

Respectfully submitted,

LYNNE SKEIRIK, DIRECTOR OF
THE NATIONAL VISA CENTER, *et al.*,

MICHAEL J. SULLIVAN
United States Attorney

By:   /s/ Anton P. Giedt 8/2/2007_____
Anton P. Giedt
Assistant U.S. Attorneys
1 Courthouse Way
Boston, MA 02210
617-748-3309 (Voice)
617-748-3967 (Fax)
anton.giedt@usdoj.gov

### LOCAL RULE 7.1(A)(2) CERTIFICATION

Undersigned counsel certifies that pursuant to the requirements under Local Rule 7.1(A)(2), that he has attempted to confer wit the *pro se* plaintiff on the issues addressed in this motion in an attempt to reosolve these issues without success.

/s/Anton P. Giedt    8/2/2007
Anton P. Giedt
Assistant U.S. Attorney

8

**CERTIFICATE OF SERVICE**

       I, Anton P. Giedt, Assistant U.S. Attorney, hereby certify that on this date I have served a copy of the foregoing upon the *pro se* plaintiff of record by electronic filing.

                  /s/Amton P. Giedt   8/1/2007
                  Assistant U.S. Attorney

EXHIBIT A
Chiang-v-DOS: 07-civ-10451-NMG
U.S.Motion to Dismiss 8-2-2007

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| WEN Y. CHIANG | ) | No. 07 CA 10451 NMG |
| | ) | |
| | ) | |
| Plaintiff, | ) | DATE: July 31, 2007 |
| | ) | |
| v. | ) | |
| | ) | DECLARATION OF |
| CONDOLEEZZA RICE | ) | RACHEL ANN PETERSON |
| | ) | |
| _____ | ) | |

I, Rachel Ann Peterson, hereby declare under penalty of perjury:

1.      I am employed by the U.S. Department of State as attorney adviser of the legal advisory opinion section of the Visa Office, Bureau of Consular Affairs.  In that capacity I am authorized to search the electronic Consular Consolidated Database ("CCD") of the U.S. Department of State, Bureau of Consular Affairs, for replicated records of immigrant and nonimmigrant visas adjudicated at U.S. embassies and consular posts overseas.  I am also familiar with immigrant and nonimmigrant visa processing procedures and I have reviewed a copy of the visa record of Wen Hua Zhang (DPOB: 15 Jun 1969, China).

2.      The CCD contains replicated electronic data recording pending visa applications, visa interviews, and visas issued and refused at U.S. diplomatic and consular posts, including Guangzhou, China.

3.      According to the CCD, on September 7, 2006, plaintiff filed a petition with the United States Citizenship and Immigration Service ("USCIS") to have his fiancée, Wen Hua Zhang, classified as a nonimmigrant under 8 U.S.C. 1101(a)(15)(K)(i), as an alien who seeks to enter the United States to conclude a valid marriage within 90 days.

EXHIBIT A
Chiang-v-DOS: 07-civ-10451-NMG
U.S.Motion to Dismiss 8-2-2007

4. According to the CCD, as the beneficiary of a fiancée petition, Wen Hua Zhang was subject to a routine namecheck as required in Volume 9 of the U.S. Department of State Foreign Affairs Manual ("FAM"), 9 FAM 42.62 PN3.1. Pursuant to 9 FAM 42.62 PN3.1, an applicant's petition for Immigrant Visa and Alien Registration can not be processed before the namecheck is completed.

5. According to the CCD, the National Visa Center ("NVC") of the U.S. Department of State, sent Wen Hua Zhang's case to the U.S. Consulate in Guangzhou, China on March 3, 2007.

6. According to the CCD, the required namecheck for Wen Hua Zhang was completed on April 14, 2007.

7. According to the CCD, the U. S. Consulate in Guangzhou, China sent Wen Hua Zhang the appropriate applications to submit, including an Application for Immigrant Visa and Alien Registration (Form DS-230), on April 30, 2007, as required pursuant to 9 FAM 41.81 PN 3.2 and 22 C.F.R. § 41.81.

8. According to the CCD, the U. S. Consulate in Guangzhou, China received Wen Hua Zhang's Form DS-230 on July 13, 2007.

9. Pursuant to the requirements of 9 FAM 42.63 PN5.1-1(e), 9 FAM 41.81 N3.4, and 22 C.F.R. § 42.62, an interview will be scheduled for Wen Hua Zhang at the United States Consulate, Guangzhou, China, and a consular officer will adjudicate Wen Hua Zhang's nonimmigrant visa after that interview is conducted. 22 C.F.R. § 41.81.

I declare under the penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct to the best of my knowledge.

Washington, D.C.
August 2, 2007

Rachel Ann Peterson

EXHIBIT B
U.S Citizenship and Immigration Services - Case Status Service Online        Page 1 of
Case: 08-2109   Case 1:07-cv-10451-NMG   Document 15-3   Filed 08/02/2007   Page 1 of 1
1:07-cv-10451-NMG
07-cv-10451-NMG
U.S. Motion to Dismiss 8-2-2007



Home    Contact Us    Site Map    FAQ

Search



Advanced Search

Services & Benefits    Immigration Forms    Laws & Regulations    About USCIS    Education & Resource    Press Room

Change Of Address

Services While Your Case is Pending

Civil Surgeons

Processing Times

Case Status Online

Case Status Search

Register

Login

Receipt Number: eac0625151063

Application Type: I129F, PETITION FOR FIANCE(E)

Current Status: Approval notice sent.

On October 23, 2006, we mailed you a notice that we have approved this I129F PETITION FOR FIANCE(E). Please follow any instructions on the notice. If you move before you receive the notice, call customer service.

You can choose to receive automatic case status updates, which will be sent via email. Please click here to create an account online.

If you would like to see our current Processing Dates for Applications and Petitions, click here

Note: Case Status is available for Applications and Petitions which were filed at USCIS Service Centers. If you filed at a USCIS Local Office, your case status may not be reviewable online but for processing times on forms filed at that Office please, click here.

If you have a question about case status information provided via this site, or if you have not received a decision from USCIS within the current processing time listed, please contact Customer Service at (800) 375 – 5283 or 1-800-767-1833 (TTY).

New Search

Printer Friendly Case Status

Get Acrobat Reader
Adobe

04-17-2007 02:12 PM EDT

Home    Contact Us    Privacy Policy    Website Policies    NoFEAR    Freedom Of Information Act    FirstGov

U.S. Department of Homeland Security

GOV. SUPPLENTAL APPENDIX    12
4/17/2007

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

Wen Y. Chiang,

        Plaintiff,

        v.

LYNNE SKEIRIK, DIRECTOR OF THE
NATIONAL VISA CENTER, *et al.*,

        Defendants.

**Civil Action No. 07-10451-NMG**

## DEFENDANTS' OPPOSITION
## TO PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER
## AND RENEWAL OF MOTION TO DISMISS

Federal Defendants ("defendants" or "government") oppose the plaintiff's motion for a temporary restraining order ("TRO") baring the U.S. Department of State Consulate ("DOS" or "Consulate") in China from returning the plaintiff's case to the Department of Homeland Security ("DHS"), Citizenship and Immigration Service ("CIS"), for review and possible revocation. Defendants request that the Court deny the plaintiff's motion for a TRO and dismiss the TRO for lack of jurisdiction and failure to state a claim upon which relief may be granted. Defendants further renew, and incorporate by reference, their motion to dismiss this action for lack of jurisdiction and failure to state a claim upon which relief may be granted. Docket Nos. 14 and 15.

Plaintiff has no likelihood of success on the merits because, *inter alia*, (1) the Court lacks jurisdiction to review this matter, (2) the plaintiff and his beneficiary are married and no longer eligible for the type of visa originally sought, and (3) the original action sought by the plaintiff has been performed by the defendants and that action is not subject to review pursuant to the doctrine of consular nonreviewability.

## BACKGROUND

1.    On September 7, 2006, plaintiff filed a petition with the United States Citizenship and Immigration Service ("USCIS") to have his fiancée, Wen Hua Zhang, classified as a nonimmigrant under 8 U.S.C. 1101(a)(15)(K)(i), as an alien who seeks to enter the United States to conclude a valid marriage within 90 days. Exhibit A, Declaration of Rachel Ann Peterson, U.S. Department of State, August 2, 2007 (Peterson Declaration"), at ¶ 3.

2.    On October 23, 2006 the USCIS mailed the plaintiff a notice that the USCIS had approved the I-129F, Petition for Fiancée. Exhibit B.

3.    The notice also indicated that the case had been forwarded to National Visa Center ("NVC") of the U.S. Department of State for processing. Docket No. 1 ("Complaint"), at ¶ 7.

4.    The notice indicated that it would expire on February 23, 2007. Complaint at ¶ 6.[1]

5.    As the beneficiary of a fiancée petition, plaintiff's fiancée, Wen Hua Zhang was subject to a routine namecheck as required in Volume 9 of the U.S. Department of State Foreign Affairs Manual ("FAM"), 9 FAM 42.62 PN3.1. Pursuant to 9 FAM 42.62 PN3.1,[2] an applicant's petition for Immigrant Visa and Alien Registration can not be processed

---

[1]    Pursuant to 8 C.F.R. 214.2(k)(5), approval of petitions for all fiancee visas expires after four months. ***A petition which has expired due to the passage of time may be revalidated*** by a director or a consular officer for a period of four months from the date of revalidation upon a finding that the petitioner and K-1 beneficiary are free to marry and intend to marry each other within 90 days of the beneficiary's entry into the United States (emphasis added).

[2]    Foreign Affairs Manual; 9 FAM – "Visas" available at: http://foia.state.gov/regs/fams.asp?level=2&id=10&fam=0

GOV. SUPPLENTAL APPENDIX    14

before the name-check is completed.  Peterson Declaration, at ¶ 4.

6.    On March 3, 2007, the NVC sent Wen Hua Zhang's case to the U.S. Consulate in

Guangzhou, China.  Peterson Declaration, at ¶ 5.

7.    The required name-check for Wen Hua Zhang was completed on April 24, 2007.

Peterson Declaration, at ¶ 6.[3]

8.    In April 2007, plaintiff married Wen Hua Zhang in China.  TRO at 1, fn 2 and Exhibit B,

¶ 5, and Exhibit C, ¶ 3.  This rendered plaintiff and Wen Hua Zhang ineligible for a

nonimmigrant fiancé visa under 8 U.S.C. 1101(a)(15)(K)(i), as an alien who seeks to

enter the United States to conclude a valid marriage within 90 days.

9.    On April 30, 2007, the U. S. Consulate in Guangzhou, China sent Wen Hua Zhang the

appropriate applications to submit, including an Application for Immigrant Visa and

Alien Registration (Form DS-230), as required pursuant to 9 FAM 41.81 PN 3.2 and 22

C.F.R. § 41.81.  Peterson Declaration, at ¶ 7.

9.    The U. S. Consulate in Guangzhou, China received Wen Hua Zhang's Form DS-230 on

July 13, 2007.  Peterson Declaration, ¶ 8.

---

[3]    Plaintiff has made several allegations in his pleadings and his TRO concerning communications with the U. S. Attorney's office.  These allegations are patently inaccurate and false.  The U.S. Attorney's office, namely undersigned counsel, has never made any representations regarding the plaintiff's beneficiary's status on any terrorist list.  Nor did the U.S. Attorney's Office make any representations or commitments regarding the scheduling of plaintiff's beneficiary's interview for July of 2007.  The U.S. Attorney's Office, in an effort to confer under Local Rule 7.1, and to direct the *pro se* plaintiff to the proper guidance on the processing of fiancee applications, did generally explain the application procedures, estimated processing times and proper lines of communication with the U.S. Consulate in China.  When it became apparent that the plaintiff was mischaracterizing and inaccurately reporting these communications, the U.S. Attorney's office discontinued attempts to confer with the plaintiff.

3

10.    Pursuant to the requirements of 9 FAM 42.63 PN5.1-1(e), 9 FAM 41.81 N3.4 and 22

C.F.R. § 42.62, an interview was scheduled for Wen Hua Zhang at the U. S. Consulate,

Guangzhou, China, on September 25, 2007.  TRO at Exhibit A.

11.    A consular officer conducted the interview with only Wen Hua Zhang present in

accordance with DOS discretion.

12.    A consular officer adjudicated Wen Hua Zhang's nonimmigrant visa application and

determined that Wen Hua Zhang did not fulfill the eligibility requirements for the

petitioned visa.  TRO at Exhibit D; Gorsky Declaration at ¶¶    ; 22 C.F.R. § 41.81.

### ARGUMENT OPPOSING A TEMPORARY RESTRAINING ORDE

The standards for evaluating the appropriateness of granting a TRO or a preliminary

injunction are nearly identical, a district court weighs four factors: (1) the plaintiff's likelihood of

success on the merits; (2) the potential for irreparable harm in the absence of an injunction; (3)

whether issuing an injunction will burden the defendants less than denying an injunction would

burden the plaintiffs; and (4) the effect, if any, on the public interest.  United States v. Weikert,

2007 U.S. App. LEXIS 18845 at 9 (1st Cir., 2007).  See also Bl(a)ck Tea Soc'y v. City of

Boston, 378 F.3d 8, 11 (1st Cir. 2004) (order denying preliminary injunction against security

barriers at the 2004 Democratic National Convention affirmed even though plaintiff could show

some likelihood to succeed on the merits, because the potential for irreparable harm, the burden

upon defendants and the effect upon public interest all weighed against granting the preliminary

injunction).  In making this determination, "the most important element of the preliminary

injunction assessment [is whether or not] the moving party can[] demonstrate that he is likely to

succeed [on the merits]."  Weikert, 2007 U.S. App. LEXIS 18845 at 9-10 & 46-47.  (internal

4

quotations omitted) (order granting preliminary injunction was reversed because the plaintiff was unable to show a likelihood of success on his claim of a 4th Amendment violation; court did not need o evaluate other elements).

Absent a showing of likelihood of success on the merits, the other elements become a matter of "idle curiosity" and the preliminary injunction should not be granted. Id. See also New Comm Wireless Servs., Inc. v. SprintCom, Inc., 287 F.3d 1, 9 & 14 (1st Cir. 2002) (order for preliminary injunction vacated based solely upon a lack of showing that plaintiff would succeed on the merits because plaintiff made insufficient showing of the elements of tortuous interference or lack of good faith required under contract theory; appellate court did not review the other three elements for granting a preliminary injunction).

A court may also deny an order for a preliminary injunction absent a showing of irreparable harm without needing to evaluate the other elements. Charlesbank Equity Fund II, Ltd. P'ship v. Blinds To Go, Inc., 370 F.3d 151, 162-163 (1st Cir. 2004). (order granting a preliminary injunction was affirmed where moving party was unable to show that unjust enrichment and a total loss of an investment would constitute irreparable harm). Also "[i]n most cases … irreparable harm constitutes a necessary threshold showing for an award of preliminary injunctive relief." Id. at 162. The burden for proving irreparable harm lies with the party seeking a preliminary injunction. Id. A finding of irreparable harm may exist if there is no adequate remedy at law. Id. However, "finding of irreparable harm must be grounded on something more than conjecture, surmise, or a party's unsubstantiated fears of what the future may have in store." Id. See also In re Rare Coin Galleries, Inc., 862 F.2d 896, 902 (1st Cir. 1988) (order granting a preliminary injunction was reversed where moving party's speculation

5

that actions of insurance carrier would lead to inflation or imposition of unreasonable fees was insufficient to show irreparable harm).

### No Likelihood of Success on the Merits

As a preliminary matter, as of April, 2007, the plaintiff and his beneficiary were no longer even eligible for a nonimmigrant fiancé visa because, by their own admission, they were married.  TRO at 1, fn. 2, Exhibit B, ¶ 5, Exhibit C at ¶ 3.  Under section 1101(a)(15)(K)(i) of the Immigration and Nationality Act ("INA"), the term immigrant means every alien except an alien who is within the following classes of nonimmigrant aliens — ". . .an immigrant who – (i) is the finacee or fiancé of a citizen of the United States and who seeks to enter the United States **solely to conclude a valid marriage with the petitioner within 90 days after admission** . . ." (Emphasis added).  8 U.S.C. § 1101(a)(15)(K)(I)  Further, section 1184(d)(1) of the INA states that a visa shall be approved **only** if the petitioner and the beneficiary have a bona fide **intention to marry** and are legally able and actually willing to **conclude** a valid marriage **within the United States** . . ." (emphasis added).  8 U.S.C. § 1184(d)(1).  In short, a fiancé visa is not intended for someone who is already married such as the plaintiff's beneficiary.

The correct application standards and process for a married couple is set forth at section 1154 of the INA and DHS regulations at 8 C.F.R. §§ 204.1 *et seq*., pertaining to the admission of immediate relatives such as spouses (an I-130 Petition).  The plaintiff has not filed for such a petition and therefore, the Court lacks subject matter jurisdiction to review the complaint in this matter or the plaintiff's motion for TRO.

Further, notwithstanding the fact that the plaintiff and his wife are ineligible for a nonimmigrant fiancé visa, plaintiff's motion for TRO is without merit and should be denied

GOV. SUPPLENTAL APPENDIX    18

because the substance of plaintiff's original complaint is now moot because the defendant DOS acted on and denied the plaintiff's beneficiary's application for a nonimmigrant fiancé visa. Under the well established doctrine of consular nonreviewability the Court lacks jurisdiction to review that determination or to grant the plaintiff any relief in response to his motion for TRO, and the plaintiff has no basis to challenge the determination.  See Docket No. 15, at 6-8.

It has long been acknowledged that the decision of a consular officer to grant or deny a visa is insulated from court review.  See Centeno v. Schultz, 817 F.2d 1212 (5th Cir. 1987), cert. denied, 484 U.S. 1005 (1988); See also  Li Hing of Hong Kong, Inc. v. Levin, 800 F.2d 970 (9th Cir. 1986); Ventura-Escamilla v. INS, 647 F.2d 28 (9th Cir. 1981); Rivera de Gomez v. Kissinger, 534 F.2d 518 (2d Cir.), cert. denied, 429 U.S. 987 (1976); U.S. ex rel. Ulrich v. Kellogg, 30 F.2d 984 (D.C. Cir.), cert. denied, 279 U.S. 630 (1929); Romero v. Consulate of the U.S., Barranquilla, Colombia, 860 F. Supp. 319 (E.D. Va. 1994); Garcia v. Baker, 765 F. Supp. 426 (N.D. Ill. 1990); Hermina Sague v. United States, 416 F. Supp. 217 (D.P.R. 1976).  As evidenced by the Declaration of Jeffrey H. Gorsky of DOS, there was also a substantial basis for the denial of the visa application.  See Exhibit C, Declaration of Jeffrey H. Gorsky ("Gorsky Declaration").

The doctrine of consular nonreviewability similarly encompasses plaintiff's civil rights and due process allegations, which also have no merit.  See De Castro v. Fairman, 164 Fed.Appx. 930, 2006 WL 229022, C.A.11 (Fla.), January 31, 2006 (NO. 05-12829) (fact that naturalized citizen alleged due process violation did not change the applicability of the doctrine of consular nonreviewability); Aggarwal v. Secretary of State of U.S., 951 F.Supp. 642, S.D.Tex., December 31, 1996 (NO. CIV. A. H-96-1255) (In general, a Bivens claim against

consular official for allegedly violating constitutional right by denying visa application was inappropriate; allowing claim would permit every disallowed visa applicant to file lawsuit. Even if Bivens action against consular officer for allegedly violating constitutional right by denying visa was appropriate, applicant had no property interest in obtaining visa for any due process protection to be implicated).

## **CONCLUSION**

In short, the plaintiff has no likelihood of success on the merits and thus the Court need not reach the other elements for injunctive relief.  The Court should deny the motion for TRO and dismiss this action.  United States v. Weikert, 2007 U.S. App. LEXIS 18845 at 9 (1st Cir., 2007); New Comm Wireless Servs., Inc. v. SprintCom, Inc., 287 F.3d 1, 9 & 14 (1st Cir. 2002).


Respectfully submitted,

UNITED STATES OF AMERICA

MICHAEL J. SULLIVAN
United States Attorney

By:    /s/ Anton P. Giedt 10/3/2007_____
Anton P. Giedt
Assistant U.S. Attorneys
1 Courthouse Way
Boston, MA 02210
617-748-3309 (Voice)
617-748-3967 (Fax)
anton.giedt@usdoj.gov

---

**CERTIFICATE OF SERVICE**

Suffolk, ss.                                                                                      Boston, Massachusetts
                                                                                                      DATE: October 3, 2007

I, Anton P. Giedt, Assistant U.S. Attorney, do hereby certify that I have this day served a copy of the foregoing upon counsel of record by electronic filing.

/s/ Anton P. Giedt
Anton P. Giedt
Assistant U.S. Attorney

---

GOV. SUPPLENTAL APPENDIX    20

EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| WEN Y. CHIANG | ) | No. 07 CA 10451 NMG |
| | ) | |
| | ) | |
| Plaintiff, | ) | DATE: July 31, 2007 |
| | ) | |
| v. | ) | |
| | ) | DECLARATION OF |
| CONDOLEEZZA RICE | ) | RACHEL ANN PETERSON |
| | ) | |
| | ) | |

I, Rachel Ann Peterson, hereby declare under penalty of perjury:

1.    I am employed by the U.S. Department of State as attorney adviser of the legal advisory opinion section of the Visa Office, Bureau of Consular Affairs. In that capacity I am authorized to search the electronic Consular Consolidated Database ("CCD") of the U.S. Department of State, Bureau of Consular Affairs, for replicated records of immigrant and nonimmigrant visas adjudicated at U.S. embassies and consular posts overseas. I am also familiar with immigrant and nonimmigrant visa processing procedures and I have reviewed a copy of the visa record of Wen Hua Zhang (DPOB: 15 Jun 1969, China).

2.    The CCD contains replicated electronic data recording pending visa applications, visa interviews, and visas issued and refused at U.S. diplomatic and consular posts, including Guangzhou, China.

3.    According to the CCD, on September 7, 2006, plaintiff filed a petition with the United States Citizenship and Immigration Service ("USCIS") to have his fiancée, Wen Hua Zhang, classified as a nonimmigrant under 8 U.S.C. 1101(a)(15)(K)(i), as an alien who seeks to enter the United States to conclude a valid marriage within 90 days.

4.     According to the CCD, as the beneficiary of a fiancée petition, Wen Hua Zhang was subject to a routine namecheck as required in Volume 9 of the U.S. Department of State Foreign Affairs Manual ("FAM"), 9 FAM 42.62 PN3.1.  Pursuant to 9 FAM 42.62 PN3.1, an applicant's petition for Immigrant Visa and Alien Registration can not be processed before the namecheck is completed.

5.     According to the CCD, the National Visa Center ("NVC") of the U.S. Department of State, sent Wen Hua Zhang's case to the U.S. Consulate in Guangzhou, China on March 3, 2007.

6.     According to the CCD, the required namecheck for Wen Hua Zhang was completed on April 14, 2007.

7.     According to the CCD, the U. S. Consulate in Guangzhou, China sent Wen Hua Zhang the appropriate applications to submit, including an Application for Immigrant Visa and Alien Registration (Form DS-230), on April 30, 2007, as required pursuant to 9 FAM 41.81 PN 3.2 and 22 C.F.R. § 41.81.

8.     According to the CCD, the U. S. Consulate in Guangzhou, China received Wen Hua Zhang's Form DS-230 on July 13, 2007.

9.     Pursuant to the requirements of 9 FAM 42.63 PN5.1-1(e), 9 FAM 41.81 N3.4, and 22 C.F.R. § 42.62, an interview will be scheduled for Wen Hua Zhang at the United States Consulate, Guangzhou, China, and a consular officer will adjudicate Wen Hua Zhang's nonimmigrant visa after that interview is conducted.  22 C.F.R. § 41.81.

I declare under the penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct to the best of my knowledge.

Washington, D.C.
August 2, 2007


Rachel Ann Peterson



Home    Contact Us    Site Map    FAQ

EXHIBIT B

Search    

Advanced Search

Services & Benefits    Immigration Forms    Laws & Regulations    About USCIS    Education & Resource    Press Room

**Change Of Address**

**Services While Your Case is Pending**

**Civil Surgeons**

**Processing Times**

**Case Status Online**

   Case Status Search

   Register

   Login

Receipt Number: eac0625151063

Application Type: I129F, PETITION FOR FIANCE(E)

Current Status: Approval notice sent.

On October 23, 2006, we mailed you a notice that we have approved this I129F PETITION FOR FIANCE(E). Please follow any instructions on the notice. If you move before you receive the notice, call customer service.

You can choose to receive automatic case status updates, which will be sent via email. Please click here to create an account online.

If you would like to see our current Processing Dates for Applications and Petitions, click here

Note: Case Status is available for Applications and Petitions which were filed at USCIS Service Centers. If you filed at a USCIS Local Office, your case status may not be reviewable online but for processing times on forms filed at that Office please, click here.

If you have a question about case status information provided via this site, or if you have not received a decision from USCIS within the current processing time listed, please contact Customer Service at (800) 375 – 5283 or 1-800-767-1833 (TTY).

New Search

Printer Friendly Case Status

Get Acrobat Reader
Adobe

04-17-2007 02:12 PM EDT

Home    Contact Us    Privacy Policy    Website Policies    NoFEAR    Freedom Of Information Act    FirstGov

U.S. Department of Homeland Security

GOV. SUPPLENTAL APPENDIX    23
4/17/2007

EXHIBIT C

United States Department of State

*Washington, D.C. 20520*

I, Jeffrey Gorsky, hereby declare that:

1. I am the Chief of the Legal Advisory Opinions Division of the Visa Office, Bureau of Consular Affairs, U.S. Department of State.

2. I have regular access to the Consolidated Consular Database (CCD) as part of the normal functions of my position. This database contains records of every application for an immigrant or nonimmigrant visa, whether the application is approved or denied (the database contains all applications since at least the year 2000). This file includes case notes added by the adjudicating officers

I searched this database, and it shows a file and case notes for the fiancée visa application of Wen Hua Zhang. According to the case notes, the petition was prepared to be returned to the Department of Homeland Security for review and possible revocation after Ms. Zhang's visa interview on September 25, 2007. It was determined that Ms. Zhang did not fulfill the eligibility requirements for a visa and that, based on the evidence reviewed, she did not have a bona fide relationship with the petitioner. The reasons cited in the notes for ineligibility included the fact that the petitioner had previously filed for two other women from China as fiancées. One he brought in and then divorced in 2003. He filed for the other woman last year, and the applicantion was withdrawn and there were discrepancies between the explanations provided for this between the petitioner, applicant and information in the visa file. The consular officer also questioned the credibility of the evidence presented to prove the bona fide nature of the relationship.

Pursuant to 28 U.S.C. 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed by: _____ on: _10/3/07_

       Jeffrey Gorsky        October 3 2007

# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

WEN Y. CHIANG,

      Plaintiff,

      v.                    **Civil Action No. 07-10451-NMG**

LYNNE SKEIRIK, DIRECTOR OF THE
NATIONAL VISA CENTER, *et al.*,

      Defendants.

## MEMORANDUM IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

### SUMMARY

Pursuant to Fed. R. Civ. P.12(b)(1) and 12(b)(6), the Defendants ("Government") hereby move to dismiss the above-captioned action because this Court lacks jurisdiction over the subject matter of the claims on several grounds, and because the Plaintiff ("Chiang") has failed to state any justiciable claims upon which relief can be granted.

First, Chiang's alleged <u>Bivens</u>[1] claims (Counts I and II) in his Amended Complaint (Docket No. 27), and as a consequence all of his other claims (Counts III through VII), will fail for three fundamental reasons: (1) no <u>Bivens</u> action may be brought against a federal agency; (2) no <u>Bivens</u> claim may be brought against a federal official in their official capacity, and (3) the alleged <u>Bivens</u> claims are actually a repackaging of previous allegations designed to persuade the Court to review the decision of the consular official, which review the Court previously ruled was jurisdictionally barred by the doctrine of consular non-reviewability.  <u>See</u> Docket No. 26 ("Memorandum and Order") at 5–8.  Second, to the extent Chiang claims damages as a result of the negligence of

---

[1]      <u>Bivens v. Six Unknown Fed. Narcotics Officers</u>, 403 U.S. 388 (1971).

GOV. SUPPLENTAL APPENDIX    25

Government officials acting within the scope of their employment, he has once again repackaged his initial claims and failed to follow the mandatory administrative process set forth in the Federal Tort Claims Act, 28 U.S.C. §§ 1346, 2675, 2679 ("FTCA"), and, as this Court has previously ruled, there is no jurisdiction to hear those claims.  Memorandum and Order at 9–10.  Similarly, with respect to the alleged <u>Bivens</u> claims Chiang has failed to identify specific individuals, the specific acts allegedly committed, and to properly serve those individuals in accordance with Fed. R. Civ. P. 4(i)(2)(B).  Finally, by his own admission, Chiang has failed to exhaust his administrative remedies with the United States Citizenship and Immigration Service ("USCIS").  See Docket No. 27 ("Amended Complaint") at ¶ 35.

Accordingly, Chiang's Amended Complaint should be dismissed in its entirety.

## <u>BACKGROUND</u>

1.  On September 7, 2006, Chiang filed a petition with the USCIS to have his fiancée, Wen Hua Zhang ("Amy"), classified as a nonimmigrant under 8 U.S.C. 1101(a)(15)(K)(i), as an alien who seeks to enter the United States to conclude a valid marriage within 90 days.  Docket No. 23, Defendants' Opposition to Motion for TRO, at Exhibit A, Declaration of Rachel Ann Peterson, U.S. Department of State, August 2, 2007 ("Peterson Declaration"), at ¶ 3.[2]

2.  On October 23, 2006 the USCIS mailed Chiang a notice that the USCIS had approved the I-129F, Petition for Fiancée.  Docket No. 23, Defendants' Opposition to Motion for TRO, at Exhibit B.  The notice indicated that it would expire on February 23, 2007.  Docket No.

---

[2]   See <u>Dynamic Image Technologies, Inc. v. United States</u>, 221 F.3d 34, 37-38 (1st Cir. 2000) (in considering a Rule 12(b)(1) motion, "[t]he court . . . may consider extrinsic materials, and, to the extent it engages in jurisdictional factfinding, is free to test the truthfulness of the plaintiff's allegations.").

GOV. SUPPLENTAL APPENDIX   26

1 ("Complaint") at ¶ 6.[3]

3.    As the beneficiary of a fiancée petition, Amy was subject to a routine namecheck as

required in Volume 9 of the U.S. Department of State Foreign Affairs Manual ("FAM"), 9

FAM 42.62 PN3.1.  Pursuant to 9 FAM 42.62 PN3.1,[4] an applicant's petition for Immigrant

Visa and Alien Registration can not be processed before the namecheck is completed.

Peterson Declaration, at ¶ 4.

4.    On March 3, 2007, the NVC sent Amy's case to the U.S. Consulate in Guangzhou, China.

Peterson Declaration, at ¶ 5.

5.    The required namecheck for Amy was completed on April 24, 2007.  Peterson Declaration,

at ¶ 6.

6.    In April 2007, Chiang married Amy in China.   Docket No. 20 ("Chiang's Motion for

TRO") at 1; fn 2 ("Chiang married his fiancée in China.  This marriage is honored by the

Chinese people."); Exhibit B, ¶ 5; and Exhibit C, ¶ 3.  This rendered Chiang and Amy

ineligible for a nonimmigrant fiancée visa under 8 U.S.C. 1101(a)(15)(K)(i), as an alien

who seeks to enter the United States to conclude a valid marriage within 90 days.  See

Memorandum and Order at 7–8.

7.    On April 30, 2007, the U. S. Consulate in Guangzhou, China sent Amy the appropriate

applications to submit, including an Application for Immigrant Visa and Alien Registration

---

[3]    Pursuant to 8 C.F.R. 214.2(k)(5), approval of petitions for all fiancée visas expires after four
months.  *A petition which has expired due to the passage of time may be revalidated* by a director or a consular
officer for a period of four months from the date of revalidation upon a finding that the petitioner and K-1
beneficiary are free to marry and intend to marry each other within 90 days of the beneficiary's entry into the United
States (emphasis added).

[4]    Foreign Affairs Manual; 9 FAM – "Visas" available at:
http://foia.state.gov/regs/fams.asp?level=2&id=10&fam=0

GOV. SUPPLENTAL APPENDIX    27

(Form DS-230), as required pursuant to 9 FAM 41.81 PN 3.2 and 22 C.F.R. § 41.81.

Peterson Declaration, at ¶ 7.

8. The U. S. Consulate in Guangzhou, China received Amy's Form DS-230 on July 13, 2007.

Peterson Declaration, ¶ 8.

9. Pursuant to the requirements of 9 FAM 42.63 PN5.1-1(e), 9 FAM 41.81 N3.4 and 22

C.F.R. § 42.62, an interview was scheduled for Amy at the U. S. Consulate, Guangzhou,

China, on September 25, 2007.  See Chiang's Motion for TRO at Exhibit A; Docket No.

23, Defendants' Opposition to Motion for TRO, Peterson Declaration at ¶ 9, and at Exhibit

C, Declaration of Jeffrey Gorsky, U.S. Department of State, October 3, 2007 ("Gorsky

Declaration"), at ¶ 2.

10. A consular officer conducted the interview with only Amy present in accordance with

Department of State discretion and adjudicated Amy's nonimmigrant visa application after

the interview was completed.  22 C.F.R. § 41.81; Gorsky Declaration at ¶ 2.

11. Based on the interview, documents and other evidence, the consular officer determined that

Amy and Chiang's relationship was not bona fide and therefore denied the visa petition,

and returned the case to the USCIS for review and possible revocation.  Gorsky Declaration

at ¶ 2; Chiang's Motion for TRO at Exhibit D.

12. On December 4, 2007, this Court issued a Memorandum and Order (Docket No.26)

dismissing all of Chiang's claims except those Constitutional claims in the context of the

application process (Id. at 10 and 15).  The Court also directed Chiang to file an amended

complaint restating any justiciable claims not dismissed in the Memorandum and Order.

Id. at 15.

GOV. SUPPLENTAL APPENDIX    28

## ARGUMENT

**I.      A <u>Bivens</u> Claim is Inappropriate Against a Federal Agency**

Chiang names the U.S. Consulate in Gaungzhou as a party to the action, and it is to the

U.S. Consulate that he refers to in Counts I and II of his Amended Complaint (as well as Counts III

through VII).  Docket No. 27.  However, it is black letter law that a "federal agency cannot be sued

'in its own name.'"  <u>Federal Deposit Insurance Corporation v. Meyer</u>, 510 U.S. 471, 476 (1994).

Thus, any <u>Bivens</u> claim that Chiang might seek to bring against a federal agency must fail because

such a claim is explicitly barred.  <u>Id</u>. at 486.

**II.     A <u>Bivens</u> Claim is Inappropriate Against a Federal Official in his Official Capacity**

Chiang does not make clear against which Defendant(s) he is asserting his <u>Bivens</u> claims.

However, a plaintiff may not maintain a <u>Bivens</u> claim against a defendant in his official capacity.

<u>McCloskey v. Mueller</u>, 446 F.3d 262, 272 (1st Cir. 2006).  To the extent the Court determines that

Chiang is seeking to maintain a <u>Bivens</u> action against any Defendant in his official capacity, such

action must be dismissed.  <u>Id</u>.

**III.    The <u>Bivens</u> Claims are not Constitutional Claims, but a Maneuver by Chiang to Have
         the Court Review the Decision of a Consular Official, which is Barred by the Doctrine
         of Consular Non-reviewability**

Chiang fails to state a justiciable Constitutional claim under either the Fourth or Fifth

Amendment, as well as the Seventh Amendment or any other Constitutionally protected right.  As

an initial matter, the acts complained of in the Amended Complaint are merely a repackaging of

Chiang's claims in his original complaint, are vague and speculative, and do not rise to the level of

Constitutional significance.

**A.      Chiang's Fifth Amendment <u>Bivens</u> Claim Should be Dismissed**

GOV. SUPPLENTAL APPENDIX    29

Assuming, *arguendo*, that Chiang is indeed attempting to assert a <u>Bivens</u> claim against a consular officer in his individual capacity, the claim is still one for which relief cannot be granted and for which the Court does not have jurisdiction. As this Court held in its Memorandum and Order "[t]he doctrine of consular non-reviewability bars this Court from reviewing a consular's decision to exclude an alien from the United States." Memorandum and Order, at 5 (citing <u>Saavedra Bruno v. Albright</u>, 197 F.3d 1153, 1159-1160 (D.C. Cir. 1999)); <u>see also, e.g.</u>, <u>Centeno v. Schultz</u>, 817 F.2d 1212 (5th Cir. 1987), <u>cert. denied</u>, 484 U.S. 1005 (1988); <u>Li Hing of Hong Kong, Inc. v. Levin</u>, 800 F.2d 970 (9th Cir. 1986); <u>Ventura-Escamilla v. INS</u>, 647 F.2d 28 (9th Cir. 1981); <u>Rivera de Gomez v. Kissinger</u>, 534 F.2d 518 (2d Cir.), <u>cert. denied</u>, 429 U.S. 987 (1976); <u>U.S. ex rel. Ulrich v. Kellogg</u>, 30 F.2d 984 (D.C. Cir.), <u>cert. denied</u>, 279 U.S. 630 (1929); <u>Romero v. Consulate of the U.S., Barranquilla</u>, 860 F. Supp. 319 (E.D. Va. 1994); <u>Garcia v. Baker</u>, 765 F. Supp. 426 (N.D. Ill. 1990); <u>Hermina Sague v. United States</u>, 416 F. Supp. 217 (D.P.R. 1976).

Chiang is again asserting that the Court should review the decision of the consular officer but this time has couched the allegations as Fourth and Fifth Amendment claims in a thinly-veiled attempt to evade the Court's findings in its Memorandum and Order. By allowing Chiang to assert a <u>Bivens</u> claim under the facts of this case would in effect create a precedent allowing every denied visa applicant to file suit in district court and bypass the strict rule of consular non-reviewability. <u>Aggarwal v. Secretary of State of United States</u>, 951 F.Supp. 642, 649 (S.D.Tex. 1996).

Chiang's first count is a Fifth Amendment due process claim that ostensibly argues that the U.S. Consulate denied him due process in his visa request during many stages "apart from the decision to deny Amy's visa." Amended Complaint, at ¶22. Based on this vague assertion Chiang is asking the Court to review every aspect that went into the consular officer's decision, except for

GOV. SUPPLENTAL APPENDIX    30

the decision itself.  In reality, however, Chiang is asking that the Court review the decision.  This is made visible by that fact that in Count V Chiang states "[t]his Court has jurisdiction to consider Amy's pregnancy . . . to issue injunctive relief for the Consulate to review Amy's visa because of her pregnancy."  Amended Complaint, at ¶43.  Chiang, in Count VI, also states "[m]andamus relief may be required to require the Consulate to review Amy's visa . . .."  Amended Complaint, at ¶49.  Clearly, by his own admission, Chiang is asking the Court to review the decision made by the consular official and to reverse it, relief that this Court has clearly stated is unavailable.  Memorandum and Order, at 5–8, 12.

Even if it is assumed that Chiang's <u>Bivens</u> action with respect to the Fifth Amendment was viable, which it is not, Chiang still cannot establish a violation that rises to the level of a Constitutional tort.  "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property."[5]  <u>Board of Regents of State Colleges v. Roth</u>, 408 U.S. 564, 569 (1972).  Here, it appears as if Chiang is attempting to raise a property interest in the interview process and an entitlement to a visa.

Property interests, however, are not created by the Constitution.  <u>Board of Regents of State Colleges</u> 408 U.S. at 577.  Instead, property interests "are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits."  <u>Id</u>.  Therefore, for a person to have a cognizable property interest he "clearly must have more than an abstract need or

---

[5]    The due process clause of the Fourteenth Amendment protects persons from state actions.  The Fifth Amendment clause relates to the federal government.  However, the same analysis is used by the courts under both the Fourteenth and Fifth Amendments.  <u>Aggarwal</u>, 951 F.Supp. at 649 fn. 9, <u>citing</u> <u>Bolling v. Sharpe</u>, 347 U.S. 497 (1954).

GOV. SUPPLENTAL APPENDIX    31

desire for it.  He must have more than a unilateral expectation of it.  He must, instead, have a legitimate claim of entitlement to it."  Id.

Chiang has no such legitimate claim of entitlement, just a desire and an expectation.  While Chiang had every right to apply for a visa, which he did, there is no guarantee that one will be issued.  See United States ex rel. Knauff v. Shaughnessy, 338 U.S. 537, 542 (1950) ("[A]n alien who seeks admission to this country may not do so under any claim of right."); De Avilia v. Civiletti, 643 F.2d 471, 477 (7th Cir.1981) ("Visa applicants have no vested right in the issuance of a visa.").  Because there is no guarantee of the issuance of a visa, and therefore no property interest, no due process protection has been implicated.  Aggarwal, 951 F.Supp. at 649.

**B.    Chiang's Fourth Amendment Bivens Claim Should be Dismissed**

Again, in Count II, Chiang does not state a claim that rises to the level of a Constitutional tort, nor does the Court have jurisdiction to review the claim due to consular non-reviewability.  Chiang alleges that "[t]he U.S. Consulate's unlawful seizure of [his] photographs and documents from his personal file . . . violated [his] Fourth Amendment rights."  Amended Complaint, at ¶25.

The Fourth Amendment of the U.S. Constitution provides "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  However, the Supreme Court has held that "a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties."  Smith v. Maryland, 442 U.S. 735, 743-744 (1979).

GOV. SUPPLENTAL APPENDIX    32

Chiang voluntarily conveyed the photographs and documents that he claims were seized by the Consulate. In Chiang's Amended Complaint and Jury Claim he states "[t]he photos and documents [were] <u>supplied</u> by Amy." Amended Complaint, ¶12. (emphasis added). Given that Amy "<u>supplied</u>" the documents and photos to the Consulate, Chiang cannot then judge that the Consulate "did not need . . . the photos and documents to perform their duties." <u>Id</u>.

It is not Chiang's right to determine the way the consular officials are to conduct their inquiries. Indeed, consular officers are instructed to retain documents supplied by visa applicants when refusal is contemplated. 22 C.F.R. § 41.121(b) states that "the consular officer shall retain the original of each document upon which the refusal was based, as well as each document indicating a possible ground of ineligibility." As the documents were voluntarily conveyed both to Amy and to the Consulate, there can be no expectation of privacy, and thereby no cognizable Fourth Amendment claim.[6]

In summary, Chiang has made a thinly veiled attempt to have the Court review the consulate's decision to deny Amy's visa application. However, the Court has no jurisdiction to do so under the doctrine of consular non-reviewability. Additionally, the <u>Bivens</u> claims that Chiang sets out to establish both fail because they do not meet the level of a judicially cognizable Constitutional tort.

---

[6]    To the extent Chiang claims damages as a result of the negligence of Government officials acting within the scope of their employment in Counts I and II or other part of his Amended Complaint, he has failed to follow the mandatory administrative process set forth in the Federal Tort Claims Act, 28 U.S.C. §§ 1346, 2675, 2679. ("FTCA"), and, as this Court has previously ruled, there is no jurisdiction to hear those claims. Memorandum and Order at 9–10. Specifically, section 2675 of the FTCA bars any action in this Court for damages for injury or loss of property caused by the negligence or wrongful act or omission of any employee of the Government while acting within the scope of their employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and the claim has been denied by the agency. 28 U.S.C. § 2675. The Government is not aware of any such claim or claims having been filed by Chiang.

GOV. SUPPLENTAL APPENDIX    33

## IV.    Chiang has not Exhausted his Administrative Remedies which is a Jurisdictional Bar to This Court hearing his Claim and Renders his Claim One for which Relief Cannot be Granted

Chiang has failed to exhaust his administrative remedies with respect to Amy's visa application.  Therefore, this Court lacks jurisdiction to hear Chiang's case.  The governing USCIS regulation clearly states that  "[c]ertain unfavorable decisions on applications, petitions, and other types of cases may be appealed.  8 C.F.R. § 103.3(a)(1)(ii).  If the appeal is dismissed "[n]o further administrative appeal shall lie from this decision, nor may the petition be filed or reopened before an immigration judge or the Board of Immigration Appeals during exclusion or deportation proceedings."  8 C.F.R. § 103.3(a)(4)(iii).

In this case the consular officer has returned Amy's visa petition to USCIS for review and possible revocation.  Gorsky Declaration at ¶ 2; Chiang's Motion for TRO at Exhibit D.  The USCIS has not yet reviewed the petition.  If the USCIS determines that revocation is called for, a Notice of Intent to Revoke the Approved petition will be issued to Chiang, and he will be allowed an opportunity to address any identified deficiencies in the application. 8 C.F.R. § 103.3. The USCIS regulations lay out the administrative steps that Chiang may take should he wish to appeal. Id.  Such steps have yet to be taken and this Court lacks jurisdiction to hear Chiang's claims in this respect.  Other Courts have held similarly on a petition for naturalization, stating "[i]f CIS denies a naturalization petition, the applicant may then seek an internal review by requesting a hearing before an immigration officer . . . If, after the hearing, the denial of the petition is affirmed, the applicant may then seek judicial review in the district court."  Khitab v. Novak, 524 F.Supp.2d 105, 106 (D.Mass. 2007).

GOV. SUPPLENTAL APPENDIX    34

Failure to exhaust administrative remedies and lack of jurisdiction over non-final administrative actions are foundational for determining a court's jurisdiction.  The Supreme Court held that "[t]he finality requirement is concerned with whether the initial decisionmaker has arrived at a definitive position on the issue that inflicts an actual, concrete injury."  Darby v. Cisneros, 509 U.S. 137, 144 (1993) (quoting Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnson City, 473 U.S. 172, 193(1985)).  Additionally, there are issues of judicial economy and of allowing the agency to make a through decision.  The Ninth Circuit, on this issue, held that:

> Having two government bodies simultaneously review an agency action wastes scarce governmental resources.  Further simultaneous review poses the possibility that an agency authority and court would issue conflicting rulings.  Allowing judicial review in the middle of the agency review process unjustifiably interferes with the agency's right to consider and possibly change its position during its administrative proceedings.  An appeal to a higher agency authority may also obviate the need for judicial review.

Acura v. Reich, 90 F. 3d 1403, 1408-1409 (9th Cir. 1996).

Because Chiang has failed to exhaust his administrative remedies, and he has acknowledged as much (see Amended Complaint, at ¶35), this Court lacks jurisdiction to hear his claims, and they should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

**V.      Chiang's Other Claims Fail Because they are Dependant upon Counts I and II and the Failure to Exhaust Administrative Remedies**

As a consequence of the defects in Chiang's Bivens claims and the failure to exhaust administrative remedies, Counts III, IV, V, VI, and VII of Chiang's Amended Complaint are also insufficient and should be dismissed.   Count III is simply inapplicable as Chiang has failed to overcome the burden of presenting a justiciable claim.  Count IV fails because Chiang has not been deprived any right to marriage.  In fact, by his own admission he has already married Amy.  See Chiang's Motion for TRO at 1; fn 2 ("Chiang married his fiancée in China.  This marriage is

honored by the Chinese people."); Exhibit B, ¶ 5; and Exhibit C, ¶ 3.  Counts V, VI and VII fail as

a result of the Court not having jurisdiction to hear the claims.[7]

<div align="center">**Conclusion**</div>

Based on the foregoing, Chiang's Amended Complaint should be dismissed for lack of

subject matter jurisdiction and for failure to state a claim upon which relief can be granted.

<div align="center">

Respectfully submitted,

LYNNE SKEIRIK, DIRECTOR OF
THE NATIONAL VISA CENTER, *et al.*,

MICHAEL J. SULLIVAN
United States Attorney

</div>

By:    /s/ Anton P. Giedt    2/15/2008
Anton P. Giedt
Assistant U.S. Attorneys
1 Courthouse Way
Boston, MA 02210
617-748-3309 (Voice)
617-748-3967 (Fax)
anton.giedt@usdoj.gov

<div align="center">**LOCAL RULE 7.1(A)(2) CERTIFICATION**</div>

Undersigned counsel certifies that pursuant to the requirements under Local Rule 7.1(A)(2), that he has previously attempted to confer with the plaintiff when he was acting *pro se*, and with plaintiff's current counsel on the issues raised in this action and addressed in this motion in an attempt to resolve these issues without success.

---

[7]    Relative to the allegation of delay, see Voranstova v. Chertoff, No. 07-10426-RGS, 2007 U.S. Dist. LEXIS 81522, 2007 WL 3238026 (D. Mass. November 2, 2007) (finding that a delay of 21 months for the adjudication of an immigration adjustment of status application (green card application) was not so extremely outrageous as to warrant the granting of the extraordinary relief of mandamus).  See also Memorandum and Order, at 12, in denying Chiang's motion for TRO on grounds of no likelihood of success on the merits, the Court stated that "[b]ecause the Consulate denied the visa a little over one year after Amy applied, a decision was made within a reasonable time."  With respect to the USCIS review of the returned application, Chiang was informed that it could take several months.

GOV. SUPPLENTAL APPENDIX    36

/s/Anton P. Giedt   2/15/2008
Anton P. Giedt
Assistant U.S. Attorney

## CERTIFICATE OF SERVICE

I, Anton P. Giedt, Assistant U.S. Attorney, hereby certify that on this date I have served a copy of the foregoing upon the plaintiff's counsel of record by electronic filing.

/s/Anton P. Giedt   2/15/2008
Anton P. Giedt
Assistant U.S. Attorney

GOV. SUPPLENTAL APPENDIX   37

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

Wen Y. Chiang,

        Plaintiff,

        v.    **Civil Action No. 07-10451-NMG**

LYNNE SKEIRIK, DIRECTOR OF THE
NATIONAL VISA CENTER, *et al.*,

        Defendants.

## DEFENDANTS' OPPOSITION
## TO PLAINTIFF'S MOTION FOR INJUNCTIVE RELIEF

Federal Defendants ("Defendants" or "Government") oppose the Plaintiff's ("Chiang") motion for preliminary injunctive relief ("PI")[1] seeking to compel the US Citizenship and Immigration Service ("CIS") and the U.S. Department of State Consulate in China ("Consulate" or "DOS") to issue a K-1 finacee visa to Wen Hua Zhang (referred to by Chiang as "Amy") on or before June 22, 2008.  Docket Nos. 42 and 43.  As explained below, Plaintiff's PI should be denied.

Chiang has no likelihood of success on the merits because, *inter alia*, (1) the Court has already ruled that it lacks jurisdiction to review the substance of the Consulate's decision to deny Amy a fiancee visa (Docket No. 26, Order and Memorandum ("Order"), at 5–8), (2) there is no merit to Chiang's challenge to CIS's recent decision to deny his I-129F petition, and (3) Chiang has failed to exhaust his administrative remedies.  Because there is no jurisdiction to review this

---

[1]     Plaintiff originally filed a motion for temporary restraining order ("TRO") (Docket No. 42).  By electronic order of May 19, 2008, the Court denied the TRO and treated the motion as one for a preliminary injunction ("PI"), and providing the government ten days to respond to the PI.

matter, there is no harm irreparable or otherwise, that can be addressed by the Court.

Accordingly, the PI motion should be denied and the matter should be dismissed.

## **BACKGROUND**

1.    On September 7, 2006, Chiang filed a petition with the CIS to have his fiancée, Wen Hua Zhang ("Amy"), classified as a nonimmigrant under 8 U.S.C. 1101(a)(15)(K)(I), as an alien who seeks to enter the United States to conclude a valid marriage within 90 days.  Docket No. 23, Defendants' Opposition to Motion for TRO, at Exhibit A, Declaration of Rachel Ann Peterson, U.S. Department of State, August 2, 2007 ("Peterson Declaration"), at ¶ 3.[2]

2.    On October 23, 2006, the CIS mailed Chiang a notice that the CIS had approved the I-129F, Petition for Fiancée.  Docket No. 23, Defendants' Opposition to Motion for TRO, at Exhibit B.

3.    As the beneficiary of a fiancée petition, Amy was subject to a routine namecheck as required in Volume 9 of the U.S. Department of State Foreign Affairs Manual ("FAM"), 9 FAM 42.62 PN3.1.  Pursuant to 9 FAM 42.62 PN3.1,[3] an applicant's petition for Immigrant Visa and Alien Registration can not be processed before the namecheck is completed. Peterson Declaration, at ¶ 4.

4.    On March 3, 2007, the NVC sent Amy's case to the U.S. Consulate in Guangzhou, China. Peterson Declaration, at ¶ 5.

---

[2]    See Dynamic Image Technologies, Inc. v. United States, 221 F.3d 34, 37-38 (1st Cir. 2000) (in considering a Rule 12(b)(1) motion, "[t]he court . . . may consider extrinsic materials, and, to the extent it engages in jurisdictional factfinding, is free to test the truthfulness of the plaintiff's allegations.").

[3]    Foreign Affairs Manual; 9 FAM – "Visas" available at:
http://foia.state.gov/regs/fams.asp?level=2&id=10&fam=0

GOV. SUPPLENTAL APPENDIX    39

5.    The required namecheck for Amy was completed on April 24, 2007. Peterson Declaration, at ¶ 6.

6.    According to Chiang, Amy and a witness, Chiang and Amy were married in China in April 2007. Docket No. 20 ("Chiang's Motion for TRO") at 1; n 2 ("Chiang married his fiancée in China. This marriage is honored by the Chinese people."); Exhibit B (Chiang's affidavit), ¶ 5; Exhibit C (Amy's affidavit), ¶ 3; Exhibit E (witness affidavit), ¶ 4.

7.    On April 30, 2007, the U. S. Consulate in Guangzhou, China sent Amy the appropriate applications to submit, including an Application for Immigrant Visa and Alien Registration (Form DS-230), as required pursuant to 9 FAM 41.81 PN 3.2 and 22 C.F.R. § 41.81. Peterson Declaration, at ¶ 7; see also DOS, Guangzhou, China, Visas to the United States, Application Procedures, at  http://guangzhou.usembassy-china.org.cn/iv_k1/k2.htm.

8.    The U. S. Consulate in Guangzhou, China received Amy's Form DS-230 on July 13, 2007. Peterson Declaration, ¶ 8.

9.    Pursuant to the requirements of 9 FAM 42.63 PN5.1-1(e), 9 FAM 41.81 N3.4 and 22 C.F.R. § 42.62, an interview was scheduled for Amy at the U. S. Consulate, Guangzhou, China, on September 25, 2007. See Chiang's Motion for TRO, Docket No. 20, at Exhibit A; Docket No. 23, Defendants' Opposition to Motion for TRO, Peterson Declaration at ¶ 9, and at Exhibit C, Declaration of Jeffrey Gorsky, U.S. Department of State, October 3, 2007 ("Gorsky Declaration"), at ¶ 2; see also DOS, Guangzhou, China, Application Procedures, at http://guangzhou.usembassy-china.org.cn/iv_k1/k2.htm; DOS, Guangzhou, China, Application Procedures, Interview, at http://guangzhou.usembassy-china.org.cn/iv_interview.htm (strongly advising beneficiaries not to make irreversible commitments or plans until a visa is issued).

3

GOV. SUPPLENTAL APPENDIX    40

10. A consular officer conducted the interview with only Amy present in accordance with DOS discretion and adjudicated Amy's nonimmigrant visa application after the interview was completed.  22 C.F.R. § 41.81; Gorsky Declaration at ¶ 2; see also  DOS Visas to the United States, Guangzhou, China, Frequently Asked Questions, No. 31 at http://guangzhou.usembassy-china.org.cn/iv_faqs.htm#31 (Petitioners are not allowed to attend the interview except in rare exceptions) and No. 36 (outside of the initial interview, Consulate officers are not allowed to discuss individual cases).

11. Based on the interview, documents and other evidence, the consular officer determined that Amy and Chiang's relationship was not bona fide and therefore denied the visa petition, and returned the case to the CIS for review and possible revocation.  Gorsky Declaration at ¶ 2; Chiang's Motion for TRO, Docket No. 20,  at Exhibit D; see also DOS Visas to the United States, Guangzhou, China, Application Procedures, Visa Refusals, at http://guangzhou.usembassy-china.org.cn/visa_refusals.htm.

12. On December 4, 2007, this Court issued a Memorandum and Order (Docket No.26) dismissing all of Chiang's claims except those claims that the Court construed as possible Constitutional claims in the context of the application process (Id. at 10 and 15).  With respect to the denial of Amy's visa application the Court adhered to the doctrine of consular non-reviewability and found that it had no jurisdiction to second guess the Consulate's decision.  Id., at 5–8, 10, 12, 15.   The Court granted the Government's Motion to Dismiss a negligence claim for the acts or omissions of  Consulate officers acting within the scope of their employment.  Id.,  Although the Court did not dismiss potential Constitutional claims in the context of the application process, the Court did

4

deny Chiang's several motions for injunctive relief on the grounds that there was no likelihood of success on the merits because the claims were vague and speculative, appeared to affect Amy and not Chiang, and did not rise to the level of due process violations. Id., at 10–14. Finally, the Court directed Chiang to file an amended complaint restating any justiciable claims not dismissed in the Memorandum and Order. Id. at 15.

14.   On January 18, 2008, Chiang filed his amended complaint alleging five counts constitutional violations. Docket No. 27. On February 15, 2008, the Government filed s Motion to Dismiss the amended complaint for lack of jurisdiction and failure to state a claim upon which relief may be granted. Docket Nos. 29 and 30. On April 11, 2008, the Court referred the matter to the Honorable Judith G. Dein, Magistrate Judge, for a Report and Recommendation. Docket No. 33. On May 12, 2008, the Magistrate Judge held a hearing on the Government's Motion to Dismiss and took the matter under advisement.

15.   On May 9, 2008, the Government filed a Notice of Agency Action reporting that CIS had denied Chiang's I-129F petition on the grounds that because of his representations in this action of marriage to Amy in China after the filing of his I-129F petition, but before the Consulate interview, he had failed to establish eligibility for the benefits sought in the I-129F petition. Docket No. 39. Chiang may administratively appeal the denial within CIS. Id.

16.   On May 15, 2008, Chiang filed a motion for injunctive relief (Docket Nos. 42 and 43) to which the Government now responds.

## ARGUMENT OPPOSING PRELIMINARY INJUNCTIVE RELIEF

The standards for evaluating the appropriateness of granting a PI or temporary restraining order are nearly identical, a district court weighs four factors: (1) the plaintiff's likelihood of success on the merits; (2) the potential for irreparable harm in the absence of an injunction; (3) whether issuing an injunction will burden the defendants less than denying an injunction would burden the plaintiffs; and (4) the effect, if any, on the public interest.  United States v. Weikert, 2007 U.S. App. LEXIS 18845 at 9 (1st Cir., 2007).  See also Bl(a)ck Tea Soc'y v. City of Boston, 378 F.3d 8, 11 (1st Cir. 2004) (order denying preliminary injunction against security barriers at the 2004 Democratic National Convention affirmed even though plaintiff could show some likelihood to succeed on the merits, because the potential for irreparable harm, the burden upon defendants and the effect upon public interest all weighed against granting the preliminary injunction).  In making this determination, "the most important element of the preliminary injunction assessment [is whether or not] the moving party can[] demonstrate that he is likely to succeed [on the merits]."  Weikert, 2007 U.S. App. LEXIS 18845 at 9-10 & 46-47.  (internal quotations omitted) (order granting preliminary injunction was reversed because the plaintiff was unable to show a likelihood of success on his claim of a 4th Amendment violation; court did not need o evaluate other elements).

Absent a showing of likelihood of success on the merits, the other elements become a matter of "idle curiosity" and the preliminary injunction should not be granted.  Id.  See also New Comm Wireless Servs., Inc. v. SprintCom, Inc., 287 F.3d 1, 9 & 14 (1st Cir. 2002) (order for preliminary injunction vacated based solely upon a lack of showing that plaintiff would succeed on the merits because plaintiff made insufficient showing of the elements of tortuous

GOV. SUPPLENTAL APPENDIX    43

interference or lack of good faith required under contract theory; appellate court did not review the other three elements for granting a preliminary injunction).

A court may also deny an order for a preliminary injunction absent a showing of irreparable harm without needing to evaluate the other elements.  Charlesbank Equity Fund II, Ltd. P'ship v. Blinds To Go, Inc., 370 F.3d 151, 162-163 (1st Cir. 2004).  (order granting a preliminary injunction was affirmed where moving party was unable to show that unjust enrichment and a total loss of an investment would constitute irreparable harm).  Also "[i]n most cases … irreparable harm constitutes a necessary threshold showing for an award of preliminary injunctive relief." Id. at 162.  The burden for proving irreparable harm lies with the party seeking a preliminary injunction.  Id.  A finding of irreparable harm may exist if there is no adequate remedy at law.  Id.  However, "finding of irreparable harm must be grounded on something more than conjecture, surmise, or a party's unsubstantiated fears of what the future may have in store."  Id.  See also In re Rare Coin Galleries, Inc., 862 F.2d 896, 902 (1st Cir. 1988) (order granting a preliminary injunction was reversed where moving party's speculation that actions of insurance carrier would lead to inflation or imposition of unreasonable fees was insufficient to show irreparable harm).

## No Likelihood of Success on the Merits

As an initial matter, Chiang's latest motion for injunctive relief (Docket Nos. 42 and 43) continues to attempt to (1) challenge the underlying decision of the Consulate's denial of Amy's visa, which this Court has found it does not have jurisdiction to review, and (2) re-assert other allegations that the Court addressed or dismissed in its Memorandum and Order of December 4, 2007 (Docket No. 26).

GOV. SUPPLENTAL APPENDIX    44

Although Chiang states that he is not challenging the Consulate's adverse decision (Docket No 43, at 7), he continues to seek injunctive relief from the Court to overturn that decision based on his vague and speculative allegations that the Consulate wrongfully denied the visa because he engaged in this action (Docket No. 43, at 6), that Amy submitted ample documentation for the Consulate to issue the visa (Id., at 7 and 8), and that the Consulate was wrong in interpreting his prior finacee visa applications (Id.). In its Memorandum and Order the Court adhered to the doctrine of consular non-reviewability and found that it had no jurisdiction to second guess the Consulate's decision. Docket No. 26, at 5–8, 10, 12, 15. Thus, on this element Chiang has failed to demonstrate a likelihood of success.

Similarly, Chiang alleges injury, irreparable harm and damages based on timing delays in the visa process (Docket No. 43, at 7),[4] and a variety of alleged constitutional violations (Id., at 5–8). As with the element of Consular non-reviewability, the Court addressed these issue and concluded that there was no likelihood of success on the merits because the claims were vague and speculative, appeared to affect Amy and not Chiang, and did not rise to the level of due process violations. Docket 26, at 10–14. Chiang's amended complaint (Docket No. 27) and his most recent PI (Docket No. 43) do not add any clarity to these issues and the Court's initial

---

[4]    On timing, the Court found that the Consulate's decision on the visa was made within a reasonable time. Docket No. 26, at 12. Further, CIS has recently made a decision on the underlying I-129F petition. Docket No. 39. See also Voranstova v. Chertoff, No. 07-10426-RGS, 2007 U.S. Dist. LEXIS 81522, 2007 WL 3238026 (D. Mass. November 2, 2007) (finding that a delay of 21 months for the adjudication of an immigration adjustment of status application (green card application) was not so extremely outrageous as to warrant the granting of the extraordinary relief of mandamus); Sharif v. Chertoff, 497 F.Supp.2d 928, 933 (N.D. Ill. 2007) (finding no jurisdiction to alter the pace in which the government processes a fiancee visa petition and noting that an 18 month pendency of the petition was not unreasonable).

conclusions should stand.  See Government's Motion to Dismiss Amended Complaint, Docket Nos. 29 and 30.

With respect to Chiang's allegation of irreparable harm associated with an unborn child (Docket No. 43, at 6–8), it should be noted that the circumstances that form the basis for the alleged harm arose entirely after Chiang was aware of the Consulate's decision denying Amy's visa in September of 2007, and with full knowledge that there was no guarantee of any immigration benefit for Amy.  See INS v. Pangilinan, 486 U.S. 875 (1988) (An individual seeking political rights as a citizen of the United States "can rightfully obtain them only upon terms and conditions specified by Congress."); see also United States ex rel. Knauff v. Shaughnessy, 338 U.S. 537, 542 (1950) ("[A]n alien who seeks admission to this country may not do so under any claim of right."); De Avila v. Civiletti, 643 F.2d 471, 477 (7th Cir.1981) ("Visa applicants have no vested right in the issuance of a visa.").  Also, the Consulate is very clear about advising applicants not to make irreversible commitments or plans until a visa is issued.  See DOS, Guangzhou, China, Application Procedures, Interview, at http://guangzhou.usembassy-china.org.cn/iv_interview.htm.  As a U.S. citizen Chiang remains free to work and travel – including the right to be with his family even if it imposes some hardship due to other circumstances.  Thus, Chiang's allegations with respect to irreparable harm ring hollow and should not be entertained by the Court.[5]

---

[5]    Also, Chiang's assertions that the effort to establish his marriage in China are too time consuming and cumbersome appear to be somewhat exaggerated.  The consulate has a helpful guide on how to get married in China. It is a short affidavit that can be printed out, filled in and for a fee of $30 notarized at the consulate. See http://guangzhou.usembassy-china.org.cn/information_about_getting_married_in_china.html

GOV. SUPPLENTAL APPENDIX    46

The gravamen of Chiang's PI is that CIS's recent denial of Chiang's I-129F petition (Docket No. 39, Exhibit A) is based on an erroneous interpretation that his traditional family marriage to Amy in China in April of 2007, is a valid legal marriage and that the decision should be vacated because it is contradictory to the position the Board of Immigration Appeals ("BIA") has taken in the asylum refugee context, wherein the BIA has stated that an official government recognized marriage is required in order for refugee status to be considered for the spouse of a person subject to forced abortion or persecution in China. Docket Nos. 42 and 43, at 9–11, Exhibit B. The argument is unfounded for several reasons.

First, the authority cited to, and as acknowledged by Chiang, is restricted to the asylum and refugee context, involves a completely different section of the Immigration and Nationality Act ("INA") and is entirely distinguishable from the sections of the INA governing I-129F fiancee petitions. Specifically, the BIA authority cited by Chiang requires "that an applicant have entered into a legally recognized marriage in order to be considered a spouse." In re S-L-L-, 24 I. & N. Dec. 1, 12 (BIA 2006). In contrast, and as more fully described below, the issue before CIS with respect to the decision in this action is not whether a spousal relationship exists, but whether the petitioner has demonstrated a bona fide intention to marry in the United States within 90 days of admission.

Second, the U.S. Attorney General ("AG") just recently issued a decision eliminating the consideration of marriage in the context of considering the extension of refugee status to spouses of persons subject to forced abortion or persecution in China. In re J-S-, 24 I. & N. Dec. 520 (A.G. 2008); 2008 WL 216992. Under the AG's ruling the Government's position is that only the person subject to the forced abortion or persecution is eligible for refugee status. Id. Thus, even though not applicable to the instant case, the position of considering the validity of a

10

marriage is now moot and a nullity since marriage status will not be considered in evaluating refugee petitions.

Third, and more directly, CIS's denial of Chiang's I-129F petition based on his representations that he married Amy in China prior to the Consulate interview, does not validate the argument that a traditional marriage suffices as proof of an official or legal marriage for purposes of denial of an I-129F petition (or for the granting of an I-130 spouse petition); but instead reflects a determination that the petitioner has failed to meet the burden of establishing eligibility for the benefits sought – unmarried with the intent to conclude a valid marriage within 90 days after admission to the United States. By regulation and case law, an individual must submit specific types of evidence to establish a spousal relationship for immigration purposes, including a certificate of marriage issued by civil authorities. 8 C.F.R. § 204.2(a)(2) (an I-130 petition). In the context of the fiancée petition (an I-129F petition), however, the lack of such formal evidence of a spousal relations does not compel the conclusion that the alien is unmarried.

Under section 1101(a)(15)(K)(I) of the INA, the term immigrant means every alien except an alien who is within the following classes of nonimmigrant aliens — ". . .an immigrant who – (I) is the finacee or fiancé of a citizen of the United States and who seeks to enter the United States solely to conclude a valid marriage with the petitioner within 90 days after admission . . ." 8 U.S.C. § 1101(a)(15)(K)(I). Further, section 1184(d)(1) of the INA states that a visa shall be approved only if the petitioner and the beneficiary have a bona fide intention to marry and are legally able and actually willing to conclude a valid marriage within the United States . . ." 8 U.S.C. § 1184(d)(1). The affidavits and representations in Chiang's pleadings clearly put into question the intent and eligibility elements of the I-129F fiancee petition since it

GOV. SUPPLENTAL APPENDIX   48

appears that they in fact were married.  See Docket No. 20 ("Chiang's Motion for TRO") at 1; fn 2 ("Chiang married his fiancée in China.  This marriage is honored by the Chinese people."); Exhibit B (Chiang's affidavit), ¶ 5; Exhibit C (Amy's affidavit), ¶ 3; Exhibit E (witness affidavit), ¶ 4.; see also Docket No. 26, Memorandum and Order,  at 13 ("First, although the marriage ceremony may not have been legally valid, Chiang described the ceremony as a marriage and Amy presented photographs of the event to the Consulate official, indicating that she and Chiang were then married."); Matter of Souza, 14 I. & N. Dec. 1 (Reg. Comm. 1972).  Accordingly, this raised legitimate concerns at CIS and the petition was appropriately denied, not necessarily because of the marriage, but because Chiang had not met his burden of establishing the necessary eligibility for the benefits sought.  Docket No. 39, Exhibit A.

Contrary to Chiang's assertion, it is well established under the INA and in BIA decisions that the burden of proving eligibility for an immigration benefit remains entirely with the applicant, not with CIS.  See 8 U.S.C. § 1361; Matter of Brantigan, 11 I. & N. Dec. 493 (BIA 1966).  In the instant case Chiang's representations cast significant doubt on his eligibility for the benefits he has sought and the burden still remains with him to establish eligibility.  Chiang will be afforded that opportunity through the appeal of the CIS decision to the Administrative Appeals Office of CIS.  Docket No. 39, at Exhibit A, 2.  Accordingly, there is no inconsistency in the determination made by the CIS, and there is no justification for court intervention, injunctive or otherwise.

Finally, Chiang must exhaust his administrative remedies with respect to CIS's denial of his I-129F petition.  Therefore, this Court lacks jurisdiction to entertain his PI motion.  The governing CIS regulation clearly states that  "[c]ertain unfavorable decisions on applications, petitions, and other types of cases may be appealed."  8 C.F.R. § 103.3(a)(1)(ii). If the appeal is dismissed "[n]o further administrative appeal shall lie from this decision, nor may the petition be

filed or reopened before an immigration judge or the Board of Immigration Appeals during exclusion or deportation proceedings."  8 C.F.R. § 103.3(a)(4)(iii).

Such steps have yet to be taken by Chiang and this Court lacks jurisdiction to hear Chiang's claims in this respect.  Other Courts have held similarly on a petition for naturalization, stating "[i]f CIS denies a naturalization petition, the applicant may then seek an internal review by requesting a hearing before an immigration officer . . . If, after the hearing, the denial of the petition is affirmed, the applicant may then seek judicial review in the district court."  Khitab v. Novak, 524 F.Supp.2d 105, 106 (D.Mass. 2007).  In the Northern District of Illinois in a case involving the adjudication of an I-129F fiancee petition in a posture nearly identical to Chiang's at the outset of the litigation, the court ruled that under section 1252(a)(2)(B)(ii) of the INA ( 8 U.S.C. § 1252(a)(2)(B)(ii)) that it was entirely without "jurisdiction to pass on the discretionary decisions of the Attorney General regarding immigration, including decisions regarding whether to approve a Fiancee Petition.  There is thus no question that the court is without jurisdiction to review whatever decision CIS ultimately makes regarding [petitioner's fiancee] Petition."  Sharif v. Chertoff, 497 F.Supp.2d 928, 931 (N.D. Ill. 2007).

Failure to exhaust administrative remedies and lack of jurisdiction over non-final administrative actions are foundational for determining a court's jurisdiction.  The Supreme Court held that "[t]he finality requirement is concerned with whether the initial decisionmaker has arrived at a definitive position on the issue that inflicts an actual, concrete injury."  Darby v. Cisneros, 509 U.S. 137, 144 (1993) (quoting Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnson City, 473 U.S. 172, 193(1985)).  Additionally, there are issues of judicial economy and of allowing the agency to make a through decision.  Acura v. Reich, 90 F. 3d 1403, 1408-1409 (9th Cir. 1996).  Because Chiang has failed to exhaust his administrative

GOV. SUPPLENTAL APPENDIX    50

remedies this Court lacks jurisdiction to hear his claims, and his PI motion should be denied.

<div align="center"><u>CONCLUSION</u></div>

Based on the foregoing, Chiang has no likelihood of success on the merits and thus the Court need not reach the other elements for injunctive relief. The Court should deny the PI motion and dismiss this action. <u>United States v. Weikert</u>, 2007 U.S. App. LEXIS 18845 at 9 (1st Cir., 2007); <u>New Comm Wireless Servs., Inc. v. SprintCom, Inc.</u>, 287 F.3d 1, 9 & 14 (1st Cir. 2002).

Respectfully submitted,

UNITED STATES OF AMERICA

LYNNE SKEIRIK, DIRECTOR OF
THE NATIONAL VISA CENTER, *et al.*,

MICHAEL J. SULLIVAN
United States Attorney

By:    <u>/s/ Anton P. Giedt   5/29/2008</u>
Anton P. Giedt
Assistant U.S. Attorneys
1 Courthouse Way
Boston, MA 02210
617-748-3309 (Voice)
617-748-3967 (Fax)
anton.giedt@usdoj.gov

<div align="center">**CERTIFICATE OF SERVICE**</div>

Suffolk, ss.                                                    Boston, Massachusetts
                                                               DATE: May 29, 2008

I, Anton P. Giedt, Assistant U.S. Attorney, do hereby certify that I have this day served a copy of the foregoing upon counsel of record by electronic filing.

<u>/s/ Anton P. Giedt</u>
Anton P. Giedt
Assistant U.S. Attorney

<div align="center">14</div>

GOV. SUPPLENTAL APPENDIX    51

UNITED STATE COURT OF APPEALS
FOR THE FIRST CIRCUIT

WEN Y. CHAING,                        )
        Plaintiff-Appellant          )
                                      )
v.                                    )          Appeal No. 08-1909
                                      )
LYNN SKEIRIK, et al.,                 )
        Defendants-Appellees          )
                                      )

### PLAINTIFF-APPELLANT'S MOTION TO DISMISS APPEAL

Plaintiff-Appellant, Wen Y. Chiang ("Chiang") hereby moves the Court to allow

him to dismiss his appeal of the denial of his motion for a preliminary injunction for the

reasons stated in the Court's order dated September 3, 2008

WHEREFORE, Chiang respectfully requests that the Court allow him to dismiss

this appeal.

Respectfully submitted,

WEN Y. CHIANG

By his Attorney,

DEAN CARNAHAN (#103246)
LAW OFFICES OF DEAN CARNAHAN
51 Newcomb Street
Arlington, MA 02474
Tel.: (781) 641-2825
Fax: (781) 316-2558

Date: September 22, 2008

GOV. SUPPLENTAL APPENDIX    52

<u>CERTIFICATE OF SERVICE</u>

I, Dean Carnahan, hereby certify that on this day I served this pleading on defendants by mailing a copy thereof, postage prepaid, to Anton Geidt, Asst. U.S. Attorney, 1 Courthouse Way, Boston, MA 02110

Date:  September 22, 2008

DEAN CARNAHAN

B-2360-JM

2

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

WEN Y. CHIANG,

    Plaintiff,

    v.

LYNN SKYREICH, *et al.*,

    Defendants.

**Civil Action No.  07-civ-10451-NMG**

## NOTICE OF AGENCY ACTION

This Notice serves to inform the Court of recent agency action on the Plaintiff's Form I-129F, or K-1 Visa petition (Petition for Alien Finace(e) to enter the United States solely to conclude a valid marriage (8 U.S.C. § 1101(a)(15)(K)(I)).  The Petition for Alien Fiance(e) is the immigration petition that forms the basis for the proceedings being challenged by the Plaintiff in this action.  On May 1, 2008, the United States Citizenship and Immigration Service ("USCIS") denied the Plaintiff's I-129F, Petition for Alien Finace(e).  Exhibit A.  The petition was denied because after the petition was filed, but before the Department of State consular officer in China conducted the mandatory interview of the Plaintiff's beneficiary, the Plaintiff and his beneficiary were married in China.  See Exhibit A.  As a consequence, USCIS has determined that the Plaintiff and his beneficiary are no longer eligible for an Alien Fiance(e) visa.  Id.; see also Docket No. 26 at 7–8; see generally 8 U.S.C. § 1184(d) (fiance(e) visa applications); 8 U.S.C. § 1184( r ) (alien spouse visa applications).

The Plaintiff now has 33 days from May 1, 2008, to administratively appeal the USCIS's

decision to the Administrative Appeals Office of the USCIS. See Exhibit A, at 2.

Respectfully submitted,

UNITED STATES OF AMERICA

MICHAEL J. SULLIVAN
United States Attorney

By:    /s/ Anton P. Giedt    5/9/2008
Anton P. Giedt
Assistant U.S. Attorney
1 Courthouse Way
Boston, MA 02210
617-748-3309 (Voice)
617-748-3967 (Fax)
anton.giedt@usdoj.gov

**CERTIFICATE OF SERVICE**

Suffolk, ss.                                                                       Boston, Massachusetts
                                                                                  DATE:  May 9, 2008

   I, Anton P. Giedt, Assistant U.S. Attorney, do hereby certify that I have this day served a copy of the foregoing upon the
Plaintiff's counsel of record through electronic filing.

                                                                /s/ Anton P. Giedt
                                                                Anton P. Giedt
                                                                Assistant U.S. Attorney

2

GOV. SUPPLENTAL APPENDIX    55

U.S. Department of Homeland Security
75 Lower Welden Street
St. Albans, VT 05479



**U.S. Citizenship
and Immigration
Services**

May 01, 2008

WEN YIH CHIANG
12 POND LANE # 63 #63
ARLINGTON MA  02474

| | |
|---|---|
| A Number: | A094817232 |
| File Receipt Number: | EAC0625151063 |
| Applicant/Petitoner Name: | CHIANG, WEN YIH |
| Beneficiary: | ZHANG, WEN |

Dear Sir/Madam:

This petition, filed on September 7, 2006, seeks to classify the beneficiary as the Fiancée of a citizen of the United States under section 101(a)(15)(K) of the Immigration and Nationality Act (the Act).

Section 101(a)(15)(K) of the Act states in pertinent part:

> (K) an alien who is the fiancée or fiancé of a citizen of the United States and who seeks to enter the United States solely to conclude a valid marriage with the petitioner within ninety days of entry...

It was held in <u>Matter of Souza</u>, 14 I. & N. Dec. 1 (Reg. Comm. 1972) that both the petitioner and beneficiary must be unmarried and free to conclude a valid marriage at the time the petition is filed.

At the time the petition was filed, you and the beneficiary were unmarried. The record now indicates that you married the beneficiary in April of the year 2007, after your petition was filed. Therefore the beneficiary cannot be classified as your Fiancée for Immigration purposes.

The beneficiary's status had changed by the time she was interviewed at the Consulate. By your own admission you and "Amy", Wen Hua Zhang, were married in China in April of 2007, approximately seven (7) months after the filing of your I-129F, Petition for Alien Fiancé(e). In the affidavit of Paul S. Garigosian, Exhibit E of the Motion for Temporary Restraining Order, he states that he traveled to China with you in April 2007 to join with Amy's family, in a wedding ceremony and reception with her family. He also stood at your side, at the wedding, as a Justice of Peace for the ceremony.

In your July 26, 2007 affidavit certified as exhibit B of the Motion for Temporary Restraining Order, you have stated "in April, 2007 also went to Beneficiary home town married with beneficiary." In the affidavit identified as exhibit C of the Motion for Temporary Restraining Order, signed by the beneficiary, Wen Hua Zhang, she stated "I am the wife of Wen Yih Chiang. Wen and I decided to married in this past April 2007, at the time we also had Wedding reception for my family and Wen's friends, family from USA, and overseas."

Case: 08-2105 Document: 001-1598294B Page: 124 Date Filed: 04/15/2009

EXHIBIT A
Chiang v. POS-07-cv-10451-NMG
US-Notice of Agency Action
May 9, 2008

Case 1:07-cv-10451-NMG Document 38-2 Filed 05/09/2008 Page 2 of 2

Page 2 of 2

A094817232
EAC0625151063

In visa petition proceedings, the petitioner bears the burden of establishing eligibility for the benefits sought. See Matter of Brantigan, 11 I. & N. Dec. 493 (BIA 1966).

In view of the above, the petition is denied.

If you disagree with this decision, or if you have additional evidence you believe shows the decision to be in error, you may appeal this decision by filing a completed Form I-290B with the Vermont Service Center within 33 days from the date of this notice. A copy of Form I-290B, Notice of Appeal or Motion, is enclosed for your use. You may also include a brief or other written statement in support of your appeal. If an appeal is not filed within the time allowed, this decision is final. While the Administrative Appeals Office (AAO) will decide your appeal, it must be sent to the Vermont Service Center with a filing fee of $585.00 to the following address:

<div style="text-align:center">

Vermont Service Center
75 Lower Welden Street
St. Albans, VT 05479

</div>

For more information about the filing requirements for appeals, please see 8 CFR §103.3, visit the USCIS website at www.uscis.gov, or contact the automated Form Request Line by calling 1-800-870-3676.

FINAL NOTE: Title 8, Code of Federal Regulations, Section 265.1 states in pertinent part, "Except for those exempted by section 263(b) of the Act, all aliens in the United States required to register under section 262 of the Act shall report each change of address and new address within 10 days on Form AR-11."

Sincerely,

*Paul E. Novak Jr.*

Paul E. Novak Jr.
Center Director

ENCLOSURES: I290B

# LAW OFFICES OF DEAN CARNAHAN
## 51 NEWCOMB STREET, ARLINGTON, MA  02474

Telephone:  (781) 641-2825
Facsimile:  (781) 316-2558
E-mail:  ddcarnahan@rcn.com

October 6, 2008

Clerk's Office
United States Court of Appeals
  for the First Circuit
John Joseph Moakley U.S. Courthouse
1 Courthouse Way, Suite 2500
Boston, MA  02110

RE:  Wen Y. Chiang v. Lynn Skierik, et al.
       Docket No. 08-2105

Dear Sir/Ms.:

Enclosed please find Appearance Form, Transcript Report/Order Form and Docketing Statement.

Kindly docket and file same.

Thank you for your attention to this matter.

Very truly yours,

DEAN CARNAHAN

cc:  Anton P. Geidt, Asst. U.S. Attorney
      Settlement Counsel

GOV. SUPPLENTAL APPENDIX    58

UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT
(617) 748-9057
DOCKETING STATEMENT

Proposed Caption of Case:
No. 08 - 2105          Wen Y. Chiang
                    Plaintiff - Appellant
        Lynn Skewik, et al.,      v.
                    Defendants - Appellees

Type of Action

___✓___ Civil

_____ Criminal/Prisoner

_____ Cross Appeal

A. Timeliness of Appeal

  1. Date of entry of judgment or order appealed from  8/14/08

  2. Date this notice of appeal filed  8/18/08

     If cross appeal, date first notice of appeal filed

     _____

  3. Filing date of any post-judgment motion filed by any

     party which tolls time under Fed.R.App.P. 4(a)(4) and

     4(b) _____

  4. Date of entry of order deciding above post-judgment

     motion _____

  5. Filing date of any motion to extend time under

     Fed.R.App.P. 4(a)(5), 4(a)(6) or 4(b) _____

     Time extended to _____

B. Finality of Order of Judgment

  1. Is the order or judgment appealed from a final decision

     on the merits?        (Yes) No

  2. If no, is the order appealed from a collateral or

     interlocutory order reviewable under any exception to

     the finality rule?    Yes  No

GOV. SUPPLENTAL APPENDIX   59

If yes, explain

3. Did the district court order entry of judgment as to

fewer than all claims or all parties pursuant to

Fed.R.C.P. 54(b)?    Yes (No)

If yes, explain

C. Has this case previously been appealed?    (Yes)    No

If yes, give the case name, docket number and disposition of

each prior appeal.  Wen Y. Chiang v. Lynn Steivk, et al. No. 08-1909

(Appeal & denial & motion for preliminary injuct.) Dismissed

after District Cart entered full judgment

D. Are any related cases or cases raising related issues

pending in this Court, any district court of this circuit,

or the Supreme Court?    Yes    (No)

If yes, cite the case and the manner in which it is related

on a separate page. If abeyance or consolidation is

warranted, counsel must file a separate motion seeking such

relief.

E. Were there any in-court proceedings below?    (Yes)    No

Is a transcript necessary for this appeal?    Yes    (No)

If yes, is transcript already on file with district court?
                                              Yes    No

If transcript is not already on file, attach copy of

transcript order.

F. List each adverse party to the appeal. If no attorney, give

address and telephone number of the adverse party. Attach

additional page if necessary.

1. Adverse party  Lynn Skewik, el al. (all defendants - appellees)

   Attorney  Anton Geidt, Asst. U.S. Attorney

   Address  1 Courthouse Way

Boston, MA 02110

Telephone. (617) - 748 - 3967

2. Adverse party _____

   Attorney _____

   Address _____

   _____

   Telephone _____

3. Adverse party _____

   Attorney _____

   Address _____

   _____

   Telephone _____

G. List name(s) and address(es) of appellant(s) who filed this notice of appeal and appellant's counsel. Attach additional page if necessary.

   1. Appellant(s) name Wen Y. Chiang

   Address 12 Pond Lane, #63

   Arlington, MA 02474

   (617) 966 - 2228

   Telephone (617) 966 - 2228

   Attorney's name Dean Carnahan

   Firm Law Offices of Dean Carnahan

   Address 51 Newcomb St.

   Arlington, MA 02474

   Telephone (781) 641-2825

   2. Appellant(s) name _____

   Address _____

Telephone _____

Attorney's name _____

Firm _____

Address _____

_____

_____

Telephone _____

Will you be handling the appeal? (In criminal cases counsel

below will handle the appeal unless relieved by this court.)

Yes          No

Fed.R.App.P. 12(b) provides that each attorney who files a

notice of appeal must file with the clerk of the Court of

Appeals a statement naming each party represented on appeal

by that attorney. 1st Cir. R. 12.0 requires that statement in

the form of an appearance. Any counsel who filed a notice

of appeal must provide the requisite appearance to be

attached to this form.

Attorneys who are associated with the case, but not

actively representing a party on appeal, should NOT

file an appearance form.

A copy of this Docketing Statement must be served on all other

parties to the appeal, and in civil cases, Settlement Counsel,

Civil Appeals Management Program, 1 Courthouse Way, Suite 3440,

Boston, MA 02210, must be served as well.

# United States Court of Appeals

### FOR THE FIRST CIRCUIT

### APPEARANCE FORM
(Please type or print all answers)

No. 08-2105

Wen Y. Chiang
v.
Lynn Skeirk, et al.

## COUNSEL *MUST* COMPLETE & RETURN THIS APPEARANCE FORM IN ORDER TO FILE PLEADINGS IN THIS COURT.

Please review and complete the case caption form. If you represent a litigant who was a party below, *but who is not a party on appeal*, do not designate yourself as counsel for the appellant or the appellee.

The Clerk will enter my appearance as Counsel for the _____✓_____ appellant _____ appellee.

I do not represent a party to the appeal _____.

Wen Y. Chiang
_____
(Name of person or entity represented)

Name of Counsel: Dean Carnahan

Name of Firm: Law Offices of Dean Carnahan

Firm Address: 51 Newcomb Street

Arlington, MA 02474

Tel.: (781) 641-2825

Fax: (781) 316-2558

Signature

Court of Appeals Bar Number: 103246

Date: October 6, 2008

Has this case or any related case previously been on appeal?

Yes ✓

No _____

Court of Appeals No. 08-1909

Appearances should be signed by a member of this Court. If you have not been admitted, you may file an appearance subject to subsequent admission to practice in this Court.

## SEPARATE FORMS MUST BE COMPLETED FOR EACH PERSON OR ENTITY REPRESENTED.

**UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT**

Case name _Wen Y. Chiang v. Lynn Skeirik, et al._

District Court Case No. _07-10451-NMG_　　　District of _Massachusetts_

Date Notice of Appeal filed _8/18/08_　　Court of Appeals Case No. _08-2105_

Form filed on behalf of _Wen Y. Chiang_

Transcript Not Necessary for this Appeal _✓_

Transcript Already Filed in District Court.  List each transcript by docket entry number and date and type of proceeding (attach separate page if necessary) _____

Name of Court Reporter _____

Phone Number of Reporter _____

**A.** _____ **This constitutes an order of the transcript of the following proceedings [check appropriate box(es) and indicate dates of hearing(s)]:**

| PROCEEDING(S) | HEARING DATE(S) |
|---|---|
| ☐ Jury Voir Dire | |
| ☐ Opening Statement (plaintiff) | |
| ☐ Opening Statement (defendant) | |
| ☐ Trial | |
| ☐ Closing Argument (plaintiff) | |
| ☐ Closing Argument (defendant) | |
| ☐ Findings of Fact/Conclusions of Law | |
| ☐ Jury Instructions | |
| ☐ Change of Plea | |
| ☐ Sentencing | |
| ☐ Bail hearing | |
| ☐ Pretrial proceedings (specify) | |
| ☐ Testimony (specify ) | |
| ☐ Other (specify) | |

**B.** _____ **I certify that I have contacted the court reporter and the following financial arrangements for payment of the transcript have been made:**

☐ Private funds.
☐ Government expense (civil case).  IFP status has been granted and a motion for transcript at government expense has been allowed.  (Attach a copy of the order to each copy of this order form.)
☐ Criminal Justice Act.  A CJA Form 24  has been approved by the district court judge.
☐ Criminal Justice Act.  A CJA Form 24 is attached for authorization by the court of appeals.
☐ Federal Public Defender/Government Counsel - no CJA Form 24 necessary.

Filer's name _Dean Carnahan, Esq_　Filer's Signature _X D. Carnahan, Es._

Firm/Address _Law Offices of Dean Carnahan, 51 Newcomb St, Arlington, MA 02474_

Telephone number _(781) 641-2825_　Date mailed to court reporter _N/A_

(Court Reporter Use ONLY) Date received _____

Form CA1-10 (6/12/06)　　　　　　　　　　**SEE INSTRUCTIONS ON REVERSE**

GOV. SUPPLENTAL APPENDIX   64

## UNITED STATES DISTRICT COURT
### DISTRICT OF MASSACHUSETTS

WEN Y. CHIANG           .  CIVIL ACTION NO. 07-10451-NMG
      Plaintiff         .
                       .
      V.                .  BOSTON, MASSACHUSETTS
                       .  MAY 12, 2008
LYNN SKEIRIK            .
      Defendant         .
. . . . . . . . . . . . . . .

TRANSCRIPT OF MOTION HEARING
BEFORE THE HONORABLE JUDITH G. DEIN
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For Wen Y. Chiang:    LAW OFFICES OF DEAN CARNAHAN
                    BY:  Dean Carnahan, Esquire
                    126 Broadway
                    Arlington, MA  02474
                    781-641-2825
                    ddcarnahan@rcn.com

For Lynn Skeirik:     UNITED STATES ATTORNEY'S OFFICE
                    BY:  Anton P. Giedt, Esquire
                    One Courthouse Way
                    Suite 9200
                    Boston, MA  02210
                    617-748-3309
                    Anton.giedt@usdoj.gov

Court Reporter:

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

*MARYANN V. YOUNG*
**Certified Court Transcriber**
**Wrentham, MA  02093**
**(508) 384-2003**

10

1  the proceeding?  Because I don't have a final decision until

2  the BIA issues its decision, right?  I mean it--

3           MR. CARNAHAN:  You do not, Your Honor.

4           THE COURT:  --technically.  I mean originally you

5  brought a claim that says they need to fish or cut bait here;

6  you know, they need to move on this application.  And they did,

7  unfortunately, not the way that you wanted them to, but they

8  did formally.  So I don't know how to interject myself in the

9  middle of the process.

10          MR. CARNAHAN:  Well, the Court has jurisdiction under

11 more than one argument that we have made.  The delay now since

12 the application has been 20 months.  And the courts have a

13 right to step in when there is a delay by the Agency and it

14 affects the constitutional rights of, in this case, Mr. Chiang.

15 I mean, there are cases that address when constitutional

16 violations are present of the right of courts to step in even

17 though a particular matter is pending with the Agency.

18 Mr. Chiang does have appeal rights after that.  It may go to an

19 Immigration law judge, and it finally goes to this Court.  But

20 that's going to be more and more delays.  Mr. Chiang's or Amy

21 is, her due date is the second week in August, and she, recent

22 ultrasounds show that the umbilical cord is wrapped around the

23 fetus' neck, and she has to go in a week for business.  So

24 there's a danger now of, a danger to the, there's a danger to

25 the unborn child, the life of the unborn child.

11

1        THE COURT:  But there's no risk of an abortion of,

2   an involuntary abortion at this stage, is there?

3        MR. CARNAHAN:  I think at this stage there is not

4   going to be an abortion.

5        THE COURT:  Okay.

6        MR. CARNAHAN:  But I think that there is a danger to

7   the child, the unborn child now as a result of the recent

8   ultrasound.  But the point I would like to make is that the

9   Court does have jurisdiction.  You can, the Court should not

10  just say it's with an agency therefore, we can't touch the

11  case, that the Court can look into that simply because the

12  delay involved.  And particularly in light of the case, of the

13  situation here where the defendants had changed the reason for

14  denial and where, in this case, the defendants had not cited a

15  statute or a regulation showing that this family ceremony in

16  China is a legal marriage or these are grounds for Immigration

17  practice.  That's the first thing that needs to be done.  If

18  they can't come up with that then it shows the defendants are

19  still engaging in illegal conduct to, that violates the

20  constitutional rights of Mr. Chiang.  And without that citation

21  to a statute or regulation all that argument should be ignored

22  by the Court.

23        In terms of the amended complaint, part of the

24  argument was having to do with the Federal Tort Claims Act.

25  But none of the claims in the, in the amended complaint are for

*MARYANN V. YOUNG*
Certified Court Transcriber
(508) 384-2003

GOV. SUPPLENTAL APPENDIX    67

12

1  negligence.  They're all constitutional violations.  In terms

2  of the property that was taken it was Mr. Chiang's.  It was a

3  large file, three or four inches thick, with all the court

4  pleadings in this case, with numerous photographs that they did

5  not need in order to make their decision.  The Consulate, there

6  are regulations that say that the Consulate can retain copies

7  of any documents they need in order to make a decision.  Now

8  they made a decision there was no bonafide relationship.  They

9  didn't need all these documents from this court.  They didn't

10  need all the documents showing that there was a bonafide

11  relationship.  They kept all those things just because Amy was

12  in there by herself, and they took the entire file.  And they

13  even told her later you didn't give us any papers.  So they

14  took the file; it was not voluntarily given as the defendants

15  argue.

16          In terms of what the judge said in his decision, he

17  couldn't review the decision of the Consulate itself because of

18  the Doctrine of Nonreviewability of Consulate decisions.  But

19  he said he could look, and the Court could look at the

20  application process.  And it says clearly in the amended claim

21  that the claim we're making in the amended complaint are

22  everything.  But the decision process, we're talking about

23  delays, we're talking about the legal seizure of property and

24  so forth, we're not talking about the Consular's decision.  The

25  Court cannot simply review that the--

13

1      THE COURT:  So if you prevail on the illegal seizure

2   of property, what's the damages that you're seeking?

3      MR. CARNAHAN:  Well, the damages on the illegal

4   seizure of property would be, some of the photographs were

5   taken by a professional photographer at the Great Wall so that,

6   I mean, the value of that is hard to determine.  But other than

7   that it's photocopying charges for the reproducing everything

8   they did, and it's not thousands of dollars, but it's, you

9   know, the cost of reproducing everything that was illegally

10  seized.

11     THE COURT:  All right, and if I find, if the Court

12  were to find that their delay was unreasonable, what would your

13  remedy be?

14     MR. CARNAHAN:  The remedy would be, I think it

15  depends on what the defendants produce in terms of the statute

16  of regulation that addresses this particular marriage.  I don't

17  think the Court should act until the defendants come forward

18  with something like that.  If they come forward with something

19  like that, then obviously that would be relevant, and if it

20  shows as plaintiff suspects that this is just another ground

21  that they're using to retaliate against Mr. Chiang, he alleges

22  in his complaint and the facts show that the Consulate in China

23  had already decided to deny Mr. Chiang's visa petition before

24  his fiancée went to the interview.  And the only reason they

25  could have done that is because they were upset with him for

14

```
 1  filing the case in this court.  They took all the papers.
 2  They knew about the case, and that's the basis of Mr. Chiang's
 3  constitutional claim for violation of the Seventh Amendment.
 4  They knew that he had sued everybody here, and they didn't like
 5  it.  And that's the only reason that they could have treated
 6  Amy like they did in the room.  I mean there was nothing wrong
 7  with Amy.  She's not a criminal or doesn't have any, I mean
 8  she's nothing other than, you know, a good Chinese woman.  They
 9  had no reason to mistreat her as they did other than they had
10  some other reason.  The only reason they could have had because
11  Mr. Chiang upset about the delay to, at that point, file suit.
12  And that violated his Seventh Amendment rights in that regard.
13  But the, I don't think I directly answered your question, what
14  is the remedy that I would request.  The remedy that I, that
15  the plaintiff would request would be to deny the motions to
16  dismiss simply because the amended complaint states valid
17  Bivens claims for violation of the constitutional rights, and
18  if the Court denies the motion to dismiss, and the Court should
19  do that because the complaint should not be dismissed, the only
20  new thing--
21          THE COURT:  And what would be the only, and let's
22  assume that I don't dismiss the complaint and you prevail on
23  the merits of your claim, what's the damages that you are
24  seeking in this action?
25          MR. CARNAHAN:  Well, the damages would be, as I said
```

MARYANN V. YOUNG
Certified Court Transcriber
(508) 384-2003

15

1   for the cost of replacing the missing property, and the

2   damages are what a jury would say.  When they hear the story

3   here you ask--

4           THE COURT:  So you're seeking financial damages as

5   opposed to you're not seeking an order that the decision be

6   reversed?

7           MR. CARNAHAN:  No, Your Honor.

8           THE COURT:  So you're seeking monetary damages?

9           MR. CARNAHAN:  Right, and what a jury would say about

10  violations of constitutional rights.  In other words, the jury,

11  a jury is entitled to award damages for violation, the

12  violation itself.

13          In terms of the, Mr. Chiang will proceed with the

14  appeal of the USCIS.  He has to do that in order to protect his

15  rights, but the Court should not dismiss the complaint based on

16  that.  And the other point that I made previously that it is

17  extremely important that I think the Court order the defendants

18  to produce the statute or regulation that, whether one exists,

19  whether it applies in this case.

20          THE COURT:  In what context well in the proceeding

21  were these affidavits filed that indicated that there was a

22  marriage?  Why was that an issue?

23          MR. CARNAHAN:  Why was it done?

24          THE COURT:  Yeah?

25          MR. CARNAHAN:  Well, it was done at that point the

32

1                          CERTIFICATION

2          I, Maryann V. Young, court approved transcriber, certify

3     that the foregoing is a correct transcript from the official

4     digital sound recording of the proceedings in the

5     above-entitled matter.

6

7     /s/ Maryann V. Young                      March 9, 2009

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

CLOSED

# United States District Court
## District of Massachusetts (Boston)
## CIVIL DOCKET FOR CASE #: 1:07-cv-10451-NMG

Chiang v. Skeirik et al
Assigned to: Judge Nathaniel M. Gorton
Case in other court: First Circuit, 08-01909
Cause: 42:1983 Civil Rights Act

Date Filed: 03/06/2007
Date Terminated: 08/07/2008
Jury Demand: Plaintiff
Nature of Suit: 440 Civil Rights: Other
Jurisdiction: U.S. Government Defendant

**Plaintiff**

**Wen Y. Chiang**
*Pro Se Party*

represented by **Dean Carnahan**
Law Offices of Dean Carnahan
126 Broadway
Arlington , MA 02474
781-641-2825
Fax: 781-641-2825
Email: ddcarnahan@rcn.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Lynn Skeirik**
*in her official capacity as*
*Director of the National Visa*
*Center*

represented by **Anton P. Giedt**
United States Attorney's Office
John Joseph Moakley Federal
Courthouse
1 Courthouse Way
Suite 9200
Boston , MA 02210
617-748-3309
Fax: 617-748-3967
Email: anton.giedt@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

GOV. SUPPLENTAL APPENDIX    73

**Condoleezza Rice**
*in her official as Secretary of*
*State*

represented by   **Anton P. Giedt**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Michael Chertoff**
*in his official capacity as*
*Secretary of Homeland Security*

represented by   **Anton P. Giedt**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Brian Ferinden**
*in his official capacity as Vice*
*General Counsular in*
*Guangzhou, China The U.S.*
*Consulate in Guangzhoum, China*

represented by   **Anton P. Giedt**
United States Attorney's Office
1 Courthouse Way
Suite 9200
Boston , MA 02210
617-748-3309
Fax: 617-748-3967
Email: anton.giedt@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**United States of America**

represented by   **Anton P. Giedt**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 03/06/2007 | 1 | COMPLAINT against Lynn Skeirik, Condoleezza Rice, Michael Chertoff, filed by Wen Y. Chiang. (Attachments: # 1 Civil Cover Sheet)(Johnson, Jay) Modified on 3/7/2007 (Sonnenberg, Elizabeth). Additional attachment(s) added on 3/8/2007 (Sonnenberg, Elizabeth). Additional attachment(s) added on 3/14/2007 (Sonnenberg, Elizabeth). (Entered: 03/06/2007) |
| 03/06/2007 | | ELECTRONIC NOTICE of Case Assignment. Judge Nathaniel M. Gorton assigned to case. If the trial Judge issues an Order of Reference of any matter in this case to a Magistrate Judge, the matter will be transmitted to Magistrate Judge Dein (Johnson, Jay) (Entered: 03/06/2007) |

GOV. SUPPLENTAL APPENDIX   74

| 03/06/2007 | | Summons Issued as to Lynn Skyreich, Condoleezza Rice, Alberto Gonzales. (Johnson, Jay) (Entered: 03/06/2007) |
|---|---|---|
| 03/12/2007 | | Filing fee: $ 350.00, receipt number 78682 for 1 Complaint, (Diskes, Sheila) (Entered: 03/12/2007) |
| 03/19/2007 | 2 | SUMMONS Returned Executed Lynn Skyreich served on 3/12/2007, answer due 4/2/2007. (Sonnenberg, Elizabeth) (Entered: 03/20/2007) |
| 03/27/2007 | 3 | NOTICE of Appearance by Anton P. Giedt on behalf of Michael Chertoff, Lynn Skyreich, Condoleezza Rice (Giedt, Anton) (Entered: 03/27/2007) |
| 03/28/2007 | 4 | SUMMONS Returned Executed by Wen Y. Chiang. Michael Chertoff served on 3/19/2007, answer due 5/18/2007; Condoleezza Rice served on 3/13/2007, answer due 5/14/2007. (Attachments: # 1)(Sonnenberg, Elizabeth) (Entered: 03/29/2007) |
| 04/11/2007 | 5 | MOTION for Entry of Default by Wen Y. Chiang.(Chiang, Wen) Additional attachment(s) added on 4/26/2007 (Sonnenberg, Elizabeth). (Entered: 04/11/2007) |
| 05/21/2007 | 6 | MOTION for Default Judgment by Wen Y. Chiang. (Attachments: # 1 Supplement Motion)(Chiang, Wen) (Entered: 05/21/2007) |
| 05/22/2007 | | Judge Nathaniel M. Gorton : ElectronicORDER entered denying 5 Motion for Entry of Default; denying 6 Motion for Default Judgment. Defendants shall answer the complaint within time alloted by the Fed Rules of Civ. Proc. (Nicewicz, Craig) (Entered: 05/22/2007) |
| 05/23/2007 | 7 | MOTION for Reconsideration by Wen Y. Chiang. (Attachments: # 1 Exhibit documents# 2 Exhibit)(Chiang, Wen) (Entered: 05/23/2007) |
| 05/25/2007 | 8 | MOTION for Extension of Time to June 22, 2007 to File Answer *and Opposition to Motionfor Default Judgment* by Michael Chertoff, Lynn Skyreich, Condoleezza Rice.(Giedt, Anton) (Entered: 05/25/2007) |
| 06/07/2007 | 9 | MOTION to Continue allow Defendant to file the answer to August 22, 2007 by Wen Y. Chiang. (Attachments: # 1 Civil Cover Sheet Stipulation)(Chiang, Wen) (Entered: 06/07/2007) |
| 06/19/2007 | | Judge Nathaniel M. Gorton : Electronic ORDER entered finding as moot 7 Motion for Reconsideration ; granting 8 Motion for Extension of Time to Answer Michael Chertoff answer due |

GOV. SUPPLENTAL APPENDIX    75

| | | 6/22/2007; Lynn Skyreich answer due 6/22/2007; Condoleezza Rice answer due 6/22/2007.; granting 9 Motion to Continue (Nicewicz, Craig) (Entered: 06/19/2007) |
|---|---|---|
| 06/21/2007 | 10 | ANSWER to Complaint by Michael Chertoff, Lynn Skyreich, Condoleezza Rice.(Giedt, Anton) (Entered: 06/21/2007) |
| 07/18/2007 | 11 | MOTION for Preliminary Injunction by Wen Y. Chiang.(Chiang, Wen) (Entered: 07/18/2007) |
| 07/26/2007 | 12 | MEMORANDUM in Support re 11 MOTION for Preliminary Injunction filed by Wen Y. Chiang. (Chiang, Wen) (Entered: 07/26/2007) |
| 07/26/2007 | 13 | AFFIDAVIT in Support re 11 MOTION for Preliminary Injunction filed by Wen Y. Chiang. (Attachments: # 1 # 2 Affidavit # 3 Affidavit # 4 Affidavit # 5 Affidavit # 6 Affidavit # 7 Affidavit # 8 Affidavit # 9 Affidavit)(Chiang, Wen) (Entered: 07/26/2007) |
| 08/02/2007 | 14 | MOTION to Dismiss for Lack of Jurisdiction *and Opposition to Motion for Preliminary Injunction for Lack of Jurisdiction* by Michael Chertoff, Lynn Skyreich, Condoleezza Rice.(Giedt, Anton) (Entered: 08/02/2007) |
| 08/02/2007 | 15 | MEMORANDUM in Support re 14 MOTION to Dismiss for Lack of Jurisdiction *and Opposition to Motion for Preliminary Injunction for Lack of Jurisdiction* filed by Michael Chertoff, Lynn Skyreich, Condoleezza Rice. (Attachments: # 1 Exhibit A -- Declaration of Rachel Peterson# 2 Exhibit B -- USCIS Notice)(Giedt, Anton) (Entered: 08/02/2007) |
| 08/15/2007 | 16 | Opposition re 14 MOTION to Dismiss for Lack of Jurisdiction *and Opposition to Motion for Preliminary Injunction for Lack of Jurisdiction* filed by Wen Y. Chiang. (Attachments: # 1 Affidavit # 2 Affidavit # 3 # 4 # 5 # 6 # 7)(Chiang, Wen) (Entered: 08/15/2007) |
| 08/15/2007 | 17 | EXHIBIT re 18 MEMORANDUM in Opposition re 14 MOTION to Dismiss for Lack of Jurisdiction *and Opposition to Motion for Preliminary Injunction for Lack of Jurisdiction* filed by Wen Y. Chiang. (Attachments: # 1 # 2 # 3 # 4 # 5)(Chiang, Wen) Modified on 8/20/2007 (Sonnenberg, Elizabeth). (Entered: 08/15/2007) |
| 08/15/2007 | 18 | EXHIBIT re 18 MEMORANDUM in Opposition re 14 MOTION to Dismiss for Lack of Jurisdiction *and Opposition to Motion for Preliminary Injunction for Lack of Jurisdiction* filed by Wen Y. Chiang. (Attachments: # 1)(Chiang, Wen) Modified on 8/20/2007 (Sonnenberg, Elizabeth). (Entered: 08/16/2007) |

GOV. SUPPLENTAL APPENDIX    76


| 08/17/2007 | 19 | NOTICE of Appearance by Dean Carnahan on behalf of Wen Y. Chiang (Carnahan, Dean) (Entered: 08/17/2007) |
| 08/20/2007 | | Notice of correction to docket made by Court staff. Correction: Docket Nos. 17 & 18 corrected because these are exhibits not "Memorandum in Opposition" event's. The clerk has edited the text of the docket entries. (Sonnenberg, Elizabeth) (Entered: 08/20/2007) |
| 09/28/2007 | 20 | MOTION for Temporary Restraining Order by Wen Y. Chiang. (Carnahan, Dean) (Entered: 09/28/2007) |
| 09/28/2007 | 21 | MEMORANDUM in Support re 20 MOTION for Temporary Restraining Order filed by Wen Y. Chiang. (Attachments: # 1 Exhibit A# 2 Exhibit B# 3 Exhibit C# 4 Exhibit D# 5 Exhibit E) (Carnahan, Dean) (Entered: 09/28/2007) |
| 09/28/2007 | 22 | Proposed Document(s) submitted by Wen Y. Chiang. Document received: Proposed TRO. (Carnahan, Dean) (Entered: 09/28/2007) |
| 10/02/2007 | | ELECTRONIC NOTICE of Hearing on Motion 20 MOTION for Temporary Restraining Order : Motion Hearing set for 10/4/2007 10:00 AM in Courtroom 4 before Judge Nathaniel M. Gorton. (Nicewicz, Craig) (Entered: 10/02/2007) |
| 10/03/2007 | 23 | Opposition re 20 MOTION for Temporary Restraining Order filed by Michael Chertoff, Lynn Skyreich, Condoleezza Rice. (Attachments: # 1 Exhibit A - Declaration# 2 Exhibit B - Notice# 3 Exhibit C - Declaration)(Giedt, Anton) (Entered: 10/03/2007) |
| 10/04/2007 | | Electronic Clerk's Notes for proceedings held before Judge Nathaniel M. Gorton : finding as moot 11 Motion for Preliminary Injunction; denying 20 Motion for TRO; Motion Hearing held on 10/4/2007 re 11 MOTION for Preliminary Injunction filed by Wen Y. Chiang, 20 MOTION for Temporary Restraining Order filed by Wen Y. Chiang. (Court Reporter Dahlstrom.) (Nicewicz, Craig) (Entered: 10/09/2007) |
| 11/16/2007 | 24 | Second MOTION for Temporary Restraining Order by Wen Y. Chiang.(Carnahan, Dean) (Entered: 11/16/2007) |
| 11/16/2007 | 25 | MEMORANDUM in Support re 24 Second MOTION for Temporary Restraining Order filed by Wen Y. Chiang. (Attachments: # 1 Exhibit A# 2 Exhibit B# 3 Exhibit C# 4 Exhibit D# 5 Exhibit E# 6 Exhibit F# 7 Exhibit G# 8 Exhibit H# 9 Exhibit I)(Carnahan, Dean) (Entered: 11/16/2007) |

GOV. SUPPLENTAL APPENDIX     77

| 11/19/2007 | | Judge Nathaniel M. Gorton : Electronic ORDER entered denying 24 Renewed Motion for TRO (Sonnenberg, Elizabeth) (Entered: 11/19/2007) |
|---|---|---|
| 12/04/2007 | 26 | Judge Nathaniel M. Gorton : ORDER entered. MEMORANDUM AND ORDER(Sonnenberg, Elizabeth)"In accordance with the foregoing: 1) the defendants motion to dismiss for lack of subject matter jurisdiction (Docket No. 14) is, to the extent that Chiang seeks review of the reasons for the Consulates denial of his fiance's petition or asserts negligence claims against the individual officers, ALLOWED, but is otherwise DENIED, 2) the plaintiffs motion for a preliminary injunction (Docket No. 11) is DENIED as moot, 3) the plaintiffs motion for a temporary restraining order (Docket No. 20) is DENIED, 4) the plaintiffs second motion for a temporary restraining order (Docket No. 24) is DENIED, and 5) in light of the changed circumstances since the filing of the original complaint, the plaintiff is directed to file, on or before January 18, 2008, an amended complaint, restating any justiciable claims not dismissed herein. In default of such filing, the complaint will be dismissed in its entirety. So ordered." (Entered: 12/04/2007) |
| 01/18/2008 | 27 | AMENDED COMPLAINT against all defendants, filed by Wen Y. Chiang.(Carnahan, Dean) (Entered: 01/18/2008) |
| 02/06/2008 | 28 | Assented to MOTION for Extension of Time to February 15, 2008 to File Answer re 27 Amended Complaint, Assented to MOTION for Extension of Time to February 15, 2008 to Response to Amended Complaint ( Responses due by 2/20/2008) by Brian Ferinden, United States of America, Michael Chertoff, Lynn Skeirik, Condoleezza Rice.(Giedt, Anton) (Entered: 02/06/2008) |
| 02/15/2008 | 29 | MOTION to Dismiss for Lack of Jurisdiction by Brian Ferinden, United States of America, Michael Chertoff, Lynn Skeirik, Condoleezza Rice.(Giedt, Anton) (Entered: 02/15/2008) |
| 02/15/2008 | 30 | MEMORANDUM in Support re 29 MOTION to Dismiss for Lack of Jurisdiction filed by Brian Ferinden, United States of America, Michael Chertoff, Lynn Skeirik, Condoleezza Rice. (Giedt, Anton) (Entered: 02/15/2008) |
| 02/26/2008 | | Judge Nathaniel M. Gorton: Electronic ORDER entered granting 28 Motion for Extension of Time to Answer ; granting 28 Motion for Extension of Time (Nicewicz, Craig) (Entered: 02/26/2008) |
| 02/29/2008 | 31 | Opposition re 29 MOTION to Dismiss for Lack of Jurisdiction filed by Wen Y. Chiang. (Carnahan, Dean) (Entered: 02/29/2008) |

GOV. SUPPLENTAL APPENDIX   78

| 02/29/2008 | 32 | MEMORANDUM in Opposition re 29 MOTION to Dismiss for Lack of Jurisdiction filed by Wen Y. Chiang. (Carnahan, Dean) (Entered: 02/29/2008) |
|---|---|---|
| 04/11/2008 | 33 | Judge Nathaniel M. Gorton: ORDER entered. REFERRING MOTION 29 MOTION to Dismiss for Lack of Jurisdiction filed by Lynn Skeirik, Michael Chertoff, Brian Ferinden, Condoleezza Rice, United States of America to Magistrate Judge Judith G. Dein for R&R.(Nicewicz, Craig) Motions referred to Judith G. Dein. (Entered: 04/11/2008) |
| 04/14/2008 | 34 | MOTION for Temporary Restraining Order by Wen Y. Chiang. (Carnahan, Dean) (Entered: 04/14/2008) |
| 04/14/2008 | 35 | MEMORANDUM in Support re 34 MOTION for Temporary Restraining Order filed by Wen Y. Chiang. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H)(Carnahan, Dean) (Entered: 04/14/2008) |
| 04/14/2008 | 36 | MOTION Speedy Hearing re 34 MOTION for Temporary Restraining Order by Wen Y. Chiang.(Carnahan, Dean) (Entered: 04/14/2008) |
| 04/14/2008 | 37 | MOTION expedite hearing re 29 MOTION to Dismiss for Lack of Jurisdiction by Wen Y. Chiang.(Carnahan, Dean) (Entered: 04/14/2008) |
| 04/16/2008 |  | ELECTRONIC NOTICE of Hearing on Motion 29 MOTION to Dismiss for Lack of Jurisdiction : Motion Hearing set for 5/12/2008 10:00 AM in Courtroom 15 before Magistrate Judge Judith G. Dein. (Dambrosio, Jolyne) (Entered: 04/16/2008) |
| 04/17/2008 |  | Magistrate Judge Judith G. Dein: Electronic ORDER entered finding as moot 37 Plaintiff's Motion to Expedite hearing re 29 MOTION to Dismiss. See 4/16/08 Electronic Notice of Hearing. (Dambrosio, Jolyne) (Entered: 04/17/2008) |
| 04/20/2008 | 38 | Opposition re 34 MOTION for Temporary Restraining Order, 36 MOTION Speedy Hearing re 34 MOTION for Temporary Restraining Order filed by United States of America, Michael Chertoff, Lynn Skeirik, Condoleezza Rice. (Giedt, Anton) (Entered: 04/20/2008) |
| 05/09/2008 | 39 | NOTICE by Brian Ferinden, United States of America, Michael Chertoff, Lynn Skeirik, Condoleezza Rice *of Agency Action* (Attachments: # 1 Exhibit A -- Notice of Denial of Petition)(Giedt, |

GOV. SUPPLENTAL APPENDIX    79

| | | |
|---|---|---|
| | | Anton) (Entered: 05/09/2008) |
| 05/11/2008 | 40 | Response re 39 Notice of Agency Change filed by Wen Y. Chiang. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Carnahan, Dean) Modified on 5/20/2008 (Sonnenberg, Elizabeth). (Entered: 05/11/2008) |
| 05/12/2008 | | Clerk's Notes for proceedings held before Magistrate Judge Judith G. Dein: Motion Hearing held on 5/12/2008 re 29 MOTION to Dismiss for Lack of Jurisdiction filed by Lynn Skeirik, Michael Chertoff, Brian Ferinden, Condoleezza Rice, United States of America. Attorney Carnahan and AUSA Giedt ; USMJ Dein hears arguments from counsel and takes motion under advisement. (Court Reporter: DR.) (Quinn, Thomas) (Entered: 05/12/2008) |
| 05/12/2008 | 41 | AFFIDAVIT OF SERVICE Executed by Wen Y. Chiang. Brian Ferinden served on 2/16/2008, answer due 3/7/2008. Acknowledgement filed by Wen Y. Chiang. (Carnahan, Dean) (Entered: 05/12/2008) |
| 05/15/2008 | 42 | MOTION for Temporary Restraining Order by Wen Y. Chiang. (Carnahan, Dean) (Entered: 05/15/2008) |
| 05/15/2008 | 43 | MEMORANDUM in Support re 42 MOTION for Temporary Restraining Order filed by Wen Y. Chiang. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Carnahan, Dean) (Entered: 05/15/2008) |
| 05/19/2008 | | Judge Nathaniel M. Gorton: Electronic ORDER entered finding as moot 34 Motion for TRO; finding as moot 36 Motion for TRO; denying 42 Motion for TRO, treated as a Motion for Preliminary Injunction. The Government shall respond within 10 days to Motion 42 . (Nicewicz, Craig) (Entered: 05/19/2008) |
| 05/20/2008 | | Notice of correction to docket made by Court staff. Correction: Docket No. 40 corrected because: The correct event should be "Response not related to a motion." The clerk has changed the text and corrected the link to which the response should be. (Sonnenberg, Elizabeth) (Entered: 05/20/2008) |
| 05/29/2008 | 44 | Opposition re 42 MOTION for Temporary Restraining Order filed by Brian Ferinden, United States of America, Michael Chertoff, Lynn Skeirik, Condoleezza Rice. (Giedt, Anton) (Entered: 05/29/2008) |
| 06/01/2008 | 45 | Response by Wen Y. Chiang *to Defendants' Opposition to Motion*. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Carnahan, Dean) (Entered: 06/01/2008) |

GOV. SUPPLENTAL APPENDIX 80

| 06/09/2008 | | ELECTRONIC NOTICE of Hearing on Motion Motion Hearing on 42 MOTION for Preliminary Injunction by Wen Y. Chiang.( set for 6/20/2008 11:00 AM in Courtroom 4 before Judge Nathaniel M. Gorton. (Nicewicz, Craig) Modified on 6/9/2008 (Nicewicz, Craig). (Entered: 06/09/2008) |
|---|---|---|
| 06/11/2008 | 46 | Judge Nathaniel M. Gorton: ORDER entered. MEMORANDUM AND ORDER"In accordance with the foregoing, Plaintiff's Motion for a Temporary Restraining Order (Docket No.42), treated as a Motion for Preliminary Injunction, is DENIED. So ordered."(Sonnenberg, Elizabeth) (Entered: 06/11/2008) |
| 06/11/2008 | | ELECTRONIC NOTICE Cancelling Hearing. Hearing on 42 MOTION for Preliminary Injunction by Wen Y. Chiang set for 6/20/2008 11:00 AM in Courtroom 4 before Judge Nathaniel M. Gorton is Cancelled. (Sonnenberg, Elizabeth) (Entered: 06/12/2008) |
| 06/25/2008 | 47 | NOTICE OF APPEAL as to 46 Memorandum & ORDER, by Wen Y. Chiang Filing fee $ 455, receipt number 01010000000002014388 NOTICE TO COUNSEL: A Transcript Report/Order Form, which can be downloaded from the First Circuit Court of Appeals web site at http://www.ca1.uscourts.gov/clerks/transcript.htm MUST be completed and submitted to the Court of Appeals. Appeal Record due by 7/15/2008. (Carnahan, Dean) (Entered: 06/25/2008) |
| 07/03/2008 | 48 | Magistrate Judge Judith G. Dein: ORDER entered. REPORT AND RECOMMENDATIONS re 29 Defendants' MOTION to Dismiss for Lack of Jurisdiction. Recommendation: that the Motion be allowed. Objections to R&R due by 7/17/2008. (Dambrosio, Jolyne) (Entered: 07/03/2008) |
| 07/17/2008 | 49 | MOTION to Amend *Amended Complaint* by Wen Y. Chiang. (Carnahan, Dean) (Entered: 07/17/2008) |
| 07/17/2008 | 50 | Objection re 48 by Wen Y. Chiang *to Report and Recommenation of Magistrate Judge*. (Carnahan, Dean) Modified on 7/23/2008 (Sonnenberg, Elizabeth). (Entered: 07/17/2008) |
| 07/23/2008 | 51 | Certified and Transmitted Record on Appeal to US Court of Appeals re 47 Notice of Appeal, (Attachments: # 1 docket sheet) (Ramos, Jeanette) (Entered: 07/23/2008) |
| 07/29/2008 | 52 | USCA Case Number 08-1909 for 47 Notice of Appeal, filed by Wen Y. Chiang. (Ramos, Jeanette) (Entered: 07/29/2008) |
| | | |

GOV. SUPPLENTAL APPENDIX    81

| 08/07/2008 | | Judge Nathaniel M. Gorton: Electronic ORDER entered adopting Report and Recommendations re 48 Report and Recommendations re 29 . "After consideration of plaintiffs' objection thereto, Report and Recommendation accepted and adopted." (Sonnenberg, Elizabeth) (Entered: 08/12/2008) |
| 08/07/2008 | | Civil Case Terminated. (Sonnenberg, Elizabeth) (Entered: 08/13/2008) |
| 08/11/2008 | 53 | Opposition re 49 MOTION to Amend *Amended Complaint* filed by Brian Ferinden, United States of America, Michael Chertoff, Lynn Skeirik, Condoleezza Rice. (Giedt, Anton) (Entered: 08/11/2008) |
| 08/11/2008 | | Judge Nathaniel M. Gorton: Electronic ORDER entered denying 49 Motion to Amend "Because the proposed amendment would be futile (see Glassman v. Computervision Corp., 90 F. 3d 617,623(1st Cir. 1996)) and Plaintiffs do not get "repeated bites at the apple" (ACA Fin. Guar. Corp. v. Advest, Inc., 512 F. 3d 46,57 (1st Cir.2008)), motion DENIED." (Sonnenberg, Elizabeth) (Entered: 08/12/2008) |
| 08/14/2008 | 54 | Judge Nathaniel M. Gorton: ORDER of DISMISSAL entered. (Nicewicz, Craig) (Entered: 08/14/2008) |
| 08/18/2008 | 55 | Subsequent NOTICE OF APPEAL as to 54 Order by Wen Y. Chiang. Filing fee $ 455, receipt number 01010000000002079168. NOTICE TO COUNSEL: A Transcript Report/Order Form, which can be downloaded from the First Circuit Court of Appeals web site at http://www.ca1.uscourts.gov/clerks/transcript.htm MUST be completed and submitted to the Court of Appeals. Appeal Record due by 9/8/2008. (Carnahan, Dean) (Entered: 08/18/2008) |
| 08/21/2008 | 56 | Supplemental Record on Appeal transmitted to US Court of Appeals re 55 Subsequent Notice of Appeal, 47 Notice of Appeal, Documents included: Amended Notice of Appeal (Ramos, Jeanette) (Entered: 08/21/2008) |
| 10/08/2008 | 57 | MANDATE of USCA as to 55 Subsequent Notice of Appeal, filed by Wen Y. Chiang, 47 Notice of Appeal, filed by Wen Y. Chiang. Upon consideration of appellant's motion, it is hereby ordered that this appeal be voluntarily dismissed. Mandate issued in the USCA 10/7/2008 (Ramos, Jeanette) (Entered: 10/08/2008) |
| 10/14/2008 | | Appeal Record Returned: 55 Subsequent Notice of Appeal, (Gawlik, Cathy) (Entered: 10/15/2008) |
| 03/09/2009 | 58 | Transcript of Motion Hearing held on May 12, 2008, before Judge |

GOV. SUPPLENTAL APPENDIX    82

|  |  | Dein. Court Reporter: None. Transcribed by Maryann Young at 508/384-2003. The Transcript may be purchased through the Court Reporter, viewed at the public terminal, or viewed through PACER after it is released. Redaction Request due 3/27/2009. Redacted Transcript Deadline set for 4/6/2009. Release of Transcript Restriction set for 6/4/2009. (Scalfani, Deborah) (Entered: 03/09/2009) |
| 03/09/2009 | 59 | NOTICE is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above-captioned matter. Counsel are referred to the Court's Transcript Redaction Policy, a copy of which is attached to this entry.. (Scalfani, Deborah) (Entered: 03/09/2009) |

<table>
<tr><td colspan="4" align="center">**PACER Service Center**</td></tr>
<tr><td colspan="4" align="center">**Transaction Receipt**</td></tr>
<tr><td colspan="4" align="center">04/02/2009 19:53:36</td></tr>
<tr><td>**PACER Login:**</td><td>us2799</td><td>**Client Code:**</td><td></td></tr>
<tr><td>**Description:**</td><td>Docket Report</td><td>**Search Criteria:**</td><td>1:07-cv-10451-NMG</td></tr>
<tr><td>**Billable Pages:**</td><td>6</td><td>**Cost:**</td><td>0.48</td></tr>
</table>

GOV. SUPPLENTAL APPENDIX    83